UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATALIE PERKINS and KENNETH
HASSON, individually and on behalf themselves
and of all others similarly situated,

               Plaintiffs,

    v.

ZILLOW GROUP, INC. and MICROSOFT
CORPORATION,

               Defendants.

NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## **CLASS ACTION COMPLAINT**

      Plaintiffs Natalie Perkins and Kenneth Hasson ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, hereby file this class action complaint against Defendant Zillow Group, Inc. ("Zillow") and Defendant Microsoft Corporation ("Microsoft") (collectively "Defendants"), and in support thereof alleges the following:

### **INTRODUCTION**

      1.    This is a class action brought against Defendants for wiretapping the electronic communications of visitors to Zillow's website, www.zillow.com ("Zillow's website"). Zillow procures third-party vendors, such as Microsoft Corporation, to embed snippets of JavaScript computer code ("Session Replay Code") on Zillow's website, which then deploys on each

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

website visitor's internet browser for the purpose intercepting and recording the website visitor's electronic communications with the Zillow website, including their mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time ("Website Communications"). These third-party vendors (collectively, "Session Replay Providers") create and deploy the Session Replay Code at Zillow's request.

2. After intercepting and capturing the Website Communications, Zillow, Microsoft and other Session Replay Providers use those Website Communications to recreate website visitors' entire visit to Zillow's website. Microsoft and other Session Replay Providers create a video replay of the user's behavior on the website and provide it to Zillow for analysis. Zillow's procurement of the Session Replay Providers to secretly deploy the Session Replay Code results in the electronic equivalent of "looking over the shoulder" of each visitor to the Zillow website for the entire duration of their website interaction.

3. Defendants' conduct violates the Washington Wiretapping Statute, Wash. Rev. Code §9.73.030 *et seq.* and constitutes an invasion of the privacy rights of website visitors.

4. Plaintiffs bring this action individually and on behalf of a nationwide class of all individuals whose Website Communications were intercepted through Defendants' procurement and use of Session Replay Code embedded on the webpages of Zillow's website and seeks all civil remedies provided under the causes of action, including but not limited to compensatory, statutory, and/or punitive damages, and attorneys' fees and costs.

## **PARTIES**

5. Plaintiff Natalie Perkins is a citizen of South Carolina and at all times relevant to this action, resided and was domiciled in York County, South Carolina.

CLASS ACTION COMPLAINT - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

6.      Plaintiff Kenneth Hasson is a citizen of Pennsylvania, and at all times relevant to this action, resided and was domiciled in Lawrence County, Pennsylvania

7.      Defendant Zillow Group, Inc. is corporation organized under the laws of Washington, and its principal place of business is located at 1301 Second Ave., Floor 31, Seattle, Washington, 98101. Defendant is a citizen of Washington.

8.      Defendant Microsoft Inc. is a corporation organized under the laws of Washington, and its principal place of business is located at One Microsoft Way, Redmond, Washington, 98052. Defendant is a citizen of Washington.

## <u>JURISDICTION AND VENUE</u>

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class, including Plaintiffs, are citizens of a state different than Defendants.

10.      This Court has personal jurisdiction over Defendants because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in the state of Washington. The privacy violations complained of herein resulted from Defendants' purposeful and tortious acts directed towards citizens throughout the United States.  Additionally, Zillow's Terms of Use specifically state that individuals' Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict of laws' provisions, and that Defendant Zillow operates the services it provides to individuals from Zillow's offices in the State of Washington.  *See* https://www.zillowgroup.com/terms-of-use/.

CLASS ACTION COMPLAINT - 3

11.     At all relevant times, Defendants knew that their practices would directly result in collection of information throughout the United States while individuals browse Zillow's website. Defendants chose to avail themselves of the business opportunities of making Zillow's real property and rental advertising services specifically available through Washington and collecting real-time data from website visit sessions initiated by individuals located throughout the United States, including in Washington, and the claims alleged herein arise from those activities.

12.     Zillow also knows that many users visit and interact with Zillow's websites while they are physically present in Washington and throughout the United States. Both desktop and mobile versions of Zillow's website allow a user to search for nearby properties by providing the user's "current location," as furnished by the location-determining tools of the device the user is using or by the user's IP address (*i.e.*, without requiring the user to manually input an address). Users' employment of automatic location services in this way means that Zillow is continuously made aware that its website is being visited by people located throughout the United States, including in Washington, and that such website visitors are being wiretapped in violation Washington statutory and common law.

13.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

CLASS ACTION COMPLAINT - 4

## FACTUAL ALLEGATIONS

**A.** **Website User and Usage Data Have Immense Economic Value.**

14. The "world's most valuable resource is no longer oil, but data."[1]

15. Earlier this year, Business News Daily reported that some businesses collect personal data (*i.e.*, gender, web browser cookies, IP addresses, and device IDs), engagement data (*i.e.*, how consumers interact with a business's website, applications, and emails), behavioral data (*i.e.*, customers' purchase histories and product usage information), and attitudinal data (*i.e.*, data on consumer satisfaction) from consumers.[2] This information is valuable to companies because they can use this data to improve customer experiences, refine their marketing strategies, capture data to sell it, and even to secure more sensitive consumer data.[3]

16. In a consumer-driven world, the ability to capture and use customer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[4]

17. In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A

---

[1] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longeroil-but-data.

[2] Max Freedman, *How Businesses Are Collecting Data (And What They're Doing With It)*, Business News Daily (Aug. 5, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html.

[3] *Id.*

[4] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Survey of Methodologies for Measuring Monetary Value."[5] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[6]

18.     OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."[7]

**B.     Website Users Have a Reasonable Expectation of Privacy in Their Interactions with Websites.**

19.     Consumers are skeptical and are wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."[8]

20.     Another recent paper also indicates that most website visitors will assume their detailed interactions with a website will only be used by the website and not be shared with a party they know nothing about.[9] As such, website visitors reasonably expect that their interactions with a website should not be released to third parties unless explicitly stated.[10]

---

[5] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

[6] *Id.* at 25.

[7] *Id.*

[8] Lance Whitney, *Data privacy is a growing concern for more consumers*, TechRepublic (Aug. 17, 2021), https://www.techrepublic.com/article/data-privacy-is-a-growing-concern-for-more-consumers/.

[9] *CUJO AI Recent Survey Reveals U.S. Internet Users Expectations and Concerns Towards Privacy and Online Tracking*, CUJO (May 26, 2020), https://www.prnewswire.com/news-releases/cujo-ai-recent-survey-reveals-us-internet-users-expectations-and-concerns-towards-privacy-and-online-tracking-301064970.html.

[10] Frances S. Grodzinsky, Keith W. Miller & Marty J. Wolf, *Session Replay Scripts: A Privacy Analysis*, The Information Society, 38:4, 257, 258 (2022).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

21.     Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

22.     A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[11]

23.     Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[12]

24.     Users act consistently with their expectation of privacy. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users chose not to allow such tracking.[13]

**C.      How Session Replay Code Works.**

25.     Session Replay Code, such as that implemented on Zillow's website, enables website operators to record, save, and replay website visitors' interactions with a given website.

---

[11] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, Consumer Reports (May 11, 2017), https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[12] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-Confusedand-feeling-lack-of-control-over-their-personal-information/.

[13] Margaret Taylor, *How Apple screwed Facebook*, Wired, (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   The clandestinely deployed code provides online marketers and website designers with insights

2   into the user experience by recording website visitors "as they click, scroll, type or navigate

3   across different web pages."[14]

4         26.     While Session Replay Code is utilized by websites for some legitimate purposes,

5   it goes well beyond normal website analytics when it comes to collecting the actual contents of

6   communications between website visitors and websites. Unlike other online advertising tools,

7   Session Replay Code allows a website to capture and record nearly every action a website

8   visitor takes while visiting the website, including actions that reveal the visitor's personal or

9   private sensitive data, sometimes even when the visitor does not intend to submit the data to the

10  website operator, or has not finished submitting the data to the website operator.[15] As a result,

11  website visitors "aren't just sharing data with the [web]site they're on . . . but also with an

12  analytics service that may be watching over their shoulder."[16]

13        27.     Session Replay Code works by inserting computer code into the various event

14  handling routines that web browsers use to receive input from users, thus intercepting the

15  occurrence of actions the user takes. When a website delivers Session Replay Code to a user's

16  browser, the browser will follow the code's instructions by sending responses in the form of

17  "event" data to a designated third-party server. Typically, the server receiving the event data is

18  controlled by the third-party entity that wrote the Session Replay Code, rather than the owner

19  of the website where the code is installed.

20

21  ───────────────

22  [14] Erin Gilliam Haije, *[Updated] Are Session Recording Tools a Risk to Internet Privacy?*, Mopinion
    (Mar. 7, 2018), https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/.
    [15] *Id.*

23  [16] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*, Medium
    (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-
    mouse-moves-4134cb1cc7a0.

CLASS ACTION COMPLAINT - 8

28.     The types of events captured by Session Replay Code vary by specific product and configuration, but in general are wide-ranging and can encompass virtually every user action, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website. To permit a reconstruction of a user's visit accurately, the Session Replay Code must be capable of capturing these events at hyper-frequent intervals, often just milliseconds apart. Events are typically accumulated and transmitted in blocks periodically throughout the user's website session, rather than after the user's visit to the website is completely finished.

29.     Unless specifically masked through configurations chosen by the website owner, some visible contents of the website may also be transmitted to the Session Replay Provider.

30.     Once the events from a user session have been recorded by a Session Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video, meaning that "[u]nlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions."[17]

31.     Because most Session Replay Codes will by default indiscriminately capture the maximum range of user-initiated events and content displayed by the website, researchers have found that a variety of highly sensitive information can be captured in event responses from website visitors, including medical conditions, credit card details, and other personal information displayed or entered on webpages.[18]

---

[17] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom to Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.
[18] *Id.*

CLASS ACTION COMPLAINT - 9

32.     Most alarming, Session Replay Code may capture data that the user did not even intentionally transmit to a website during a visit, and then make that data available to website owners when they access the session replay through the Session Replay Provider. For example, if a user writes information into a text form field, but then chooses not to click a "submit" or "enter" button on the website, the Session Replay Code may nevertheless cause the non-submitted text to be sent to the designated event-response-receiving server before the user deletes the text or leaves the page. This information will then be viewable to the website owner when accessing the session replay through the Session Replay Provider.

33.     Session Replay Code does not necessarily anonymize user sessions, either.

34.     First, if a user's entry of personally identifying information is captured in an event response, that data will become known and visible to both the Session Replay Provider and the website owner.

35.     Second, if a website displays user account information to a logged-in user, that content may be captured by Session Replay Code.

36.     Third, some Session Replay Providers explicitly offer website owners cookie functionality that permits linking a session to an identified user, who may be personally identified if the website owner has associated the user with an email address or username.[19]

37.     Session Replay Providers often create "fingerprints" that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information. The resulting fingerprint, which is often unique to a user and rarely changes, are collected across all sites that the Session Replay Provider monitors.

---

[19] *Id.*; *see also FS.identify – Identifying users*, FullStory, https://help.fullstory.com/hc/en-us/articles/360020828113, (last visited Sep. 8, 2022).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

38.     When a user eventually identifies themselves to one of these websites (such as by filling in a form), the provider can then associate the fingerprint with the user identity and can then back-reference all of that user's other web browsing across other websites previously visited, including on websites where the user had intended to remain anonymous—even if the user explicitly indicated that they would like to remain anonymous by enabling private browsing.

39.     In addition to the privacy invasions caused by the diversion of user communications with websites to third-party Session Replay Providers, Session Replay Code also exposes website visitors to identity theft, online scams, and other privacy threats.[20] Indeed, "[t]he more copies of sensitive information that exist, the broader the attack surface, and when data is being collected [ … . ] it may not be stored properly or have standard protections" increasing "the overall risk that data will someday publicly leak or be breached."[21]

40.     Recognizing the privacy concerns posed by Session Replay Code, in 2019 Apple required app developers to remove or properly disclose the use of analytics code that allow app developers to record how a user interacts with their iPhone apps or face immediate removal from the app store.[22] In announcing this decision, Apple stated: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[23]

---

[20] Juha Sarrinen, *Session Replay is a Major Threat to Privacy on the Web*, itnews (Nov. 16, 2017), https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-privacy-on-the-web-477720.
[21] Lily Hay Newman, *Covert 'Replay Sessions' Have Been harvesting Passwords by Mistake*, WIRED (Feb. 26, 2018), https://www.wired.com/story/covert-replay-sessions-harvesting-passwords/.
[22] Zack Whittaker, *Apple Tells App Developers to Disclose or Remove Screen Recording Code*, TechCrunch (Feb. 7, 2019), https://techcrunch.com/2019/02/07/apple-glassbox-apps/.
[23] *Id.*

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

D.   **Defendants Secretly Wiretap Zillow's Website Visitors' Electronic Communications.**

41.     Zillow operates the Zillow website. Zillow is the "leading online residential real estate" marketplace in the United States for consumers, connecting them to the information and real estate professionals they need to buy, sell, or rent a home.[24]

42.     Zillow has become "synonymous with residential real estate."[25] Zillow's website is the most popular real estate website in the United States, with over thirty-six million unique monthly visitors[26] and more than 135 million properties are listed on its website.[27] According to a 2021 Google Trends report, "[t]oday more people search 'Zillow' than 'real estate.'"[28]

43.      However, unbeknownst to the millions of individuals perusing Zillow's real estate listings, Zillow intentionally procures and embeds various Session Replay Codes from Microsoft and other Session Replay Providers on its website to track and analyze website user interactions with Zillow's website.

44.     Zillow has procured Microsoft to employ its Session Replay Provider on Zillow's website.

---

[24] Zillow Group, Inc., *Form 10-K* (Dec. 31, 2021), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001617640/87bbbf30-39cb-4eb7-acdc-1b51265b9687.pdf ("Zillow 10-K").
[25] *Id.*
[26] *Most Popular Real Estate Websites in the United States as of October 2021, Based on Unique Monthly Visits*, Statista, https://www.statista.com/statistics/381468/most-popular-real-estate-websites-by-monthly-visits-usa/, (last visited Sep. 8, 2022).
[27] Zillow 10-K, *supra*, note 1.
[28] *Id.*

CLASS ACTION COMPLAINT - 12

45.     Microsoft is the owner and operator of a Session Replay Code called Clarity, which provides basic information about website user sessions, interactions, and engagement, and breaks down users by device type, county, and other dimensions.[29]

46.     Clarity captures a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more.[30] Indeed, Clarity organizes the information it captures into over 30 different categories including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls.[31] Clarity even provides a specific user ID to each website visitor so their website use and interactions can be monitored over time.[32]

47.     The information collected and recorded by Clarity can then be used to play back a user's journey through a website, showing how they interacted with site navigation, calls to action, search features, and other on-page elements.[33] Put differently, the information Clarity captures can be translated into a simulation video of how a user interacts with a website.

48.     Clarity also uses the information captured to create detailed heatmaps of a website that provide information about which elements of a website have high user

---

[29] Jono Alderson, *An Introduction to Microsoft Clarity*, Yoast, https://yoast.com/introduction-microsoft-clarity/#h-what-is-microsoft-clarity, (last visited Sep. 8, 2022).
[30] *Clarity Data Collection*, Microsoft, https://docs.microsoft.com/en-us/clarity/clarity-data, (last visited Aug. 24, 2022).
[31] *Filters Overview*, Microsoft (Jul. 26, 2022), https://docs.microsoft.com/en-us/clarity/clarity-filters.
[32] *Id.*
[33] Roger Montti, *Microsoft Clarity Analytics: Everything You Need to Know*, SEJ (Jan. 19, 2022), https://www.searchenginejournal.com/microsoft-clarity-analytics-overview/419311/#close.

CLASS ACTION COMPLAINT - 13

1  engagement, how far website users scrolled on the website, and the total clicks within a given

2  area on the website.[34]

3  49.     As such, Clarity collects highly personal information and substantive

4  communications that can be tied to directly to a website user's identity as it monitors, records,

5  and collects a website user's every move.

6  50.     Clarity offers websites three standard approaches when it comes to masking

7  sensitive information collected from a user's interactions with a website: strict (all text entered

8  by a user is purportedly masked), balanced (sensitive text entered into certain specifically pre-

9  coded fields, such as passwords, and credit card information, is masked), and relaxed (no text

10  entered by a suer is masked).[35] When Clarity is set to "relaxed," whatever information a user

11  enters into the field on a website can be previewed in session recordings.[36] Additionally,

12  Clarity enables websites to select specific elements and content to mask or unmask,

13  customizing the standard masking approaches.[37]

14  51.     However, even when a website operator selects the "strict" and "balanced"

15  settings, Clarity is nevertheless capable of collecting text entered by users, including text

16  containing sensitive information.

17  52.     In order for Clarity to capture website visitors' interactions with a website,

18  Clarity's JavaScript must be installed on the website, either directly hard-coded on the website

19  or on a third-party platform, such as Google Tag Manager.[38] Clarity is embedded in a website

20

21  ---

[34] Haley Walden, *What is Microsoft Clarity? (& How Can it Improve SEO?)*, Elegant Themes (Jun. 12, 2022), https://www.elegantthemes.com/blog/wordpress/microsoft-clarity-improve-seo.

22  [35] *Microsoft Clarity, An Essential Part of Customer Experience Optimization*, TechAir (Aug. 17, 2022), https://privacy.microsoft.com/en-US/privacystatement.

23  [36] *Id.*

[37] *Masking Content*, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-masking.

[38] *Set Up Clarity*, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-setup.

CLASS ACTION COMPLAINT - 14

by adding its JavaScript code into the HyperText Markup Language (HTML) underlying the website. As with all HTML code, Clarity is not visible to a user who is navigating a webpage through a standard browser's default view, because by design a browser will interpret HTML, without showing it, in order to render a more user-friendly display that is the designer's intended presentation of the website to a visitor.

53.     Clarity can be revealed to technical users who understand web technologies and can enable alternative display modes that will show underlying HTML, such as "developer tools," but even then, the users would first need to know what they are looking for to find the script. Developer tools are intended for website programmers, and are generally not meaningful or comprehensible by those without a background in computer science.

54.     Once Clarity's JavaScript is installed on a website, Clarity begins collecting website user's interactions within two hours of installation.[39] Once deployed, Clarity the wiretapping commences immediately on the visitor's web browser when the visitor loads a website in their browser.

55.     Data collected by Clarity is then stored in the Microsoft Aure cloud service and Microsoft has access to that information.[40]

56.     Zillow's procurement and use of Microsoft Clarity's Session Replay Code, and procurement and use of other Session Replay Codes through various Session Replay Providers, constitutes wiretapping in violation Washington statutory and common law.

**E.     Plaintiffs' and Class Members' Experience.**

---

[39] *Frequently Asked Questions*, Microsoft, https://docs.microsoft.com/en-us/clarity/faq, (last visited Aug. 24, 2022).
[40] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

CLASS ACTION COMPLAINT - 15

57.     Plaintiff Perkins has visited Zillow's website on her computer during the period from April through June 2021.  Plaintiff Perkins visited Zillow's website for the purposes of searching for and obtaining a rental apartment.  During her visits made during the period April through June 2021, Plaintiff Perkins substantively engaged with Zillow's website and entered certain personal and financial information, such as her name, address, date of birth, phone number, social security number, and credit information into text fields..

58.     Plaintiff Hasson routinely visits Zillow's website to search for properties using his computer, and he has done so numerous times throughout 2022. During his visits, including visits made during 2022, Plaintiff Hasson has substantively engaged with Zillow's website and has entered personal and financial information, such as name, address, date of birth, phone number, credit and financial information into text fields.

59.     While visiting Zillow's website, Plaintiffs fell victim to Defendants' unlawful monitoring, recording, and collection of Plaintiffs' Website Communications with Zillow's website.

60.     Unbeknownst to Plaintiffs, and without Plaintiffs' consent, Zillow procures and embeds Microsoft's Session Replay Code on its website. Plaintiffs' Website Communications were captured by Microsoft's Session Replay Code and sent to various Session Replay Providers.

61.     For example, when visiting Zillow's website, if a website user views a certain piece of property for rent or sale, that information is captured by the Session Replay Codes embedded on the website:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992





*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after viewing a Studio apartment priced at $1,488 while visiting www.zillow.com.*

62.     Similarly, when visiting Zillow's website, if a user enters personal information in a text box to schedule a tour, that information is captured by the Session Replay Codes embedded on the website:



*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after entering a name (purple text) to a text box to schedule a tour of a property.*

63.     The wiretapping by the Session Replay Codes are ongoing during the visit, and the Session Replay Code intercepts the contents of these communications between Plaintiffs and Zillow with instantaneous transmissions to Microsoft's Session Replay software and other

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Session Replay Providers, as illustrated below, in which only 30 milliseconds were required to

send a packet of even response data, which would indicate whatever the website user had just

done:



64.     The Session Replay Codes operate in the same manner for all putative Class

members.

65.     Like Plaintiffs, each Class member visited Zillow's website with Microsoft's

and other Session Replay Providers' Code embedded in it.  Those Session Replay Codes

intercepted the Class members' Website Communications with Zillow's website by sending

hyper-frequent logs of those communications to Session Replay Providers.

66.     Even if Zillow masks certain elements when it configures the settings of the

Session Replay Code embedded on its website, any operational iteration of the Session Replay

CLASS ACTION COMPLAINT - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Code will, by its very nature and purpose, intercept the contents of communications between

2  the website's visitors and the website owner.

3       67.    For example, even with heightened masking enabled, Defendants—through the

4  use of Session Replay Providers' Code—are still able to learn through the intercepted data

5  exactly which pages a user navigates to, how the user moves through the page (such as which

6  areas the user zooms in on or interacted with), and additional substantive information.

7       68.    As a specific example, if a user types a particular address or zip code into

8  Zillow's main search bar and initiates a search, even if the text entered into the search bar is

9  masked, Session Replay Providers will still learn what is entered into the bar as soon as the

10 search result page loads. This is so because the responsive search results will be displayed on

11 the subsequent page, and the responsive content generated by Zillow will repeat the searched

12 information back on the generated page. That information will not be masked even if user-

13 inputted text is fully masked in a text field.

## CLASS ACTION ALLEGATIONS

15      69.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23

16 individually and on behalf of the following Class:

17     All natural persons in the United States and its territories whose Website Communications were captured through the use of Session Replay Code embedded in Zillow's website

19      70.    Excluded from the Class are Defendants, their parents, subsidiaries, affiliates,

20 officers, and directors, all persons who make a timely election to be excluded from the Class,

21 the judge to whom this case is assigned and any of the judge's immediate family members, and

22 the attorneys who enter their appearance in this action.

23

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

71.     **Numerosity:** The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members and their identities may be obtained from the books and records of Defendants or other Session Replay Providers.

72.     **Commonality:** This action involves questions of law and fact that are common to the Class members. Such common questions include, but are not limited to: (a) whether Zillow procured Microsoft and other Session Replay Providers to intercept Zillow's website visitors' Website Communications; (b) whether Defendants intentionally disclosed the intercepted Website Communications of Zillow's website users; (c) whether Defendants acquire the contents of website users' Website Communications without their consent; (d) whether Defendants' conduct violates Washington Wiretapping Statute, Wash. Rev. Code §9.73.030, *et seq*.; (e) whether Plaintiffs and the Class members are entitled to equitable relief; and (f) whether Plaintiffs and the Class members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief.

73.     **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above. For instance, Plaintiffs and each member of the Class had their communications intercepted in violation of the law and their right to privacy. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiffs and the members of the Class typical of one another.

74.     **Adequacy of Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, including litigations to

CLASS ACTION COMPLAINT - 20

remedy privacy violations. Plaintiffs have no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the interests of the other members of the Class.

75.     **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

76.     **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiffs and each member of the Class. If Defendants intercepted Plaintiffs' and Class members' Website Communications, then Plaintiffs and each Class member suffered damages by that conduct.

77.     **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendants' books and records or the other Session Replay Providers' books and records.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**CHOICE OF LAW**

78.     Defendants' actions discussed herein were orchestrated and implemented by Zillow at its corporate headquarters in Washington, and the conduct Plaintiffs complains of occurred in, and radiated from, Washington.

79.     The key wrongdoing at issue in this litigation (Zillow's procurement of Microsoft and other Session Replay Providers to intercept Zillow's website visitors' Website Communications; Zillow's intentional disclosure of the intercepted Website Communications of its website users; Zillow's acquisition of the contents of website users' Website Communications without their consent; and Zillow's and Microsoft's violation of the Washington Wiretap Statute) emanated from Defendants' respective headquarters located in Washington.

80.     Moreover, Zillow's Terms of Use specifically state that the "Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict of laws' provisions."  https://www.zillowgroup.com/terms-of-use/.   Moreover, Zillow states that users of its website "agree to submit to the personal and exclusive jurisdiction and venue in the state and federal courts sitting in King County, Washington for any and all disputes, claims and actions arising from or in connection with the Services or otherwise under these Terms of Use." https://www.zillowgroup.com/terms-of-use/.

81.     Washington, which seeks to protect the rights and interests of Washington and other U.S. consumers against a company doing business in Washington, has a greater interest in the claims of Plaintiffs and the Class than any other state and is most intimately concerned with the outcome of this litigation.

CLASS ACTION COMPLAINT - 22

82.     Application of Washington law to a nationwide Class with respect to Plaintiffs'

and the Class's claims is neither arbitrary nor fundamentally unfair because Washington has

significant contacts and a significant aggregation of contacts that create a state interest in the

claims of Plaintiffs and the nationwide Class.

## COUNT I
### Violation of the Washington Wiretapping Statute
### Wash. Rev. Code §9.73.030, et. seq.

83.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

84.     Plaintiffs bring this claim individually and on behalf of the Class against

Defendants.

85.     The Washington Wiretapping Statue (the "Act") prohibits the interception or

recording any private communication transmitted by telephone, telegraph, radio, or other

device between two or more individuals between points within or without the state by any

device electronic or otherwise designed to record and/or transmit said communication

regardless how such device is powered or actuated, without first obtaining the consent of all the

participants in the communication.  Wash. Rev. Code §9.73.030(1)(a).

86.     The Act further states that "[a]ny person who, directly or by means of a

detective agency or any other agent, violates the provisions of this chapter shall be subject to

legal action for damages, to be brought by any other person claiming that a violation of this

statute has injured his or her business, his or her person, or his or her reputation. A person so

injured shall be entitled to actual damages, including mental pain and suffering endured by him

or her on account of violation of the provisions of this chapter, or liquidated damages computed

at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   dollars, and a reasonable attorney's fee and other costs of litigation." Wash. Rev. Code

2   §9.73.060.

3       87.     Zillow and Microsoft are persons for purposes of the Act because they are

4   corporations.

5       88.     Session Replay Code like that licensed by Microsoft and procured by Zillow is a

6   "device" that is "designed to record and/or transmit" communications within the meaning of

7   the Act.

8       89.     Plaintiffs' and Class members' intercepted Website Communications constitute

9   "private communications" within the meaning of the Act.

10      90.     Defendants intentionally procure and embed Microsoft's Session Replay Code

11  and other Session Replay Providers Code on Zillow's website to spy on, automatically and

12  secretly, and to intercept Zillow's website visitors' electronic interactions communications with

13  Zillow in real time.

14      91.     Plaintiffs' and Class members' electronic communications are intercepted

15  contemporaneously with their transmission.

16      92.     Plaintiffs and Class members did not consent to having their Website

17  Communications wiretapped.

18      93.     Pursuant to Wash. Rev. Code §9.73.060, Plaintiffs and the Class members seek

19  (1) actual damages, not less than liquidated damages computed at the rate of one hundred

20  dollars a day for each day of violation, not to exceed one thousand dollars, and (2) reasonable

21  attorneys' fees and other costs of litigation incurred.

22      94.     Defendants' conduct is ongoing, and they continue to unlawfully intercept the

23  communications of Plaintiffs and Class members any time they visit Zillow's website with

CLASS ACTION COMPLAINT - 24

Microsoft's Session Replay Code enabled without their consent. Plaintiffs and Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications and to require Zillow to obtain consent prior to utilizing Microsoft's Session Replay Code and other Session Replay Providers Code to intercept website visitors' electronic communications on Zillow's website.

**COUNT II**
**Invasion of Privacy – Intrusion Upon Seclusion**

95.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

96.     Washington common law recognizes the tort of invasion of privacy. The right to privacy is also established in the Constitution of the State of Washington which explicitly recognizes an individual's right to privacy under Article 1 §7: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

97.     Plaintiffs bring this claim individually and on behalf of the Class.

98.     Plaintiffs and Class members have an objective, reasonable expectation of privacy in their Website Communications.

99.     Plaintiffs and Class members did not consent to, authorize, or know about Defendants' intrusion at the time it occurred. Plaintiffs and Class members never agreed that Defendants could collect or disclose their Website Communications.

100.     Plaintiffs and Class members had a legitimate and reasonable expectation of privacy in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

101.     Defendants intentionally intrude on Plaintiffs' and Class members' private life, seclusion, or solitude, without consent.

CLASS ACTION COMPLAINT - 25

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

102.     Defendants' conduct is highly offensive and objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

103.     Defendants' conduct, by unlawfully intercepting the communications of Plaintiffs and Class members any time they visit Zillow's website with Microsoft's Session Replay Code enabled without their consent, was a proximate cause of damage to Plaintiffs and Class members.

104.     Plaintiffs and Class members were harmed by Defendants' wrongful conduct as Defendants' conduct has caused Plaintiffs and the Class mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

105.     Defendants' conduct has needlessly harmed Plaintiffs and the Class by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiffs and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

106.     Additionally, given the monetary value of individual personal information, Defendants deprived Plaintiffs and Class members of the economic value of their interactions with Defendant's website, without providing proper consideration for Plaintiffs' and Class members' property.

107.     Further, Defendants have improperly profited from their invasion of Plaintiffs and Class members' privacy in their use of this data for their economic gain.

108.     As a direct and proximate result of Defendants conduct, Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

109.    Defendants' conduct is ongoing, and they continue to unlawfully intercept the communications of Plaintiffs and Class members any time they visit Zillow's website with Microsoft's Session Replay Code and other Session Replay Providers Code enabled without their consent. Plaintiffs and Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of themselves and the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiffs' and the Class's favor and against Defendants as follows:

A.    Certifying the Class and appointing Plaintiffs as the Class representatives;

B.    Appointing Plaintiffs' counsel as class counsel;

C.    Declaring that Defendants' past conduct was unlawful, as alleged herein;

D.    Declaring Defendants' ongoing conduct is unlawful, as alleged herein;

E.    Enjoining Defendants from continuing the unlawful practices described herein, and awarding such injunctive and other equitable relief as the Court deems just and proper;

F.    Awarding Plaintiffs and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

G.    Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

H.    Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

I.    Granting such other relief as the Court deems just and proper.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury of any and all issues in this action so triable of right.

DATED this 12th day of September, 2022.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/ Kim D. Stephens, P.S.*
Kim D. Stephens, P.S., WSBA #11984
kstephens@tousley.com
*s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
jdennett@tousley.com
*s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA #52684
kboyd@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone:  206.682.5600
Fax: 206.682.2992

Joseph P. Guglielmo, (*pro hac vice* forthcoming)
Carey Alexander (*pro hac vice* forthcoming)
Ethan Binder (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS**
**AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com
ebinder@scott-scott.com

CLASS ACTION COMPLAINT - 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

E. Kirk Wood (*pro hac vice* forthcoming)
Sharika Robinson (*pro hac vice* forthcoming)
Marcela Jenkins (*pro hac vice* forthcoming)
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 908-4906
kirk@woodlawfirmllc.com

Gary F. Lynch (*pro hac vice* forthcoming)
Kelly K. Iverson (*pro hac vice* forthcoming)
Jamisen A. Etzel (*pro hac vice* forthcoming)
Elizabeth Pollock-Avery (*pro hac vice* forthcoming)
Nicholas A. Colella (*pro hac vice* forthcoming)
Patrick D. Donathen (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
elizabeth@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT - 29