1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

*In Re: Zillow Group, Inc. Session Replay
Software Litigation*

10

This Document Refers to: All Actions

11

12

Master File No. 2:22-cv-01282-JLR

**CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

13        Plaintiffs Natalie Perkins, Kenneth Hasson, Jamie Huber, David Kauffman, Ashley

14   Popa, Jill Strelzin, Jill Adams, Jill Adams as natural mother and next friend of her minor child,

15   H.A, and Ryan Margulis (collectively "Plaintiffs"), individually and on behalf of themselves

16   and all others similarly situated, hereby file this consolidated amended class action complaint

17   against Defendant Zillow Group, Inc. ("Zillow") and Defendant Microsoft Corporation

18   ("Microsoft") (collectively "Defendants"), and in support thereof allege the following:

19                                **INTRODUCTION**

20        1.        This is a class action brought against Defendants for wiretapping the electronic

21   communications of visitors to Zillow's website, www.zillow.com, and all of its subpages

22   ("Zillow's website"). Zillow procures third-party vendors, such as Microsoft Corporation, to

23   embed snippets of JavaScript computer code ("Session Replay Code") on Zillow's website,

1    which then deploys on each website visitor's internet browser for the purpose of intercepting

2    and recording the website visitor's electronic communications with the Zillow website,

3    including their mouse movements, finger swipes (for those who used their mobile phone and its

4    web browser to interact with the website), clicks, keystrokes (such as text being entered into an

5    information field or text box), URLs of web pages visited, and/or other electronic

6    communications in real-time ("Website Communications").  Microsoft and the other third-party

7    vendors (collectively, "Session Replay Providers") create and deploy the Session Replay Code

8    at Zillow's request.

9           2.     After intercepting and capturing the Website Communications, Zillow,

10   Microsoft and other Session Replay Providers use those Website Communications to recreate

11   website visitors' entire visit to Zillow's website. Additionally, Microsoft and other Session

12   Replay Providers create a video replay of the user's behavior on the website and provide it to

13   Zillow for analysis. Zillow's procurement of the Session Replay Providers to secretly deploy

14   the Session Replay Code results in the electronic equivalent of "looking over the shoulder" of

15   each visitor to the Zillow website for the entire duration of their website interaction.

16          3.     Defendants' conduct violates the Washington Wiretapping Statute, Wash. Rev.

17   Code §9.73.030 *et seq.*, the Illinois Eavesdropping Act, 720 ILCS 5/14-1, *et seq.*, the

18   Pennsylvania Wiretap and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. 5701, *et seq.*,

19   California Penal Code § 631, the Missouri Wiretap Act, Mo. Ann. Stat. § 542.400, *et seq.*, and

20   constitutes an invasion of the privacy rights of website visitors.

21          4.     Plaintiffs bring this action individually and on behalf of a nationwide class of all

22   natural persons in the United States and its territories whose Website Communications were

23   intercepted through the use of Session Replay Code embedded in www.zillow.com (the

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 2

1    "Nationwide Class").  In the alternative, Plaintiffs bring this action on behalf of all natural

2    persons in the states of California, Illinois, Missouri, and Pennsylvania whose Website

3    Communications were intercepted through the use of Session Replay Code embedded in

4    www.zillow.com (the "State Subclasses") (the "Nationwide Class" and "State Subclasses" are

5    collectively referred to as the "Classes").  Plaintiffs seek all civil remedies provided under the

6    causes of action, including but not limited to compensatory, statutory, and/or punitive damages,

7    declaratory and injunctive relief, and attorneys' fees and costs.

8                                          **PARTIES**

9            5.       Plaintiff Natalie Perkins is a citizen of South Carolina and at all times relevant to

10   this action, resided and was domiciled in York County, South Carolina.

11           6.       Plaintiff Kenneth Hasson is a citizen of Pennsylvania, and at all times relevant to

12   this action, resided and was domiciled in Lawrence County, Pennsylvania.

13           7.       Plaintiff Jamie Huber is a citizen of Pennsylvania, and at all times relevant to

14   this action, resided and was domiciled in Delaware County, Pennsylvania.

15           8.       Plaintiff David Kauffman a citizen of California, and at all times relevant to this

16   action, resided and was domiciled in San Diego County, California.

17           9.       Plaintiff Ashley Popa is a citizen of Pennsylvania, and at all times relevant to

18   this action, resided and was domiciled in Lawrence County, Pennsylvania.

19           10.      Plaintiff Jill Strezlin is a citizen of Illinois, and at all times relevant to this

20   action, resided and was domiciled in Cook County, Illinois.

21           11.      Plaintiff Jill Adams is a citizen of Missouri, and at all times relevant to this

22   action, resided and was domiciled in Saint Louis County, Missouri.

23

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 3

12.     Plaintiff Jill Adams' minor child, H.A., is a citizen of Missouri, and at all times relevant to this action, resided and was domiciled in Saint Louis County, Missouri.

13.     Plaintiff Jill Adams has consented to serve as next friend of minor, H.A.

14.     Plaintiff Ryan Margulis is a citizen of Illinois, and at all times relevant to this action, resided and was domiciled in Cook County, Illinois.

15.     Defendant Zillow Group, Inc. is a corporation organized under the laws of Washington, and its principal place of business is located at 1301 Second Ave., Floor 31, Seattle, Washington 98101. Defendant Zillow Group, Inc. is a citizen of Washington.

16.     Defendant Microsoft Corporation is a corporation organized under the laws of Washington, and its principal place of business is located at One Microsoft Way, Redmond, Washington 98052. Defendant Microsoft Corporation is a citizen of Washington.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the Classes are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class, including Plaintiffs, are citizens of a state different than Defendants.

18.     This Court has personal jurisdiction over Defendants because they are both residents of Washington. In addition, a substantial part of the events and conduct giving rise to Plaintiffs' claims and harm occurred in the state of Washington. The privacy violations complained of herein resulted from Defendants' purposeful and tortious acts directed towards citizens throughout the United States.  Additionally, Zillow's Terms of Use specifically state that individuals' Terms of Use are governed by the laws of the State of Washington, without

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 4

giving effect to its conflict of laws' provisions, and that Defendant Zillow operates the services

it provides to individuals from Zillow's offices in the State of Washington.  *See*

https://www.zillowgroup.com/terms-of-use/.

19.     At all relevant times, Defendants knew that their practices would directly result

in collection of information throughout the United States and its territories while individuals

browse Zillow's website. Defendants chose to avail themselves of the business opportunities of

making Zillow's real property and rental advertising services specifically available through

Washington and collecting real-time data from website visit sessions initiated by individuals

located throughout the United States, including in Washington, and the claims alleged herein

arise from those activities.

20.     Zillow also knows that many users visit and interact with Zillow's websites

while they are physically present in Washington and throughout the United States and its

territories. Both desktop and mobile versions of Zillow's website allow a user to search for

nearby properties by providing the user's "current location," as furnished by the location-

determining tools of the device the user is using or by the user's IP address (*i.e.*, without

requiring the user to manually input an address). Users' employment of automatic location

services in this way means that Zillow is continuously made aware that its website is being

visited by people located throughout the United States, including in Washington, and that such

website visitors are being wiretapped in violation of statutory and common law of Washington

and the United States and its territories.

21.     Pursuant to 28 U.S.C. § 1391(b)(1), this Court is the proper venue for this action

because a substantial part of the events, omissions, and acts giving rise to the claims herein

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

occurred in this District. In addition, since both Defendants reside in this judicial district, this Court is the proper venue for this action under 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A.      Website User and Usage Data Have Immense Economic Value.**

22.      The "world's most valuable resource is no longer oil, but data."[1]

23.      In 2022, Business News Daily reported that some businesses collect personal data (*i.e.*, gender, web browser cookies, IP addresses, and device IDs), engagement data (*i.e.*, how consumers interact with a business's website, applications, and emails), behavioral data (*i.e.*, customers' purchase histories and product usage information), and attitudinal data (*i.e.*, data on consumer satisfaction) from consumers.[2] This information is valuable to companies because they can use this data to improve customer experiences, refine their marketing strategies, capture data to sell it, and even to secure more sensitive consumer data.[3]

24.      In a consumer-driven world, the ability to capture and use customer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[4]

---

[1] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longeroil-but-data.

[2] Max Freedman, *How Businesses Are Collecting Data (And What They're Doing With It)*, Business News Daily (Aug. 5, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html.

[3] *Id.*

[4] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

25.     In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[5] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[6]

26.     OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."[7]

**B.     Website Users Have a Reasonable Expectation of Privacy in Their Interactions with Websites.**

27.     Consumers are skeptical and are wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."[8]

28.     Another recent paper also indicates that most website visitors will assume their detailed interactions with a website will be used only by the website and will not be shared with

---

[5] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.
[6] *Id.* at 25.
[7] *Id.*
[8] Lance Whitney, *Data privacy is a growing concern for more consumers*, TechRepublic (Aug. 17, 2021), https://www.techrepublic.com/article/data-privacy-is-a-growing-concern-for-more-consumers/.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 7

a party they know nothing about.[9] As such, website visitors reasonably expect that their interactions with a website should not be released to third parties unless explicitly stated.[10]

29.     Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

30.     A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[11]

31.     Moreover, according to a study by the Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[12]

32.     Users act consistently with their expectation of privacy. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before

---

[9] *CUJO AI Recent Survey Reveals U.S. Internet Users Expectations and Concerns Towards Privacy and Online Tracking*, CUJO (May 26, 2020), https://www.prnewswire.com/news-releases/cujo-ai-recent-survey-reveals-us-internet-users-expectations-and-concerns-towards-privacy-and-online-tracking-301064970.html.
[10] Frances S. Grodzinsky, Keith W. Miller & Marty J. Wolf, *Session Replay Scripts: A Privacy Analysis*, The Information Society, 38:4, 257, 258 (2022).
[11] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, Consumer Reports (May 11, 2017), https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.
[12] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-Confusedand-feeling-lack-of-control-over-their-personal-information/.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users

2    chose not to allow such tracking.[13]

3          **C.      How Session Replay Code Works.**

4          33.     Session Replay Code, such as that implemented in Zillow's website, enables

5    website operators to record, save, and replay website visitors' interactions with a given website.

6    The clandestinely deployed code provides online marketers and website designers with insights

7    into the user experience by recording website visitors "as they click, scroll, type or navigate

8    across different web pages."[14]

9          34.     While Session Replay Code is utilized by websites for some legitimate purposes,

10   it goes well beyond normal website analytics when it comes to collecting the actual contents of

11   communications between website visitors and websites. Unlike other online advertising tools,

12   Session Replay Code allows a website to capture and record nearly every action a website

13   visitor takes while visiting the website, including actions that reveal the visitor's personal or

14   private sensitive data, sometimes even when the visitor does not intend to submit the data to the

15   website operator, or has not finished submitting the data to the website operator.[15] As a result,

16   website visitors "aren't just sharing data with the [web]site they're on . . . but also with an

17   analytics service that may be watching over their shoulder."[16]

18

19   ──────────────────

20   [13] Margaret Taylor, *How Apple screwed Facebook*, Wired, (May 19, 2021),
     https://www.wired.co.uk/article/apple-ios14-facebook.
21   [14] Erin Gilliam Haije, *[Updated] Are Session Recording Tools a Risk to Internet Privacy?*,
     Mopinion (Mar. 7, 2018), https://mopinion.com/are-session-recording-tools-a-risk-to-internet-
     privacy/.
22   [15] *Id.*
     [16] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*,
23   Medium (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-
     exactly-how-your-mouse-moves-4134cb1cc7a0.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

35.     Session Replay Code such as Microsoft's works by inserting computer code into the various event handling routines that web browsers use to receive input from users, thus intercepting the occurrence of actions the user takes. When a website delivers Session Replay Code to a user's browser, the browser will follow the code's instructions by sending responses in the form of "event" data to a designated third-party server. Typically, the server receiving the event data is controlled by the third-party entity that wrote the Session Replay Code, rather than the owner of the website where the code is installed.

36.     The types of events captured by Session Replay Code vary by specific product and configuration, but in general are wide-ranging and can encompass virtually every user action, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entries, and numerous other forms of a user's navigation and interaction through the website. To permit a reconstruction of a user's visit accurately, the Session Replay Code must be capable of capturing these events at hyper-frequent intervals, often just milliseconds apart. Events are typically accumulated and transmitted in blocks periodically throughout the user's website session, rather than after the user's visit to the website is completely finished.

37.     Unless specifically masked through configurations chosen by the website owner, some visible contents of the website may also be transmitted to the Session Replay Provider.

38.     Once the events from a user session have been recorded by a Session Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video, meaning that "[u]nlike typical analytics

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions."[17]

39.     Because most Session Replay Codes will by default indiscriminately capture the maximum range of user-initiated events and content displayed by the website, researchers have found that a variety of highly sensitive information can be captured in event responses from website visitors, including medical conditions, credit card details, and other personal information displayed or entered on webpages.[18]

40.     Most alarming, Session Replay Code may capture data that the user did not even intentionally transmit to a website during a visit, and then make that data available to website owners when they access the session replay through the Session Replay Provider. For example, if a user writes information into a text form field, but then chooses not to click a "submit" or "enter" button on the website, the Session Replay Code may nevertheless cause the non-submitted text to be sent to the designated event-response-receiving server before the user deletes the text or leaves the page. This information will then be viewable to the website owner when accessing the session replay through the Session Replay Provider.

41.     Session Replay Code does not necessarily anonymize user sessions, either.

42.     First, if a user's entry of personally identifying information is captured in an event response, that data will become known and visible to both the Session Replay Provider and the website owner.

---

[17] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom to Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.
[18] *Id.*

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 11

43.     Second, if a website displays user account information to a logged-in user, that content may be captured by Session Replay Code.

44.     Third, some Session Replay Providers explicitly offer website owners cookie functionality that permits linking a session to an identified user, who may be personally identified if the website owner has associated the user with an email address or username.[19]

45.     Session Replay Providers often create "fingerprints" that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information. The resulting fingerprint, which is often unique to a user and rarely changes, are collected across all sites that the Session Replay Provider monitors.

46.     When a user eventually identifies themselves to one of these websites (such as by filling in a form), the provider can then associate the fingerprint with the user identity and can then back-reference all of that user's other web browsing across other websites previously visited, including on websites where the user had intended to remain anonymous—even if the user explicitly indicated that they would like to remain anonymous by enabling private browsing.

47.     In addition to the privacy invasions caused by the diversion of user communications with websites to third-party Session Replay Providers, Session Replay Code also exposes website visitors to identity theft, online scams, and other privacy threats.[20] Indeed, "[t]he more copies of sensitive information that exist, the broader the attack surface, and when

---

[19] *Id.*; *see also FS.identify – Identifying users*, FullStory, https://help.fullstory.com/hc/en-us/articles/360020828113, (last visited Sep. 8, 2022).
[20] Juha Sarrinen, *Session Replay is a Major Threat to Privacy on the Web*, itnews (Nov. 16, 2017), https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-privacy-on-the-web-477720.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 12

data is being collected [… .] it may not be stored properly or have standard protections" increasing "the overall risk that data will someday publicly leak or be breached."[21]

48.     The privacy concerns arising from Session Replay Code are not theoretical or imagined. The CEO and founder of LOKKER, a provider of data privacy and compliance solutions has said "[consumers] should be concerned" about the use of Session Replay Code because "they won't know these tools are operating 'behind the scenes' of their site visit" and "even if the company disclosed that they are using these tools, consumers wouldn't likely be able to opt-out and still use the site."[22]

49.     Indeed, the news is replete with examples of the dangers of Session Replay Code. For example, in 2019, the App Analyst, a mobile expert who writes about his analyses of popular apps, found that Air Canada's iPhone app wasn't properly masking the session replays they were sent, exposing unencrypted credit card data and password information.[23] This discovery was made just weeks after Air Canada said its app had a data breach, exposing 20,000 profiles.[24]

50.     Further, multiple companies have removed Session Replay Code from their websites after it was discovered the Session Replay Code captured highly sensitive information. For instance, in 2017, Walgreens stopped sharing data with a Session Replay Provider after it was discovered that the Session Replay Provider gained access to website visitors' sensitive

---

[21] Lily Hay Newman, *Covert 'Replay Sessions' Have Been harvesting Passwords by Mistake*, WIRED (Feb. 26, 2018), https://www.wired.com/story/covert-replay-sessions-harvesting-passwords/.

[22] Mark Huffner, *Is 'session replay software' a privacy threat or just improving your web experience*, Consumer Affairs (Oct. 25, 2022), https://www.consumeraffairs.com/news/is-session-replay-software-a-privacy-threat-or-just-improving-your-web-experience-102522.html.

[23] Zach Whittaker, *Many Popular iPhone Apps Secretly Record Your Screen Without Asking*, TechCrunch (Feb. 6, 2019), https://techcrunch.com/2019/02/06/iphone-session-replay-screenshots/.

[24] *Id.*

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 13

information.[25] Indeed, despite Walgreens' extensive use of manual redactions for displayed and inputted data, the Session Replay Provider still gained access to full names of website visitors, their medical conditions, and their prescriptions.[26]

51.     Following the Walgreens incident, Bonobos, a men's clothing retailer, announced that it was eliminating data sharing with a Session Replay Provider after it was discovered that the Session Replay Provider captured credit card details, including the cardholder's name and billing address, and the card's number, expiration, and security code from the Bonobos' website.[27]

52.     Recognizing the privacy concerns posed by Session Replay Code, in 2019 Apple required app developers to remove or properly disclose the use of analytics code that allow app developers to record how a user interacts with their iPhone apps or face immediate removal from the app store.[28] In announcing this decision, Apple stated: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[29]

---

[25] Nitasha Tiku, *The Dark Side of 'Replay Sessions' That Record Your Every Move Online*, WIRED (Nov. 16, 2017), https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/.
[26] Englehardt, *supra* note 17.
[27] Tiku, *supra* note 25.
[28] Zack Whittaker, *Apple Tells App Developers to Disclose or Remove Screen Recording Code*, TechCrunch (Feb. 7, 2019), https://techcrunch.com/2019/02/07/apple-glassbox-apps/.
[29] *Id.*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2

**D.      Defendants Secretly Wiretap Zillow's Website Visitors' Electronic Communications.**

3

53.      Zillow operates the Zillow website. Zillow is the "leading online residential real

4

estate" marketplace in the United States for consumers, connecting them to the information and

5

real estate professionals they need to buy, sell, or rent a home.[30]

6

54.      Zillow has become "synonymous with residential real estate."[31] Zillow's website

7

is the most popular real estate website in the United States, with over thirty-six million unique

8

monthly visitors[32] and more than 135 million properties are listed on its website.[33] According to

9

a 2021 Google Trends report, "[t]oday more people search 'Zillow' than 'real estate.'"[34]

10

55.       However, unbeknownst to the millions of individuals perusing Zillow's real

11

estate listings, Zillow intentionally procures and embeds various Session Replay Codes from

12

Microsoft and other Session Replay Providers on its website to track and analyze website user

13

interactions with Zillow's website.

14

56.      Zillow has engaged with Microsoft to employ its Session Replay Provider on

15

Zillow's website.

16

57.      Microsoft is the owner and operator of a Session Replay Code called Clarity,

17

which provides basic information about website user sessions, interactions, and engagement,

18

and breaks down users by device type, county, and other dimensions.[35]

---

19

[30] Zillow Group, Inc., *Form 10-K* (Dec. 31, 2021), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001617640/87bbbf30-39cb-4eb7-acdc-1b51265b9687.pdf ("Zillow 10-K").

20

[31] *Id.*

21

[32] *Most Popular Real Estate Websites in the United States as of October 2021, Based on Unique Monthly Visits*, Statista, https://www.statista.com/statistics/381468/most-popular-real-estate-websites-by-monthly-visits-usa/, (last visited Sep. 8, 2022).

22

[33] Zillow 10-K, *supra*, note 1.

[34] *Id.*

23

[35] Jono Alderson, *An Introduction to Microsoft Clarity*, Yoast, https://yoast.com/introduction-microsoft-clarity/#h-what-is-microsoft-clarity, (last visited Sep. 8, 2022).

---

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 15

58.     Microsoft states that "Clarity is a user behavior analytics tool that helps you understand how users interact with your website. Supported features include:

- Session Recordings

- Heatmaps (or heat maps)

- ML Insights.[36]

59.     Microsoft further represents that Clarity "offers many unique features that help you understand user behavior: …Data is analyzed and ready to view in near real time, so you don't have to wait…Deep AI and Machine Learning algorithm-powered insights help you analyze user behavior efficiently.[37]

60.     Specifically, Clarity captures a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more.[38] Indeed, Clarity organizes the information it captures into over 30 different categories including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls.[39] Clarity even provides a specific user ID to each website visitor so their website use and interactions can be monitored over time.[40]

---

[36] *Frequently Asked Questions,* https://learn.microsoft.com/en-us/clarity/faq, (last visited April 4, 2023).
[37] *Id.*
[38] *Clarity Data Collection*, Microsoft, https://docs.microsoft.com/en-us/clarity/clarity-data, (last visited Aug. 24, 2022).
[39] *Filters Overview*, Microsoft (Jul. 26, 2022), https://docs.microsoft.com/en-us/clarity/clarity-filters.
[40] *Id.*

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

61.     The user information collected in real time and recorded by Clarity can then be used to play back a user's journey through a website, showing how they interacted with site navigation, calls to action, search features, and other on-page elements.[41] Put differently, the information Clarity captures can be translated into a simulation video of how a user interacts with a website.

62.     Clarity also uses the information captured to create detailed heatmaps of a website that provide information about which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website.[42]

63.     As such, Clarity collected and continues to collect Plaintiffs' and the Classes' highly personal information and substantive communications that can be tied to directly to a website user's identity as it monitors, records, and collects a website user's every move.

64.     Clarity offers websites three standard approaches when it comes to masking sensitive information collected from a user's interactions with a website: strict (all text entered by a user is purportedly masked), balanced (sensitive text entered into certain specifically pre-coded fields, such as passwords and credit card information, is masked), and relaxed (no text entered by a user is masked).[43] When Clarity is set to "relaxed," whatever information a user enters into a field on a website can be previewed in session recordings.[44] Additionally, Clarity

[41] Roger Montti, *Microsoft Clarity Analytics: Everything You Need to Know*, SEJ (Jan. 19, 2022), https://www.searchenginejournal.com/microsoft-clarity-analytics-overview/419311/#close.
[42] Haley Walden, *What is Microsoft Clarity? (& How Can it Improve SEO?)*, Elegant Themes (Jun. 12, 2022), https://www.elegantthemes.com/blog/wordpress/microsoft-clarity-improve-seo.
[43] *Microsoft Clarity, An Essential Part of Customer Experience Optimization*, TechAir (Aug. 17, 2022), https://privacy.microsoft.com/en-US/privacystatement.
[44] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   enables websites to select specific elements and content to mask or unmask, customizing the

2   standard masking approaches.[45]

3       65.     However, even when a website operator selects the "strict" and "balanced"

4   settings, Clarity is nevertheless capable of collecting text entered by users, including text

5   containing sensitive information.

6       66.     In order for Clarity to capture website visitors' interactions with a website,

7   Clarity's JavaScript must be installed on the website, either directly hard-coded on the website

8   or on a third-party platform, such as Google Tag Manager.[46] Clarity is embedded in a website

9   by adding its JavaScript code into the HyperText Markup Language (HTML) underlying the

10  website. As with all HTML code, Clarity is not visible to a user who is navigating a webpage

11  through a standard browser's default view because by design a browser will interpret HTML,

12  without showing it, in order to render a more user-friendly display that is the designer's

13  intended presentation of the website to a visitor.

14      67.     Clarity can be revealed to technical users who understand web technologies and

15  can enable alternative display modes that will show underlying HTML, such as "developer

16  tools," but even then, the users would first need to know what they are looking for to find the

17  script. Developer tools are intended for website programmers, and are generally not meaningful

18  or comprehensible by those without a background in computer science.

19

20

21

---

22  [45] *Masking Content*, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-masking.

23  [46] *Set Up Clarity*, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-setup.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 18

68.     Once Clarity's JavaScript is installed on a website, Clarity begins collecting website user's interactions within two hours of installation.[47] Once deployed, the wiretapping commences immediately on the visitor's web browser when the visitor loads a website in their browser.

69.     Data collected by Clarity is then stored in the Microsoft Azure cloud service and Microsoft has access to that information.[48]

70.     Zillow's procurement and use of Microsoft Clarity's Session Replay Code, and procurement and use of other Session Replay Codes through various Session Replay Providers to collect Plaintiffs' and the Classes' Website Communications, constitutes wiretapping in violation of Washington statutory and common law as well as other states' statutory and common law.

**E.     Plaintiffs' and Class Members' Experience.**

71.     Plaintiff Perkins routinely visits Zillow's website to search for properties using her computer, and she has done so numerous times since 2010. During her visits, including visits made throughout 2021, Plaintiff Perkins has substantively engaged with Zillow's website to browse homes available for purchase, update her housing information, and has entered personal and financial information, such as name, address, date of birth, phone number, credit score range, current loans, and estimates of loans into text fields and Zillow questionnaires.

72.     Plaintiff Hasson routinely visits Zillow's website to search for properties using his computer, and he has done so numerous times throughout 2022. During his visits, including visits made during 2022, Plaintiff Hasson has substantively engaged with Zillow's website to

---

[47] *Frequently Asked Questions*, Microsoft, https://docs.microsoft.com/en-us/clarity/faq, (last visited Aug. 24, 2022).
[48] *Id.*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

browse for homes and has entered personal and financial information, such as name, address, date of birth, phone number, credit card, and other financial information into text fields.

73.     Plaintiff Huber routinely visits Zillow's website to search for properties using her computer and/or mobile device, and she has done so numerous times since 2019. During her visits, including visits made since 2019, Plaintiff Huber has substantively engaged with Zillow's website to browse homes available for purchase, update her housing information, and has entered personal and financial information, such as name, address, date of birth, phone number, credit score range, current loans, and estimates of loans into text fields and Zillow questionnaires.

74.     Plaintiff Kauffman routinely visits Zillow's website to search for properties using his computer, tablet, and mobile device, and he has done so numerous times dating back to 2013. During his visits, including visits made during 2022, Plaintiff Kauffman has substantively engaged with Zillow's website to browse for homes to purchase, using filters to search homes he by zip code, by home type, to update information regarding his owned claimed properties such as, adding square footage, home improvements made to the property to increase its value, submit offers to purchase properties, and has entered personal and information, such as name, address, and phone number into text fields.

75.     Plaintiff Popa routinely visits Zillow's website to search for properties using her computer and/or mobile device, and she has done so numerous times throughout 2022. During her visits, including visits made during 2022, Plaintiff Popa has substantively engaged with Zillow's website and has entered personal and financial information, such as name, address, date of birth, phone number, credit card, and other financial information into text fields.

76.     Plaintiff Strezlin routinely visits Zillow's website to search for properties using her computer and/or mobile device, and she has done so numerous times throughout 2022. During

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

her visits, including visits made during 2022, Plaintiff Strezlin has substantively engaged with Zillow's website and has entered personal and financial information, such as name, address, date of birth, phone number, credit card, and other financial information into text fields.

77.     Plaintiff Adams routinely visits Zillow's website to search for properties using her computer and/or mobile device, and she has done so numerous times throughout 2022. During her visits, including visits made prior to 2022, Plaintiff Adams has substantively engaged with Zillow's website and has entered information into text fields.

78.     Plaintiff Adams minor child H.A. routinely visits Zillow's website to search for properties using her mobile device, and she has done so numerous times throughout 2022. During her visits, including visits made during 2022, Plaintiff Adams minor child H.A. has substantively engaged with Zillow's website and has entered information into text fields.

79.     Plaintiff Margulis routinely visits Zillow's website to search for properties using his computer and/or mobile device, and he has done so numerous times throughout 2021-2022. During his visits, Plaintiff Margulis has substantively engaged with Zillow's website and has entered personal and financial information, such as name and email address into text fields.

80.     While visiting Zillow's website, Plaintiffs fell victim to Defendants' unlawful monitoring, recording, and collection of Plaintiffs' Website Communications with Zillow's website.

81.     Unbeknownst to Plaintiffs, and without Plaintiffs' consent, Zillow procures and embeds Microsoft's Session Replay Code on its website. Plaintiffs' Website Communications were captured automatically and instantaneously by Microsoft's Session Replay Code and sent to various Session Replay Providers.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

82.     Further, without Plaintiffs' consent, Zillow procured Session Replay Providers, including Microsoft, to obtain certain information about their devices and browser, and create a unique ID and profile for them.

83.     For example, when visiting Zillow's website, if a website user views a certain piece of property for rent or sale, that information is captured by the Session Replay Codes embedded on the website:



*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after viewing a Studio apartment priced at $1,488 while visiting www.zillow.com.*

84.     Similarly, when visiting Zillow's website, if a user enters personal information in a text box to schedule a tour, that information is captured by the Session Replay Codes embedded on the website:

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6



7
8
*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after entering a name (purple text) to a text box to schedule a tour of a property.*

9       85.      The wiretapping by the Session Replay Codes are ongoing during the visit, and

10   the Session Replay Code intercepts the contents of these communications between Plaintiffs

11   and Zillow with real time instantaneous transmissions to Microsoft's Session Replay software

12   and other Session Replay Providers, as illustrated below, in which only 30 milliseconds were

13   required to send a packet of event response data, which would indicate whatever the website

14   user had just done:

15
16
17
18
19
20
21
22
23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992



86.     Thus, on multiple occasions when Plaintiffs visited Zillow's website, the contents of their communications with the Zillow website were intercepted by Session Replay Code, including Microsoft Clarity, and simultaneously transmitted to Session Replay Providers, including Microsoft.

87.     The Session Replay Codes operate in the same manner for all putative Class members.

88.     Like Plaintiffs, each Class member visited Zillow's website with Microsoft's and other Session Replay Providers' Code embedded in it.  Those Session Replay Codes intercepted the Class members' Website Communications with Zillow's website by sending hyper-frequent logs of those communications to Session Replay Providers.

89.     Even if Zillow masks certain elements when it configures the settings of the Session Replay Code embedded on its website, any operational iteration of the Session Replay

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Code will, by its very nature and purpose, intercept the contents of communications between

2  the website's visitors and the website owner.

3       90.     For example, even with heightened masking enabled, Defendants—through the

4  use of Session Replay Providers' Code—are still able to learn through the intercepted data

5  exactly which pages a user navigates to, how the user moves through the page (such as which

6  areas the user zooms in on or interacted with), and additional substantive information.

7       91.     As a specific example, if a user types a particular address or zip code into

8  Zillow's main search bar and initiates a search, even if the text entered into the search bar is

9  masked, Session Replay Providers will still learn what is entered into the bar as soon as the

10 search result page loads. This is so because the responsive search results will be displayed on

11 the subsequent page, and the responsive content generated by Zillow will repeat the searched

12 information back on the generated page. That information will not be masked even if user-

13 inputted text is fully masked in a text field.

14      92.     The Session Replay Code, like Clarity, procured by Zillow is an electronic,

15 mechanical, or other analogous device in that the Session Replay Code, monitors, collects, and

16 records the content of electronic computer-to-computer communications between Plaintiffs'

17 mobile computer and/or mobile device and the computer servers and hardware utilized by Zillow

18 to operate its website.

19      93.     Alternatively, even if the Session Replay Code itself were not a device, the

20 Session Replay Code, like Clarity, is software designed to alter the operation of a website

21 visitor's computer or mobile phone by instructing the hardware components of that physical

22 device to run the processes that ultimately intercept the visitor's communications and transmit

23 them to the third-party Session Replay Provider, without the visitor's knowledge.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

94.     The Session Replay Code procured by Zillow and provided by Microsoft is not a website cookie, analytics tool, tag, web beacon, or other similar technology. Instead, the data collected by the Session Replay Code identified specific information inputted and content viewed, and thus revealed personal and sensitive information about website visitors' Internet activity and habits. As such, by the very nature of its operation, the Session Replay Code is a device used to intercept electronic communications.

95.     The Website Communications intentionally monitored, collected, and recorded by Zillow and Microsoft was content generated through Plaintiffs' and Class Members' use, interaction, and communication with Zillow's website relating to the substance and/or meaning of Plaintiffs' and Class Members' communications with the website, i.e., mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiffs and Class Members, and pages and content clicked on and viewed by Plaintiffs and Class Members. This information is "content" and is not merely record information regarding the characteristics of the message that is generated in the course of the communication, nor is it simply information disclosed in the referrer headers. The mere fact that Zillow and Microsoft value this content, and monitors, intercepts and records it, confirms these communications are content that convey substance and meaning Zillow, and in turn, any Session Replay Provider that receives the intercepted information.

**F.      Plaintiffs and Class Members Did Not Consent to the Interception of Their Electronic Communications**

96.     Plaintiffs and Class Members did not provide prior consent to Defendants' interception of their Website Communications, nor could they, as the interception begins *immediately* upon arriving at Zillow's website.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

97.     Defendants did not ask website visitors, including Plaintiffs and Class Members, for prior consent before wiretapping their Website Communications. Indeed, Plaintiffs and Class Members have no idea upon arriving at the website that Zillow is using Session Replay Code to monitor, collect, and record their Website Communications because the Session Replay Code is seamlessly incorporated and embedded into Zillow's website.

98.     Further, while Zillow may purport to maintain a "Privacy Policy," the Privacy Policy is insufficient for Plaintiffs and Class Members to furnish prior consent. First, because the wiretapping begins the moment a website user visits Zillow's website, Plaintiffs and Class Members had no opportunity to review the Privacy Policy before they were wiretapped and therefore could not have opted out of or prevented the wiretapping before it occurred. Additionally, a reasonable person would not be on notice of the terms of Zillow's Privacy Policy by way of normal interaction with the website. Zillow's Privacy Policy is contained on the homepage of Zillow's website, in small low-contrasting font at the bottom of the page. As such, a reasonable person could browse for properties on Zillow's website without ever being on notice of the purported Privacy Policy. Additionally, the search bar is located within a picture and following the picture is a block of blank space.  Unless the user were to double

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

check and affirmatively scroll down to see if there is any additional content on the page, the user would not be aware there is any content on the webpage following the photograph.



99.    Moreover, the dropdown options at the top of the webpage do not include within the main categories, nor the dropdown options, any indication of a Privacy Policy.

## CLASS ACTION ALLEGATIONS

100.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following nationwide class ("Nationwide Class" or the "Class"):

### Nationwide Class

All natural persons in the United States and its territories whose Website Communications were captured through the use of Session Replay Code embedded in www.zillow.com

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 28

101.     Plaintiffs, in the alternative, pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following statewide classes ("Statewide Subclasses" or "Subclasses"):

**Statewide Subclasses**

All natural persons located in the states of California, Illinois, Missouri, Pennsylvania Website Communications were captured through the use of Session Replay Code embedded in www.zillow.com

(collectively with the Nationwide Class, the "Classes") for violations of: the Pennsylvania Wiretap and Electronic Surveillance Control Act (Count 3),  Invasion of Privacy – Intrusion Upon Seclusion (Pennsylvania Common Law) (Count 4), Illinois Eavesdropping Act (Count 5), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count 6), Invasion of Privacy – Intrusion Upon Seclusion (Illinois Common Law) (Count 7), Violation of Missouri Wiretap Act (Count 8), Missouri's Merchandising Practices Act (Count 9), Invasion of Privacy – Intrusion Upon Seclusion (Missouri Common Law) (Count 10), and Unlawful Wiretapping and Interception of Electronic Communication, California Penal Code § 631 (Count 11).

102.     Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Classes, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

**Rule 23(a)**

103.     This action may properly be maintained as a class action and satisfies the requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy.

104.     **Numerosity:** The members of the Class and each Subclass are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 29

1    and their identities may be obtained from the books and records of Defendants or other Session

2    Replay Providers.

3         105.    **Commonality:** This action involves questions of law and fact that are common

4    to the individual Class and Subclass members. Such common questions include, but are not

5    limited to: (a) whether Zillow procured Microsoft and other Session Replay Providers to intercept

6    Zillow's website visitors' Website Communications; (b) whether Defendants intentionally

7    disclosed the intercepted Website Communications of Zillow's website users; (c) whether

8    Defendants acquired the contents of website users' Website Communications without their

9    consent; (d) whether Defendants' conduct violates Washington Wiretapping Statute, Wash. Rev.

10   Code §9.73.030, *et seq*.; or, in the alternative the state wiretap statutes identified below; (e)

11   whether Plaintiffs and the Class members are entitled to equitable relief; and (f) whether Plaintiffs

12   and the Class members are entitled to actual, statutory, punitive, or other forms of damages, and

13   other monetary relief, and/or declaratory and/or injunctive relief.

14        106.    **Typicality:** Plaintiffs' claims are typical of the other Class and Subclass

15   members' claims because, among other things, all Class and Subclass members were comparably

16   injured through the uniform prohibited conduct described above. For instance, Plaintiffs and each

17   member of the Class and Subclass had their communications intercepted in violation of the law

18   and their right to privacy. This uniform injury and the legal theories that underpin recovery make

19   the claims of Plaintiffs and the members of the Class and Subclass typical of one another.

20        107.    **Adequacy of Representation:** Plaintiffs have and will continue to fairly and

21   adequately represent and protect the interests of the Class and Subclass. Plaintiffs have retained

22   counsel competent and experienced in complex litigation and class actions, including litigations

23   to remedy privacy violations. Plaintiffs have no interest that is antagonistic to the interests of the

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 30

Class and Subclass, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass, and they have the resources to do so. None of the Plaintiffs nor their counsel have any interest adverse to the interests of the other members of the Class and Subclass.

**Rule 23(b)(3)**

108.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Classes is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

109.    **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiffs and each member of the Class. If Defendants intercepted Plaintiffs' and Class members' Website Communications, then Plaintiffs and each Class member suffered damages by that conduct.

110.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendants' books and records or the other Session Replay Providers' books and records.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 31

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**CHOICE OF LAW FOR NATIONWIDE CLAIMS**

2       111.    Defendants' actions discussed herein were orchestrated and implemented by

3   Zillow and Microsoft at their corporate headquarters in Washington and the conduct complained

4   of was designed, implemented and directed by and radiated from, Washington.

5       112.    The key wrongdoing at issue in this litigation – Zillow's procurement of Microsoft

6   and other Session Replay Providers to intercept Zillow's website visitors' Website

7   Communications; Zillow's intentional disclosure of intercepted Website Communications of its

8   website users; Zillow's acquisition of the contents of website users' Website Communications

9   without their consent; Microsoft's creation, design, marketing, sale and implementation of

10  Session Replay Software to intercept Website Communications without their consent,

11  Microsoft's sale of Session Replay Software to Zillow to intercept Website Communications

12  without their consent; and Zillow's and Microsoft's violation of the Washington Wiretap Statute

13  emanated from their respective headquarters in Washington.

14      113.    Zillow's Terms of Use specifically states that the "Terms of Use are governed by

15  the laws of the State of Washington, without giving effect to its conflict of laws' provisions."

16  https://www.zillowgroup.com/terms-of-use/. Moreover, Zillow states that users of its website

17  "agree to submit to the personal and exclusive jurisdiction and venue in the state and federal

18  courts sitting in King County, Washington for any and all disputes, claims and actions arising

19  from or in connection with the Services or otherwise under these Terms of Use."

20  https://www.zillowgroup.com/terms-of-use/.

21      114.    Washington, which seeks to protect the rights and interests of Washington

22  citizens and consumers located throughout the United States against a company doing business

23

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 32

1  in Washington, has a greater interest in the claims of Plaintiff and the Class than any other state

2  and is most intimately concerned with the outcome of this litigation.

3        115.    Application of Washington law to the Nationwide Class with respect to Plaintiff's

4  and the Class' claims is neither arbitrary nor fundamentally unfair because Washington has

5  significant contacts and a significant aggregation of contacts that create a state interest in the

6  claims of the Plaintiffs and the Nationwide Class.

7  **LEGAL CLAIMS**

8  **COUNT I**
**Violation of the Washington Wiretapping Statute**

9  **Wash. Rev. Code §9.73.030, et. seq.**

10  **(By All Plaintiffs On behalf of the Nationwide Class)**

11        116.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

12        117.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class

13  against Defendants.

14        118.    The Washington Wiretapping Statue (the "Act") prohibits the interception or

15  recording any private communication transmitted by telephone, telegraph, radio, or other device

16  between two or more individuals between points within or without the state by any device

17  electronic or otherwise designed to record and/or transmit said communication regardless how

18  such device is powered or actuated, without first obtaining the consent of all the participants in

19  the communication.  Wash. Rev. Code §9.73.030(1)(a).

20        119.    The Act further states that "[a]ny person who, directly or by means of a detective

21  agency or any other agent, violates the provisions of this chapter shall be subject to legal action

22  for damages, to be brought by any other person claiming that a violation of this statute has injured

23  his or her business, his or her person, or his or her reputation. A person so injured shall be entitled

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 33

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to actual damages, including mental pain and suffering endured by him or her on account of violation of the provisions of this chapter, or liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and a reasonable attorney's fee and other costs of litigation." Wash. Rev. Code §9.73.060.

120.     Zillow and Microsoft are persons for purposes of the Act because they are corporations.

121.     Session Replay Code like that licensed by Microsoft and procured by Zillow is a "device" used for the "designed to record and/or transmit" communications within the meaning of the Act.

122.     Plaintiffs' and the Nationwide Class members' intercepted Website Communications constitute "private communications" within the meaning of the Act.

123.     Defendants intentionally procure and embed Microsoft's Session Replay Code and other Session Replay Providers Code on Zillow's website to spy on and, and intercept, automatically and secretly Plaintiffs and the Nationwide Class Members' electronic interactions communications with Zillow in real time.

124.     Plaintiffs' and the Nationwide Class members' electronic communications are intercepted contemporaneously with their transmission.

125.     Plaintiffs and the Nationwide Class members did not consent to having their Website Communications wiretapped.

126.     Pursuant to Wash. Rev. Code §9.73.060, Plaintiffs and the Nationwide Class members seek (1) actual damages, not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and (2) reasonable attorneys' fees and other costs of litigation incurred.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT - 34

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

127.    Defendants' conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and the Nationwide Class members any time they visit Zillow's website with Microsoft's Session Replay Code enabled without their consent. Plaintiffs and the Nationwide Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications and to require Zillow to obtain consent prior to utilizing Microsoft's Session Replay Code and other Session Replay Providers Code to intercept website visitors' electronic communications on Zillow's website.

## COUNT 2
**Invasion of Privacy – Intrusion Upon Seclusion**

**(By All Plaintiffs On behalf of the Nationwide Class)**

128.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

129.    Washington common law recognizes the tort of invasion of privacy. The right to privacy is also established in the Constitution of the State of Washington which explicitly recognizes an individual's right to privacy and states under Article 1 §7: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

130.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

131.    Plaintiffs and the Nationwide Class members have an objective, reasonable expectation of privacy in their Website Communications.

132.    Defendants' conduct, through their unlawful interception of Plaintiffs' and the Nationwide Class' communications when they visited Zillow's website with Microsoft's Session Replay Code enabled without their consent, violates Article 1 §7 of the Constitution of the State of Washington.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

133.     Plaintiffs and the Nationwide Class members did not consent to, authorize, or know about Defendants' intrusion at the time it occurred. Plaintiffs and the Nationwide Class members never agreed that Defendants could collect or disclose their Website Communications.

134.     Plaintiffs and the Nationwide Class members had a legitimate and reasonable expectation of privacy in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

135.     Defendants intentionally intrude on Plaintiffs' and the Nationwide Class members' private life, seclusion, or solitude, without consent.

136.     Defendants' conduct is highly offensive and objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

137.     Defendants' conduct, by unlawfully intercepting the communications of Plaintiffs and the Nationwide Class members any time they visit Zillow's website with Microsoft's Session Replay Code enabled without their consent, was a proximate cause of damage to Plaintiffs and the Nationwide Class members.

138.     Plaintiffs and the Nationwide Class members were harmed by Defendants' wrongful conduct as Defendants' conduct has caused Plaintiffs and the Nationwide Class mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

139.     Defendants' conduct has needlessly harmed Plaintiffs and the Nationwide Class by capturing intimately personal facts and data in the form of their Website Communications.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

This disclosure and loss of privacy and confidentiality has caused Plaintiffs and the Nationwide Class to experience mental anguish, emotional distress, worry, fear, and other harms.

140. Additionally, given the monetary value of individual personal information, Defendants deprived Plaintiffs and the Nationwide Class members of the economic value of their interactions with Zillow's website, without providing proper consideration for Plaintiffs' and the Nationwide Class members' property.

141. Further, Defendants have improperly profited from their invasion of Plaintiffs and the Nationwide Class members' privacy in its use of their data for its economic value.

142. As a direct and proximate result of Defendants conduct, Plaintiffs and the Nationwide Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

143. Defendants' conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and the Nationwide Class members any time they visit Zillow's website with Microsoft's Session Replay Code and other Session Replay Providers Code enabled without their consent. Plaintiffs and the Nationwide Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

## COUNT 3
### Violation of Pennsylvania Wiretap Act
### 18 Pa. Cons. Stat. § 5701, et. seq.

### (In the Alternative On behalf of Plaintiffs Ashley Popa and Jamie Huber and the Pennsylvania Subclass)

144. Plaintiffs Ashley Popa and Jamie Huber ("Plaintiffs," for purposes of this Count), individually and on behalf of the Pennsylvania Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 37

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

145.    The Pennsylvania Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

146.    Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

147.    "Intercept" is defined as any "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702.

148.    "Intercept" is defined as any "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702.

149.    "Person" is defined as "any individual, partnership, association, joint stock company, trust or corporation." 18 Pa. Cons. Stat. § 5702.

150.    "Electronic Communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. Cons. Stat. § 5702.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 38

151.    Zillow is a person for purposes of the Act because it is a corporation.

152.    Session Replay Code like that procured by Zillow is a "device" used for the "acquisition of the contents of any wire, electronic, or oral communication" within the meaning of the Act.

153.    Plaintiffs' and Pennsylvania Subclass members' intercepted Website Communications constitute the "contents" of electronic communication[s]" within the meaning of the Act.

154.    Zillow intentionally procures and embeds Session Replay Code on its website to spy on, automatically and secretly, and intercept its website visitors' electronic interactions communications with Zillow in real time.

155.    Plaintiffs' and Pennsylvania Subclass members' electronic communications are intercepted contemporaneously with their transmission.

156.    Plaintiffs and Pennsylvania Subclass members did not consent to having their Website Communications wiretapped.

157.    Pursuant to 18 Pa. Cons. Stat. 5725(a), Plaintiffs and the Pennsylvania Subclass members seek (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

158.    Zillow's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and Pennsylvania Subclass members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiffs and Pennsylvania Subclass members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 39

1

2

**COUNT 4**
**Invasion of Privacy – Pennsylvania Intrusion Upon Seclusion**
**(In the Alternative On behalf of Plaintiffs Ashley Popa and Jamie Huber and the**
**Pennsylvania Subclass)**

3

4

159.     Plaintiffs Ashley Popa and Jamie Huber ("Plaintiffs," for purposes of this Count),

5

individually and on behalf of the Pennsylvania Subclass, repeat and reallege each and every

6

allegation contained above as if fully alleged herein.

7

160.     Pennsylvania common law recognizes the tort of invasion of privacy. The right to

8

privacy is also embodied in multiple sections of the Pennsylvania constitution.

9

161.     Plaintiffs bring this claim individually and on behalf of the Pennsylvania

10

Subclass.

11

162.     Plaintiffs and Subclass members have an objective, reasonable expectation of

12

privacy in their Website Communications.

13

163.     Plaintiffs and Subclass members did not consent to, authorize, or know about

14

Zillow's intrusion at the time it occurred. Plaintiffs and Pennsylvania Subclass members never

15

agreed that Zillow could collect or disclose their Website Communications.

16

164.     Plaintiffs and Pennsylvania Subclass members had an objective interest in

17

precluding the dissemination and/or misuse of their information and communications and in

18

conducting their personal activities without intrusion or interference, including the right to not

19

have their personal information intercepted and utilized for business gain.

20

165.     Zillow intentionally intrudes on Plaintiffs' and Pennsylvania Subclass members'

21

private life, seclusion, or solitude, without consent.

22

166.     Zillow's conduct is highly objectionable to a reasonable person and constitutes an

23

egregious breach of the social norms underlying the right to privacy.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 40

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

167.     Plaintiffs and Pennsylvania Subclass members were harmed by Zillow's wrongful conduct as Zillow's conduct has caused Plaintiffs and the Pennsylvania Subclass mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

168.     Zillow's conduct has needlessly harmed Plaintiffs and the Pennsylvania Subclass by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiffs and the Pennsylvania Subclass to experience mental anguish, emotional distress, worry, fear, and other harms.

169.     Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiffs and Pennsylvania Subclass members of the economic value of their interactions with Defendant's website, without providing proper consideration for Plaintiffs' and Pennsylvania Subclass members' property.

170.     Further, Zillow has improperly profited from its invasion of Plaintiffs and Subclass members' privacy in its use of their data for its economic value.

171.     As a direct and proximate result Zillow's conduct, Plaintiffs and Pennsylvania Subclass members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

172.     Zillow's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and Pennsylvania Subclass members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiffs and Subclass members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT 5**
**Violation of Illinois Eavesdropping Act**
**720 ILCS 5/14-1, *et seq*.**
**(In the Alternative On behalf of Plaintiffs Jill Strelzin, and Ryan Margulis and the Illinois Subclass)**

173.     Plaintiffs Jill Strelzin and Ryan Margulis ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

174.     The Illinois Eavesdropping Act (the "Act") prohibits (1) using an eavesdropping device in a surreptitious manner to overhear, transmit, or record all or any part of any private conversation; (2) intercepting, recording, or transcribing, in a surreptitious manner, any private electronic communication without consent; (3) manufacturing, assembling, distributing, or possessing any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for the purpose of surreptitious overhearing, transmitting, or recording of private conversations or the intersection; or (4) using or disclosing any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication without the consent of all parties to the private electronic communication. 720 ILCS 5/14-2.

175.     Any party to any conversation or private electronic communication upon which eavesdropping was practiced shall be entitled to (1) an injunction to prohibit further eavesdropping; (2) actual damages; and (3) punitive damages. punitive damages; 720 ILCS 5/14-6.

176.     "Eavesdropping device" is defined as any "any device capable of being used to hear or record oral conversation or intercept, or transcribe electronic communications whether

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    such conversation or electronic communication is conducted in person, by telephone, or by any

2    other means[.]" 720 ILCS 5/14-1(a).

3        177.    "Eavesdropper" is defined as "any person, including any law enforcement officer

4    and any party to a private conversation, who operates or participates in the operation of any

5    eavesdropping device contrary to the provisions of this Article or who acts as a principal, as

6    defined in this Article." 720 ILCS 5/14-1(b).

7        178.    "Principle" is defined as "any person who: (1) knowingly employs another who

8    illegally uses an eavesdropping device in the course of such employment; or (2) knowingly

9    derives any benefit or information from the illegal use of an eavesdropping device by another; or

10   (3) directs another to use an eavesdropping device illegally on his or her behalf." 720 ILCS 5/14-

11   1(c).

12       179.    "Private electronic communication" is defined as "any transfer of signs, signals,

13   writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire,

14   radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the

15   sending or receiving party intends the electronic communication to be private under

16   circumstances reasonably justifying that expectation. A reasonable expectation shall include any

17   expectation recognized by law, including, but not limited to, an expectation derived from a

18   privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or

19   United States Constitution." ILCS 5/14-1(e).

20       180.    "Surreptitious" is defined as being "obtained or made by stealth or deception, or

21   executed through secrecy or concealment." 720 ILCS 5/14-1(g).

22       181.    Zillow is an "Eavesdropper" and "Principal" for purposes of the Act because it

23   operates or participates in the operation of an eavesdropping device, knowingly employs another

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 43

who illegally uses an eavesdropping device, derives a benefit or information from the illegal use of an eavesdropping device, and directs another to use an eavesdropping device illegally on its behalf.

182.   Session Replay Code like that operated and employed at Zillow's direction is a "eavesdropping device" used to transcribe electronic communications within the meaning of the Act.

183.   Plaintiffs and the Illinois Subclass were not aware that Defendants and the other Session Replay Providers were intercepting and recording their Website Communications.

184.   Plaintiffs' and Subclass members' intercepted Website Communications constitute the private electronic communications and private conversations within the meaning of the Act.

185.   Zillow intentionally operated and employed Session Replay Code on its website to spy on, automatically and secretly, and intercept its website visitors' private electronic interactions communications with Zillow in real time.

186.   Plaintiffs' and Illinois Subclass members' private electronic communications were intercepted contemporaneously with their transmission.

187.   Plaintiffs and Illinois Subclass members had a reasonable expectation of privacy in their Website Communications based on the detailed information the Session Replay Code collected from Plaintiffs and Illinois Subclass members.

188.   Plaintiffs and Illinois Subclass members did not consent to having their Website Communications surreptitiously intercepted and recorded.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 44

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

189.     Pursuant to 720 ILCS 5/14-6, Plaintiffs and members of the Illinois Subclass are entitled to: (1) an injunction to prohibit further eavesdropping; (2) actual damages; and (3) punitive damages.

190.     Zillow's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and Subclass members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiffs and Subclass members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

## COUNT 6
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1 *et seq.***
**(In the Alternative On behalf of Plaintiffs Jill Strelzin and Ryan Margulis and the Illinois Subclass)**

191.     Plaintiffs Jill Strelzin and Ryan Margulis ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

192.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA") protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

193.     The ICFA prohibits "unfair or deceptive acts or practices," including "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2.

194.     The ICFA applies to Zillow's conduct described herein because it protects consumers in transactions that are intended to result, or which have resulted in the sale of goods or services.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 45

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

195.    Zillow is a "person" within the meaning of ILCS 505/1(c) because it is a corporation.

196.    Plaintiffs and members of the Illinois Subclass are "consumers" within the meaning of 815 ILCS 505/1(e) because they visited www.zillow.com to shop for, purchase, or contract to purchase "merchandise"—real estate—for their own use.

197.    Zillow's advertising, offering for sale, and sale of real estate on www.zillow.com is considered "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

198.    Zillow violated the ICFA by concealing material facts about www.zillow.com. Specifically, Zillow omitted and concealed that it directed Session Replay Providers to secretly monitor, collect, transmit, and discloses its website visitors' Website Communications to the Session Replay Providers using Session Replay Code.

199.    Zillow's direction and employment of the Session Replay Providers and their Session Replay Codes to intercept, collect, and disclose website visitors' Website Communications are material to the transactions on www.zillow.com. Zillow is leading online residential real estate marketplace in the United States and Zillow does not disclose its use of Session Replay Code to secretly monitor and collect website visitors' Website Communications. Had Plaintiffs and the Illinois Subclass members known that the Session Replay Codes (that collect, transmit, and disclose Website Communications to the Session Replay Providers) were embedded in Zillow's website, they would not have visited www.zillow.com to shop for, purchase, or contract to purchase real estate or they would have required Zillow to compensate them for the interception, collection, and disclosure of their Website Communications.

200.    Zillow's intentional concealment of the interception, collection, and disclosure of website visitors' Website Communications using Session Replay Code embedded in

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 46

www.zillow.com is material because it knows that consumers would not otherwise visit its website to search for, purchase, and contract to purchase real estate. Indeed, Zillow's concealment of such facts was intended to mislead consumers.

201.    Zillow's concealment, suppression, and omission of material facts was likely to mislead reasonable consumers under the circumstances, and thus constitutes an unfair and deceptive trade practice in violation of the ICFA.

202.    By failing to disclose and inform Plaintiffs and the Illinois Class about its interception, collection, and disclosure of website visitors' Website Communications, Zillow violated section 505/2 of the ICFA.

203.    As a direct and proximate result of these unfair and deceptive practices, Plaintiffs and each Illinois Subclass member have suffered actual harm in the form of money and/or property because the disclosure of their Website Communications has value as demonstrated by the collection and use of it by Zillow. The collection and use of this information has now diminished the value of such information to Plaintiffs and Illinois Subclass members.

204.    As such, Plaintiffs and Illinois Subclass members seek an order (1) requiring Zillow to cease the unfair practices described herein; (2) awarding actual damages; and (3) awarding reasonable attorneys' fees and costs.

205.    Zillow's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs an Illinois d Subclass members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiffs and Subclass members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT 7**
**Invasion of Privacy – Illinois Intrusion Upon Seclusion**
**(In the Alternative On behalf of Plaintiffs Jill Strelzin, and Ryan Margulis and the Illinois Subclass)**

206.    Plaintiffs Jill Strelzin and Ryan Margulis ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

207.    Plaintiffs bring these claims individually and on behalf of the Subclass against Defendants.

208.    Illinois common law recognizes the tort of invasion of privacy. The right to privacy is also embodied in the Illinois constitution.

209.    Plaintiffs and Illinois Subclass members had an objective, reasonable expectation of privacy in their Website Communications.

210.    Plaintiffs and Subclass members did not consent to, authorize, or know about Defendants' intrusion at the time it occurred. Plaintiffs and Subclass members never agreed that Defendants could collect or disclose their Website Communications.

211.    Plaintiffs and Illinois Subclass members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

212.    Defendants intentionally intruded on Plaintiffs' and Illinois Subclass members' private life, seclusion, or solitude, without consent.

213.    Defendants' conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 48

214.    Plaintiffs and Illinois Subclass members were harmed by Defendants' wrongful conduct as such conduct has caused Plaintiffs and the Illinois Subclass mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

215.    Defendants' conduct has needlessly harmed Plaintiffs and the Illinois Subclass by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiffs and the Illinois Subclass to experience mental anguish, emotional distress, worry, fear, and other harms.

216.    Additionally, given the monetary value of individual personal information, Defendants deprived Plaintiffs and Illinois Subclass members of the economic value of their interactions with Zillow's website, without providing proper consideration for Plaintiffs' and Illinois Subclass members' property.

217.    Further, Defendants  have improperly profited from its invasion of Plaintiffs and Illinois Subclass members' privacy in its use of their data for its economic value.

218.    As a direct and proximate result Defendants' conduct, Plaintiffs and Illinois Subclass members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

219.    Defendants' conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and Illinois Subclass members any time they visit Zillow's website with session replay software enabled without their consent. Plaintiffs and Illinois Subclass members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**COUNT 8**
**Violation of Missouri Wiretap Act,**
**Mo. Ann. Stat. §§ 542.400** *et seq.*
**(In the Alternative On behalf of Plaintiff Jill Adams and the Missouri Subclass)**

220.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

221.     Plaintiff Jill Adams brings this claim on behalf herself and her minor child H.A. ("Plaintiff," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

222.     The Missouri wiretap statute broadly prohibits the interception, disclosure or use of any wire, oral or electronic communication. Mo. Stat. § 542.402.

223.     Any person whose wire communication is intercepted, disclosed, or used in violation of sections 542.00 to 542.422 shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications; and (2) be entitled to recover from any such person: (a) actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation or ten thousand dollars whichever is greater; (b) punitive damages on a showing of a willful or intentional violation of sections 542.400 to 542.422; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. Mo. Stat. § 542.218.

224.     "Wire communication" is defined as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception including the use of such connection in a switching station furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of local, state or interstate communications." Mo. Stat. § 542.200(12).

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 50

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

225.   A "Person" is "defined as any employee, or agent of this state or political subdivision of this state, and any individual, partnership, association, joint stock company, trust, or corporation." Mo. Stat. § 542.200(9).

226.   "Intercept" is defined as "the aural acquisition of the contents of any wire communication through the use of any electronic or mechanical device, including but not limited to interception by one spouse of another spouse." Mo. Stat. § 542.200(6).

227.   "Electronic, mechanical, or other device" is defined as "any device or apparatus which can be used to intercept a wire communication other than: (a) Any telephone or telegraph instrument, equipment or facility, or any component thereof, owned by the user or furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or being used by a communications common carrier in the ordinary course of its business or by an investigative office or law enforcement officer in the ordinary course of his duties; or (b) A hearing aid or similar device being used to correct subnormal hearing to not better than normal." Mo. Stat. § 542.200(5).

228.   "Contents," "when used with respect to any wire communication, includes any information concerning the identity of the parties, the substance, purport, or meaning of that communication." Mo. Stat. § 542.200(3).

229.   An "Aggrieved person" is defined as "a person who was a party to any intercepted wire communication or a person against whom the interception was directed." Mo. Stat. §542.200 (1).

230.   Zillow is a "Person" for purposes of the Act because it is a corporation.

231.   Microsoft is a "Person" for purposes of the Act because it is a corporation.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

232.     Session Replay Code like that procured from Microsoft, operated and employed at Zillow's direction is an "electronic, mechanical or other device" used to transcribe electronic communications and to intercept a wire communication within the meaning of the Act.

233.     Plaintiffs and the Missouri Subclass were not aware that Defendants and the other Session Replay Providers were intercepting and recording their Website Communications.

234.     Plaintiff's and Missouri Subclass members' intercepted Website Communications constitute wire communications within the meaning of the Act.

235.     Defendants intentionally operated and employed Session Replay Code on Zillow's website to spy on, automatically and secretly, and intercept its website visitors' private electronic interactions communications with Zillow in real time, which are Contents within the meaning of the Act.

236.     Plaintiff's and Missouri Subclass members' private electronic communications were intercepted contemporaneously with their transmission.

237.     Plaintiff and members of the Missouri Subclass had a reasonable expectation of privacy in their Website Communications based on the detailed information the Session Replay Code collected from Plaintiff and members of the Missouri Subclass.

238.     Plaintiff and members of the Missouri Subclass did not consent to having their Website Communications surreptitiously intercepted and recorded and are Aggrieved persons within the meaning of the Act.

239.     Pursuant to Mo. Stat. § 542.418, Plaintiff and members of the Missouri Subclass are entitled to: (1) actual damages; (2) statutory damages including liquidated damages at $100 per day of violation or $10,000, whichever is greater, and (3) punitive damages. Plaintiff- and the Missouri Subclass are also entitled to an award of attorney's fees and expenses.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

240.     Defendants' conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and members of the Missouri Subclass any time they visit Zillow's website with Session Replay Code enabled without their consent. Plaintiff and members of the Missouri Subclass are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**COUNT 9**
**Violation of Missouri's Merchandising Practices Act,**
**Mo. Rev. Stat. § 407.010 *et seq.***
**(In the Alternative On behalf of Plaintiff Jill Adams and the Missouri Subclass)**

241.     Plaintiff Jill Adams brings this claim on behalf of herself and her minor child H.A. ("Plaintiff," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

242.     Plaintiff brings this claim individually and on behalf of the Missouri Subclass.

243.     The Missouri Merchandising Practice Act (for the purposes of this section, "MPA") protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

244.     The Missouri MPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.

245.     Plaintiff, individually and on behalf of the Missouri Subclass, is entitled to bring this action pursuant to Mo. Rev. Stat. § 407.025, which provides in relevant part that: (a) Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

246.    Zillow is a "person" within the meaning of the Mo. Rev. Stat. § 407.010(5) in that Zillow is a domestic "[…] for-profit […] corporation."

247.    Microsoft is a "person" within the meaning of the Mo. Rev. Stat. § 407.010(5) in that Zillow is a domestic "[…] for-profit […] corporation."

248.    Plaintiffs and members of the Missouri Subclass are "persons" under the MPA in that they are natural person or a natural person's legal representative, and they visited www.zillow.com to utilize the Zillow search engine for personal, family, and/or household use. Furthermore, Plaintiff Jill Adams visited www.zillow.com to utilize the Zillow search engine to shop for, purchase, and/or contract to purchase "merchandise"—real estate—for personal, family, and/or household use. Plaintiff Jill Adams also downloaded and used the Zillow App for personal, family, and/or household purposes.

249.    The MPA applies to Defendants' conduct described herein because it protects consumers in transactions that are intended to result, or which have resulted in the sale of goods or services.

250.    The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate, or services. See Mo. Rev. Stat. § 407.010. Thus, the real estate search engine regarding millions of for-sale and rental listings, the Zestimate® home value service,

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 54

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

and/or local professionals connector are services that Zillow provides to its website visitors are merchandise within the meaning of the Act. Plaintiffs and members of the Subclass also received Zillow's offer to use a search engine and/or look at a Zestimate and accepted that offer by using the search engine and/or looking at a Zestimate under the act, relying on the Terms of Use of the Website.

251.     Trade" or "commerce" is defined as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated." Zillow's advertising, offering for sale, and sale of its real estate search engine and the real estate located thereon on www.zillow.com is considered "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

252.     The Missouri Attorney General has promulgated regulations defining the meaning of unfair practice as used in the above statute. Specifically, Mo. Code Regs. tit. 15, § 60-8.020, provides:

   a.   An unfair practice is any practice which—

        i.    Either—

              1.   Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

              2.   Is unethical, oppressive or unscrupulous; and

        ii.   Presents a risk of, or causes, substantial injury to consumers.

   b.   Proof of deception, fraud, or misrepresentation is not required to prove unfair practices as used in section 407.020.1., RSMo. (*See, Federal Trade*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1                       *Commission v. Sperry and Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31

2                       L.Ed.2d 170 (1972); *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (N.C.

3                       1981); *see also*, Restatement, Second, Contracts, sections 364 and 365).

4         253.     Pursuant to Mo. Rev. Stat. §407.020 and Mo. Code Regs. Tit. 15, § 60- 8.020,

5 Defendant's acts and omissions fall within the meaning of "unfair."

6         254.     Missouri case law provides that the MMPA's "literal words cover *every practice*

7 *imaginable and every unfairness to whatever degree.*" *Conway v. CitiMortgage, Inc.*, 438S.W.3d

8 410, 416 (Mo. 2014) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d237, 240

9 Mo. banc 2001). Furthermore, the statute's "plain and ordinary meaning of the words themselves

10 . are unrestricted, all-encompassing and exceedingly broad." *Id*. at 240.

11         255.     Zillow violated the MPA by omitting and/or concealing material facts about

12 www.zillow.com and/or engaging in unfair or deceptive trade practices in its operation of

13 www.zillow.com. Notably, Zillow omitted and/or concealed that it directed Session Replay

14 Providers to secretly monitor, collect, transmit, and discloses its website visitors' Website

15 Communications to the Session Replay Providers using Session Replay Code.

16         256.     Zillow's direction and employment of the Session Replay Providers and their

17 Session Replay Codes to intercept, collect, and disclose website visitors' Website

18 Communications are material to the transactions on www.zillow.com. Zillow is leading online

19 residential real estate marketplace in the United States and Zillow does not disclose its use of

20 Session Replay Code to secretly monitor and collect website visitors' Website Communications.

21 Had Plaintiff and the members of the Missouri Subclass known that the Session Replay Codes

22 (that collect, transmit, and disclose Website Communications to the Session Replay Providers)

23 were embedded in Zillow's website, they would not have visited www.zillow.com to shop for,

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ◆ FAX 206.682.2992

1    purchase, or contract to purchase real estate or they would have required Zillow to compensate

2    them for the interception, collection, and disclosure of their Website Communications.

3           257.    Zillow intentionally concealed the interception, collection, and disclosure of

4    website visitors' Website Communications using Microsoft's Session Replay Code embedded in

5    www.zillow.com is material because it knows that consumers would not otherwise visit its

6    website to search for, purchase, and contract to purchase real estate. Indeed, Zillow's

7    concealment of such facts was intended to mislead consumers.

8           258.    Zillow's concealment, suppression, and/or omission of material facts was likely

9    to mislead reasonable consumers under the circumstances, and thus constitutes an unfair and

10   deceptive trade practice in violation of the MPA.

11          259.    By failing to disclose and inform Plaintiff and the Subclass about its interception,

12   collection, and disclosure of website visitors' Website Communications, Zillow engaged in acts

13   and practices that constitute unlawful practices in violation of Mo. Ann. Stat. §§ 407.010, et seq.

14          260.    As a direct and proximate result of these unfair and deceptive practices, Plaintiff

15   and each member of the Missouri Subclass has suffered actual harm in the form of money and/or

16   property because the disclosure of their Website Communications has value as demonstrated by

17   the collection and use of it by Zillow. The collection and use of this information has now

18   diminished the value of such information to Plaintiff and the Missouri Subclass.

19          261.    As such, Plaintiff and the Missouri Subclass seek an order (1) requiring Zillow to

20   cease the unfair practices described herein; (2) awarding actual damages; and (3) awarding

21   reasonable attorneys' fees and costs. Plaintiff and the Subclass seek all relief available under Mo.

22   Ann. Stat. § 407.020, which prohibits "the act, use or employment by any person of any

23   deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by Mo. Code Regs. Ann. tit. 15, §§ 60-7.010, *et seq*., Mo. Code Regs. Ann. tit. 15, §§ 60-8.010, *et seq*., and Mo. Code Regs. Ann. tit. 15, §§ 60-9.010, *et seq.,* and Mo. Ann. Stat. § 407.025, which provides for the relief sought in this count.

262.    Zillow's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and members of the Missouri Subclass any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiff and members of the Missouri Subclass are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

### COUNT 10
**Invasion of Privacy – Missouri Intrusion Upon Seclusion**
**(In the Alternative On behalf of Jill Adams and the Missouri Subclass)**

263.    Plaintiff Jill Adams brings this claim on behalf of herself and her minor child H.A. ("Plaintiff," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

264.    Under Missouri law, the general tort of invasion of privacy describes four distinct torts: (1) unreasonable intrusion upon the seclusion of another; or (2) appropriation of the other's name or likeness; or (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. Plaintiff brings this claim individually and on behalf of the Missouri Subclass. Plaintiff states a claim for unreasonable intrusion upon the seclusion of another.

265.    Plaintiff and members of the Subclass had an objective, reasonable expectation of privacy in their Website Communications.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

266.   Plaintiff and members of the Missouri Subclass did not consent to, authorize, or know about Defendants' intrusion at the time it occurred. Plaintiff and members of the Missouri Subclass never agreed that Defendants could collect or disclose their Website Communications.

267.   Plaintiff and members of the Missouri Subclass had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

268.   Defendants intentionally intruded on Plaintiff's and Missouri Subclass members' private life, seclusion, or solitude, without consent.

269.   Defendants' conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

270.   Plaintiff and members of the Missouri Subclass were harmed by Defendants' wrongful conduct as Defendants' conduct has caused Plaintiff and the Subclass mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

271.   Defendants' conduct has needlessly harmed Plaintiff and the Missouri Subclass by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiff and the Subclass to experience mental anguish, emotional distress, worry, fear, and other harms.

272.   Additionally, given the monetary value of individual personal information, Defendants deprived Plaintiff and members of the Missouri Subclass of the economic value of their interactions with Zillow's website, without providing proper consideration for Plaintiff's and Missouri Subclass members' property.

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 59

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

273.     Further, Defendants have improperly profited from its invasion of Plaintiff's and Missouri Subclass members' privacy in its use of their data for its economic value.

274.     As a direct and proximate result Defendants' conduct, Plaintiff and members of the Missouri Subclass are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

275.     Defendants' conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and members of the Missouri Subclass any time they visit Zillow's website with session replay software enabled without their consent. Plaintiff and members of the Missouri Subclasses are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**<u>COUNT 11</u>**
**Unlawful Wiretapping and Interception of Electronic Communications**
**California Penal Code § 631**
**(In the Alternative On behalf David Kauffman and the California Subclass)**

276.     Plaintiff David Kauffman ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege each and every allegation contained above as if fully alleged herein.

277.     At all relevant times to this complaint, Defendants intercepted components of Plaintiff's and the California Subclass Members' private electronic communications and transmissions when Plaintiff and other Subclass Members accessed Zillow's website within the State of California.

278.     At all relevant times to this complaint, Plaintiff and the other California Subclass Members did not know Defendants were engaging in such interception and therefore could not

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

provide consent to have any part of their private electronic communications intercepted by Defendant.

279.    Plaintiff and California Subclass Members were completely unaware that Defendants had intercepted and stored electronic communications and other personal data until well after the fact and was therefore unable to consent.

280.    At the inception of Defendants' illegally intercepted and unauthorized collection of to Plaintiff's and California Subclass Members' electronic communications, Defendants never advised Plaintiff or the other California Subclass Members that any part of this communications or their use of Zillow's website would be intercepted.

281.    Plaintiff and California Subclass Members were completely unaware that their use of Zillow's website and the electronic communications derived from the use was being intercepted and stored.

282.    To establish liability under section 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

    a.    Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system;

          *Or*

    b.    Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 61

1                 or passing over any wire, line or cable or is being sent from or received at any

2                 place within this state;

3                 *Or*

4         c.   Uses, or attempts to use, in any manner, or for any purpose, or to communicate

5                 in any way, any information so obtained;

6                 *Or*

7         d.   Aids, agrees with, employs, or conspires with any person or persons to

8                 unlawfully do, or permit, or cause to be done any of the acts or things

9                 mentioned above in this section.

10       283.    Section 631(a) is not limited to phone lines, but also applies to "new technologies"

11 such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21

12 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly

13 to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL

14 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re*

15 *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. Apr. 9, 2020) (reversing

16 dismissal of CIPA and common law privacy claims based on Facebook's collection of

17 consumers' Internet browsing history).

18       284.    Defendants' use of Session Replay Code amounts to spyware and is a "machine,

19 instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue

20 here.

21       285.    At all relevant times, by using Session Replay Code  which is spyware to track,

22 record, and learn the contents of Plaintiff's and California Subclass Members' electronic

23 communications, Defendants intentionally tapped, electrically or otherwise, the lines of internet

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 62

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

communication between Plaintiff and California Subclass Members on the one hand, and the specific sites and locations Plaintiffs and California Subclass Members visited on Zillow's website on the other.

286.    At all relevant times, by utilizing Session Replay Code  as spyware, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and California Subclass Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

287.    Plaintiff and California Subclass Members did not consent to any of Defendants' actions in implementing these unauthorized connections, nor have Plaintiff or Subclass Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff's and California Subclass Members' electronic communications.

288.    Plaintiff's and the California Subclass Members' devices that Defendants accessed through its unauthorized actions included their computers, smart phones, and tablets and/or other electronic computing devices.

289.    Defendants violated Cal. Penal Code § 631 by knowingly accessing, and without permission accessing, Plaintiff's and California Subclass Members' electronic communications through the use of the Session Replay Code  as spyware in order for Defendants to track, understand, and attempt to learn the contents of Plaintiff's and California Subclass Members' electronic communications generated by the use of Zillow's website, in violation of Plaintiff's and California Subclass Members' reasonable expectations of privacy in their devices and data.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      290.    Defendants violated Cal. Penal Code § 631 by knowingly and without permission

2  intercepting, wiretapping, accessing, taking and using Plaintiff's and the California Subclass

3  Members' personally identifiable information and personal communications with others.

4      291.    Plaintiff and California Subclass Members seek all relief available against

5  Defendants under Cal. Penal Code § 631, including $2,500 per violation.

6                          **<u>REQUEST FOR RELIEF</u>**

7      Plaintiffs, individually and on behalf of themselves and the other members of the

8  proposed Classes, respectfully request that the Court enter judgment in Plaintiffs' and the

9  Classes' favor and against Defendants as follows:

10      A.    Certifying the Nationwide Class and State Subclasses and appointing Plaintiffs as

11            the representatives of the Classes;

12      B.    Appointing Plaintiffs' counsel as class counsel;

13      C.    Declaring that Defendants' past conduct was unlawful, as alleged herein;

14      D.    Declaring Defendants' ongoing conduct is unlawful, as alleged herein;

15      E.    Enjoining Defendants from continuing the unlawful practices described herein,

16  and awarding such injunctive and other equitable relief as the Court deems just and proper;

17      F.    Awarding Plaintiffs, the Nationwide Class and State Subclass members statutory,

18  actual, compensatory, consequential, punitive, and nominal damages, as well as restitution

19  and/or disgorgement of profits unlawfully obtained;

20      G.    Awarding Plaintiffs, the Nationwide Class members, and State Subclass members

21  pre-judgment and post-judgment interest;

22      H.    Awarding Plaintiffs, the Nationwide Class members, and State Subclass members

23  reasonable attorneys' fees, costs, and expenses; and

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    I.    Granting such other relief as the Court deems just and proper.

2    **<u>DEMAND FOR JURY TRIAL</u>**

3    Plaintiffs, on behalf of themselves and the Classes, demand a trial by jury of any and all

4    issues in this action so triable of right.

5    DATED this 7th day of April, 2023.

6                        TOUSLEY BRAIN STEPHENS PLLC

7    By: *s/ Kim D. Stephens, P.S.*
         Kim D. Stephens, P.S., WSBA #11984
8        kstephens@tousley.com
         *s/ Jason T. Dennett*
9        Jason T. Dennett, WSBA #30686
         jdennett@tousley.com
         *s/ Kaleigh N. Boyd*
10       Kaleigh N. Boyd, WSBA #52684
         kboyd@tousley.com
11       1200 Fifth Avenue, Suite 1700
         Seattle, Washington 98101
12       Telephone: (206) 682-5600
         Fax: (206) 682-2992

13       Joseph P. Guglielmo, (*pro hac vice*)
14       Carey Alexander (*pro hac vice*)
         Ethan S. Binder (*pro hac vice*)
15       **SCOTT+SCOTT ATTORNEYS
         AT LAW LLP**
16       The Helmsley Building
         230 Park Avenue, 17th Floor
17       New York, NY 10169
         Telephone: (212) 223-6444
18       Facsimile:  (212) 223-6334
         jguglielmo@scott-scott.com
19       calexander@scott-scott.com
         ebinder@scott-scott.com

20       E. Kirk Wood (*pro hac vice* forthcoming)
21       Sharika Robinson (*pro hac vice* forthcoming)
         Marcela Jenkins (*pro hac vice* forthcoming)
22       **WOOD LAW FIRM, LLC**
         P. O. Box 382434
23       Birmingham, AL 35238-2434
         Telephone: (205) 908-4906

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 65

kirk@woodlawfirmllc.com
marcelaj@blalocklegal.com

Gary F. Lynch (*pro hac vice*)
Kelly K. Iverson (*pro hac vice*)
Jamisen A. Etzel (*pro hac vice*)
Elizabeth Pollock-Avery (*pro hac vice*)
Nicholas A. Colella (*pro hac vice*)
Patrick D. Donathen (*pro hac vice* )
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
elizabeth@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

Tiffany Marko Yiatras (*pro hac vice* forthcoming*)*
CONSUMER PROTECTION LEGAL, LLC
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Tele: (314) 541-0317
Email: tiffany@consumerprotectionlegal.com

Bryan L. Bleichner (*pro hac vice* forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue S, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com

Kate M. Baxter-Kauf (*pro hac vice* forthcoming)
Karen Hanson Riebel (*pro hac vice* forthcoming)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 66

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

                             Joshua B. Swigart (*pro hac vice* forthcoming)

2

                             **SWIGART LAW GROUP, APC**

                             2221 Camino del Rio S, Ste 308

3

                             San Diego, CA 92108

                             Telephone: (866) 219-3343

4

                             Josh@SwigartLawGroup.com

5

                             Daniel G. Shay (*pro hac vice* forthcoming)

                             **LAW OFFICE OF DANIEL G. SHAY**

6

                             2221 Camino del Rio S, Ste 308

                             San Diego, CA 92108

7

                             Telephone: (619) 222-7429

                             DanielShay@TCPAFDCPA.com

8

                             Ari H. Marcus  (*pro hac vice*)

                             Joseph H. Kanee (*pro hac vice* forthcoming)

9

                             **MARCUS ZELMAN LLC**

                             701 Cookman Avenue, Suite 300

10

                             Asbury Park, New Jersey 07712

                             Telephone: (732) 695-3282

11

                             Facsimile: (732) 298-6256

                             Ari@marcuszelman.com

12

                             joseph@marcuszelman.com

13

                             Brian C. Gudmundson (*pro hac vice*)

                             Rachel K. Tack (*pro hac vice*)

14

                             **ZIMMERMAN REED LLP**

                             1100 IDS Center

15

                             80 South 8th Street

                             Minneapolis, MN  55402

16

                             Telephone: (612) 341-0400

                             Facsimile: (612) 341-0844

17

                             brian.gudmundson@zimmreed.com

                             rachel.tack@zimmreed.com

18

                             Jonathan M. Jagher

19

                           **FREED KANNER LONDON**

                           **& MILLEN LLC**

20

                             923 Fayette Street

                             Conshohocken, Pennsylvania 19428

21

                             Telephone: (610) 234-6486

                             jjagher@fklmlaw.com

22

23

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Douglas A. Millen
Michael E. Moskovitz
**FREED KANNER LONDON**
**& MILLEN LLC**
2201 Waukegan Road, Ste. 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
*Attorneys for Plaintiffs and the Putative Class*

CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT - 68