The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| *In Re: Zillow Group, Inc. Session Replay Software Litigation*,<br><br>This Document Refers to: All Actions | NO.    2:22-cv-01282-JLR<br><br>**ZILLOW GROUP, INC.'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: June 30, 2023<br><br>**ORAL ARGUMENT REQUESTED** |

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

THE AMENDED COMPLAINT'S ALLEGATIONS ..................................... 3

LEGAL STANDARD ...................................................................................... 6

ARGUMENT ................................................................................................... 7

I.      Plaintiffs' Allegations Are Based Entirely On Hypotheticals Or Otherwise Devoid of Facts. ............................................................ 7

II.     Plaintiffs Concede That Washington Law Applies To Their Claims. ............................ 9

III.    Plaintiffs' Wiretapping Claims Fail. ................................................. 9

        A.    The Washington Privacy Act Claim (Count I) Fails. ......................................... 9

              1.    The WPA Does Not Apply Because There Were No Private Communications. ................................. 10

              2.    Zillow Did Not Intercept Private Communications. ............................ 12

              3.    The WPA Does Not Apply Because Plaintiffs Were Not Injured In Their Business, Person, Or Reputation. ................................. 14

        B.    The Pennsylvania Wiretapping Act Claim (Count III) Fails. ............................ 16

              1.    Zillow Did Not Intercept Electronic Communications. ...................... 17

              2.    Zillow Did Not Access the Contents of Any Communications. .......... 17

        C.    The Illinois Eavesdropping Act Claim (Count V) Fails. .................................. 18

        D.    The Missouri Wiretap Act Claim (Count VIII) Fails. ..................................... 19

        E.    The California Invasion of Privacy Act Claim (Count XI) Fails. .................... 21

              1.    Zillow Did Not Engage In Wiretapping (Clause 1). ............................ 22

              2.    Zillow Cannot Eavesdrop On Its Own Communications (Clauses 2 and 4). ................................. 23

              3.    Zillow Did Not Intercept a Private Electronic Communication. .......... 24

IV.     Plaintiffs' Invasion Of Privacy Claims Fail. ................................... 25

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – i
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

A.     The Washington Claim (Count II) Fails. ........................................................ 26

B.     The Pennsylvania Claim (Count IV) Fails. ..................................................... 27

C.     The Illinois Claim (Count VII) Fails. .............................................................. 28

D.     The Missouri Claim (Count X) Fails. .............................................................. 29

V.     Plaintiffs' Consumer Fraud Claims Fail. ........................................................ 29

A.     The Illinois Consumer Fraud and Deceptive Business Practices Act Claim
       (Count VI) Fails. .............................................................................................. 30

B.     The Missouri Merchandising Practices Act Claim (Count IX) Fails. .............. 31

CONCLUSION ........................................................................................................ 32

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – ii
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                           **Page(s)**

3

4

*Allen v. Quicken Loans Inc.*,
   2018 WL 5874088 (D.N.J. Nov. 9, 2018) .................................................................21

5

6

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) .................................................................32

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................6

8

9

*Audenreid v. Cir. City Stores, Inc.*,
   97 F. Supp. 2d 660 (E.D. Pa. 2000).......................................................................17

10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005).....................................................................................30

11

12

*Beldrock, et al. v. Microsoft Corp., et al.*,
   No. 2:22-cv-01082-JLR (Apr. 24, 2023)................................................................8

13

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................6

15

16

*Blake v. Career Educ. Corp.*,
   2009 WL 140742 (E.D. Mo. Jan. 20, 2009) .........................................................31

17

*Blaylock v. First Am. Title Ins. Co.*,
   504 F. Supp. 2d 1091 (W.D. Wash. 2007) ..............................................................6

18

19

*Bradley v. Google, Inc.*,
   2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ......................................................25

20

21

*Brinkly v. Monterey Fin. Servs., LLC*,
   340 F. Supp. 3d 1036 (S.D. Cal. 2018) ...........................................................14, 15

22

*Buckley v. Santander Consumer USA, Inc.*,
   2018 WL 1532671 (W.D. Wash. Mar. 29, 2018)............................................25, 26

23

24

*Caldwell v. Boeing Co.*,
   2018 WL 2113980 (W.D. Wash. May 8, 2018) ....................................................15

25

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)...................................................................10

26

27

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – iii
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ...................................................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................................15

*Clare v. Clare*,
    2022 WL 1714547 (Wash. Ct. App. May. 26, 2022) ........................................12

*Commonwealth v. Beauford*,
    475 A.2d 783 (Pa. Super. Ct. 1984) ......................................................................18

*Cooney v. Chi. Pub. Schs.*,
    943 N.E.2d 23 (1st Dist. 2010) ...............................................................................30

*Corcoran v. Sw. Bell Tel. Co.*,
    572 S.W.2d 212 (Mo. Ct. App. 1978) ...................................................................29

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .................................................................................4

*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) .........................................................10

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................21

*Garner v. Amazon.com, Inc.*,
    603 F. Supp. 3d 985 (W.D. Wash. 2022) ..............................................................4

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) ..........................................................13, 18

*Goodman v. HTC Am., Inc.*,
    2012 WL 2412070 (W.D. Wash. June 26, 2012) ...............................................16

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ............................................................................17, 20

*In re Google, Inc. Priv. Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................27

*Graham v. Noom*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................24

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – iv
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*Gray v. Amazon.com, Inc.*,
   2023 WL 1068513 (W.D. Wash. Jan. 27, 2023) ....................................................26

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) ......................................................................................16

*Hernandez v. Path, Inc.*,
   2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ..........................................................25

*In re Hopper*,
   4 Wash. App. 2d 838 (Wash. Ct. App. 2018) ..........................................................11

*Hug v. Am. Traffic Sols., Inc.*,
   2014 WL 2611832 (E.D. Mo. June 11, 2014) ..........................................................31

*Jackson v. Charlie's Chevrolet, Inc.*,
   664 S.W.2d 675 (Mo. Ct. App. 1984) ......................................................................32

*Javier v. Assurance IQ, LLC*,
   2023 WL 114225 (N.D. Cal. Jan. 5, 2023)...............................................................23

*Johnston v. AC JV, LLC*,
   2018 WL 3769799 (W.D. Wash. Aug. 9, 2018), *aff'd*, 787 Fed. App'x. 413
   (9th Cir. 2019) ............................................................................................................7

*Jurgens v. Build.com, Inc.*,
   2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ..........................................................20

*Kelly v. Cape Cod Potato Chip Co.*,
   81 F. Supp. 3d 754 (W.D. Mo. 2015)........................................................................31

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2022) ....................................................................................24

*Kurowski v. Rush Sys. for Health*,
   2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ............................................................30

*Lavender v. Wolpoff & Abramson, L.L.P.*,
   2007 WL 2507752 (W.D. Mo. Aug.30, 2007) ....................................................7, 31

*Lawlor v. North Am. Corp. of Illinois*,
   983 N.E.2d 414 (Ill. 2012)........................................................................................29

*Lewellen v. Raff*,
   843 F.2d 1103 (8th Cir. 1988) ..................................................................................21

*In re Liburd-Chow*,
  434 B.R. 863 (Bankr. N.D. Ill. 2010) ........................................................................30

*Licea v. Am. Eagle Outfitters, Inc.*,
  2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .......................................................22, 24

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) .....................................................................22

*Mayhall v. Amazon Web Servs. Inc.*,
  2022 WL 2718091 (W.D. Wash. May 24, 2022) .........................................................4

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ................................................................27

*McKee v. Gen. Motors Co.*,
  601 F. Supp. 3d 901 (W.D. Wash. 2022) .............................................................10, 14

*Melvin v. Burling*,
  490 N.E.2d 1011 (Ill. 3d Dist. 1986) .........................................................................29

*Membrila v. Receivables Performance Mgmt., LLC*,
  2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ..............................................................23

*Nagy v. Bell Telephone Co. of Pa.*,
  436 A.2d 701 (Pa. Super. Ct. 1981) .....................................................................27, 28

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ........................................................................................8

*In re Nickelodeon Consumer Priv. Litig.*,
  2014 WL 3012873 (D.N.J. July 2, 2014) ...................................................................17

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ..........................................................................20, 27, 28

*Nieuwejaar v. Nationstar Mortg., LLC*,
  2016 WL 1436123 (W.D. Wash. Apr. 12, 2016), *aff'd*, 700 Fed. App'x. 723
  (9th Cir. 2017) .....................................................................................................3, 6, 8

*People v. Clark*,
  6 N.E.3d 154 (Ill. 2014).............................................................................................19

*Poore-Rando v. United States*,
  2017 WL 5756871 (W.D. Wash. Nov. 28, 2017).......................................................26

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019) ...................................................25, 27, 28

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) .........................................................................17, 18

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .....................................................24

*Rogers v. Ulrich*,
    125 Cal. Rptr. 306 (1975) ...................................................................................23

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ............................................... 24-25

*Russo v. Microsoft Corp.*,
    2021 WL 2688850 (N.D. Cal. June 30, 2021)................................................14, 15

*Saleh v. Nike*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................23

*Schmidt v. Ameritech Illinois*,
    768 N.E.2d 303 (Ill. App. 1st Dist. 2002) ..........................................................25

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ..............................................................................30

*Skinner v. Switzer*,
    562 U.S. 521 (2011) ..............................................................................................6

*Smith v. Maryland*,
    442 U.S. 735 (1979) ............................................................................................17

*Sofka v. Thal*,
    662 S.W.2d 502 (Mo. 1983) ..........................................................................25, 29

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................................6

*State v. Clark*,
    129 Wash. 2d 211 (1996) ....................................................................................11

*State v. Corliss*,
    67 Wash. App. 708 (1992), *aff'd*, 123 Wash. 2d 656 (1994) ..............................12

*State v. King*,
    873 S.W.2d 905 (Mo. Ct. App. 1994) ................................................................21

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*State v. Roden*,
179 Wash. 2d 893 (2014) ......................................................................................9, 10, 12

*State v. Townsend*,
147 Wash. 2d 666 (2002) ....................................................................................13

*State v. Wright*,
2020 WL 6557814 (Wash. App. Div. 1 2020) ....................................................14

*Streamline Bus. Grp., LLC v. Vidible, Inc.*,
2016 WL 3523033 (E.D. Pa. June 27, 2016) ......................................................15

*Sutherland v. Massa*,
2010 WL 11545751 (W.D. Mo. Sept. 16, 2010) ................................................29

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 4345446 (N.D. Cal. Sept. 15, 2011) ..................................................32

*Tolu v. Reid*,
639 S.W.3d 504 (Mo. Ct. App. 2021) ................................................................31

*United States v. Center for Diagnostic Imaging, Inc.*,
787 F. Supp. 2d 1213 (W.D. Wash. 2011) ..........................................................7

*United States v. Griggs*,
54 F.4th 531 (8th Cir. 2022) ..............................................................................20

*United States v. N.Y. Tel. Co.*,
434 U.S. 159 (1977) ............................................................................................17

*Vasil v. Kiip, Inc.*,
2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) ......................................................19

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................................................25

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ..............................................................................7

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ................................................22

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008) ........................................................................7, 30

*Wright v. Washington*,
2020 WL 3848052 (W.D. Wash. Mar. 20, 2020) ..............................................26

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – viii
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*Zak v. Bose Corp.*,
  2020 WL 2762552 (N.D. Ill. May 27, 2020)...........................................................................19

**Statutes**

Cal. Penal Code § 631 ............................................................................................21, 22, 23, 24

Federal Wiretap Act, 18 U.S.C. § 2510.....................................................................................17

Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*........................................................18, 19

Missouri Wiretap Act, Mo. Ann. Stat. § 542.200 *et seq.* ................................................19, 20, 21

Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.
  § 5701, *et seq.* ..........................................................................................16, 17, 18, 19

Washington Privacy Act, RCW 9.73.030, *et seq.* ...............................................................9, 14

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................7, 8, 30, 31

Fed. R. Civ. P. 9 ................................................................................................7, 30, 31

Fed. R. Civ. P. 12 ...................................................................................................1, 7

*Individual*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
  webster.com/dictionary/individual (last visited June 6, 2023)............................................10

*Privacy Policy*, ZILLOW GROUP, https://www.zillowgroup.com/zg-privacy-
  policy/ (last visited June 6, 2023)............................................................................4

Restatement (Second) of Torts § 652B .....................................................................................25

*Terms of Use*, ZILLOW GROUP, https://www.zillowgroup.com/terms-of-use/ (last
  visited June 6, 2023)............................................................................................4

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – ix
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Defendant Zillow Group, Inc. ("Zillow") respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint") as to it with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint relies on hypotheticals and rank speculation to manufacture a lawsuit predicated upon legally inapposite and factually unfounded claims. It asserts contradictory statutory and common law privacy claims, based solely on descriptions from news articles about other companies and various secondary media sources about how session replay code *could* be used. Plaintiffs, however, fail to allege how Zillow *actually* used session replay software. Rather, hypothesizing about how Zillow *might* have used session replay software, Plaintiffs allege Zillow violated wiretapping laws and common law privacy and statutory consumer protection laws of Washington, Pennsylvania, Illinois, Missouri, and California by parroting the elements of each claim in a conclusory fashion.[1]

The Amended Complaint lacks factual allegations about what any of the Parties ***actually did***. It instead is premised on what the Parties ***might be able to do***. For example, Plaintiffs allege what Microsoft Corporation's ("Microsoft") session replay code is purportedly ***capable*** of capturing. (*See* Am. Compl. at ¶¶ 57-69.) They do not, however, allege any facts about what, if anything, Microsoft or Zillow ***actually do*** with session replay code, let alone what Zillow purportedly did with Plaintiffs' individual data. Plaintiffs then baldly assert – once again, without any supporting facts about how Zillow actually uses session replay code – that "Zillow's procurement and use of…Session Replay Providers to collect Plaintiffs' and the Classes' Website Communications[ ] constitutes wiretapping in violation of Washington statutory and common law as well as other states' statutory and common law." (Am. Compl. at ¶ 70.) These unsupported factual allegations are insufficient.

---

[1]   Plaintiffs also bring some of these claims against Microsoft, which fail largely for the same reasons they do against Zillow. *See generally* Microsoft's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 1
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs' claims are also legally deficient.  For example, Plaintiffs' wiretapping claims fail because they do not allege that the **_substance_** of any private communications were intercepted.  Instead, Plaintiffs make general statements about information they generally input into the website but make no allegations that this information was recorded or otherwise captured.  Aside from conclusory statements, Plaintiffs make no attempt to connect their alleged communications to what was allegedly "wiretapped."  Further, as to the Washington wiretapping statute, Plaintiffs fail to allege a critical element of their claim—actual damages.

Plaintiffs' common law privacy claims fail because Plaintiffs do not allege any "highly objectionable" conduct required to sustain these claims.  The boilerplate consumer fraud claims under Illinois and Missouri law similarly fail because, once again, and among other flaws, Plaintiffs fail to describe any cognizable damages.

In sum, Plaintiffs have not pled any viable cause of action against Zillow.  This is not a surprise, because Plaintiffs are misapplying and contorting laws enacted in a different era to address a different issue.  Zillow is not wiretapping its customers, nor secretly recording them, invading their privacy, or defrauding them.  Plaintiffs cannot allege any violations of law, because none have occurred.  For the reasons set forth below, this Court should dismiss Plaintiffs' Amended Complaint with prejudice.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 2
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## THE AMENDED COMPLAINT'S ALLEGATIONS[2]

Before filing their Amended Complaint, Plaintiffs commenced eight separate putative class actions alleging substantially similar claims.[3]  After transferring seven[4] of the matters from various jurisdictions, this Court granted the Parties' stipulation to consolidate on January 18, 2023.  (*See* Dkt. 33.)

Plaintiffs allege they have used Zillow's website, www.zillow.com,[5] to search for properties using their computers or mobile devices.  (Am. Compl. at ¶¶ 1, 4.)  Plaintiffs also allege they accessed the desktop and mobile websites at various, generalized times: Perkins[6] beginning in 2010; Kauffman beginning in 2013; Huber beginning in 2019; Margulis beginning

---

[2]      While this Court "must accept all well-pleaded allegations of fact as true and draw all reasonable inferences in favor of the plaintiff" at this stage, Zillow does not concede the truth of any factual allegations in the Amended Complaint.  *See Nieuwejaar v. Nationstar Mortg., LLC*, 2016 WL 1436123, at *2 (W.D. Wash. Apr. 12, 2016), *aff'd*, 700 Fed. App'x. 723 (9th Cir. 2017) (quotation omitted) (Robart, J.).

[3]      Plaintiffs have asserted substantively identical claims against various corporations in fourteen similar cases filed around the country.  *See, e.g.*, *Hasson v. Parts ID, Inc.*, No. 2:22-cv-01291 (W.D. Pa.); *Hasson v. Fullstory, Inc.*, No. 2:22-cv-01246 (W.D. Pa.); *Huber v. Lowe's Companies, Inc.*, No. 2:22-cv-03571 (E.D. Pa.); *Huber v. Expedia Group, Inc.*, No. 2:22-cv-03570 (E.D. Pa.); *Popa v. PSP Group, LLC, et al.*, No. 2:23-cv-00294 (W.D. Wa.); *Popa v. Apple Inc.*, No. 5:23-cv-00548 (N.D. Cal.); *Popa v. Harriet Carter Gifts, Inc., et al.*, No. 2:19-cv-00450 (W.D. Pa.); *Adams v. PSP Group, LLC*, No. 4:22-cv-01210 (E.D. Mo.); *Kauffman v. The Home Depot, Inc.*, No. 3:23-cv-00259 (S.D. Cal.); *Kauffman v. American Airlines, Inc.*, No. 4:22-cv-01123 (N.D. Tex.); *Kauffman v. Meta Platforms Inc.*, No. 4:22-cv-06658 (N.D. Cal.); *Kauffman v. Alaska Airlines, Inc.*, No. 3:22-cv-01525 (S.D. Cal.); *Kauffman v. American Airlines, Inc.*, No. 3:22-cv-01524 (S.D. Cal.); *Kauffman v. Papa John's International, Inc.*, No. 3:22-cv-01492 (S.D. Cal.).

[4]      Plaintiffs Conlisk and Dekhtyar initiated an action in the Northern District of Illinois, *see Conlisk and Dekhtyar v. Zillow Group, Inc.*, No. 1:22-cv-05082 (N.D. Ill.), and transferred it to this Court, where it was consolidated with the other seven pending actions.  *See* No. 2:22-cv-01698-JLR.  These two Plaintiffs, however, are neither mentioned in the Amended Complaint nor was their matter discontinued.  It is unclear whether Plaintiffs Conlisk and Dekhtyar continue to assert their claims.

[5]      Unless otherwise stated, "Zillow's website" refers to www.zillow.com and its subpages.

[6]      Perkins, a resident of South Carolina, is only a member of the nationwide putative class and asserts claims under Washington law.  She does not assert an alternative individual state claim.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 3
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

in 2021; and Hasson, Popa, Strelzin, Adams, and Adams's minor child, H.A., beginning in 2022. (*Id.* at ¶¶ 71-79.)  Plaintiffs also concede that they have not only seen but have *relied* on the Zillow website's Terms of Use, which incorporate the Privacy Policy that *expressly discloses Zillow's use of session replay*.  (*See id.* at ¶ 250 (alleging Plaintiffs were "relying on the Terms of Use of the [Zillow] Website" which includes Zillow's Privacy Policy).)  *See* Zillow's Terms of Use,[7] attached hereto in its entirety as Exhibit A; Zillow Privacy Policy,[8] attached hereto in its entirety as Exhibit B.[9]

Plaintiffs conclusorily state they have "substantively engaged with Zillow's website," but do not identify which subpages they accessed or how they "substantively engaged" with the website.  (*Id.* at ¶¶ 71-79.)  Perkins and Huber generally allege they entered their names, addresses, dates of birth, phone numbers, credit score ranges, current loans, and loans estimates

---

[7]    *Terms of Use*, ZILLOW GROUP, https://www.zillowgroup.com/terms-of-use/ (last visited June 6, 2023).  Exhibit A, at ¶ 13.  *See* n.9, below.

[8]    *Privacy Policy*, ZILLOW GROUP, https://www.zillowgroup.com/zg-privacy-policy/ (last visited June 6, 2023).  *See* n.9, below.

[9]    "A document that is not physically attached to a complaint may nevertheless be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 992 (W.D. Wash. 2022) (citation omitted) (quotation omitted).  "Mere reference to a document in the complaint is not sufficient: rather, the document must be integral to or form the basis of plaintiff's claims."  *Id.* (citing *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).  In addition, the document's authenticity must not be in question and there must be no disputed issues as to the document's relevance.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted).

Plaintiffs' claims on behalf of the putative class and subclasses are grounded in Zillow's Terms of Use and Privacy Policy.  (*See, e.g.*, Am. Compl. at ¶¶ 18, 98, 113, 250.)  While Plaintiffs do not attach the Terms of Use to the Amended Complaint, the URL to access the Terms of Use is contained in its entirety.  (*See id.* at ¶¶ 18, 113.)  This Court may therefore consider Zillow Terms of Use and Privacy Policy because they are integral to Plaintiffs' claims and have been incorporated by reference into the Amended Complaint.  Alternatively, this Court may consider these public-facing documents by taking judicial notice of them.  *See Garner*, 603 F. Supp. 3d at 993 (citing Fed. R. Evid. 201(b)); *see also Mayhall v. Amazon Web Servs. Inc.*, 2022 WL 2718091, at *4 (W.D. Wash. May 24, 2022) (collecting cases and taking judicial notice of customer agreement and data privacy document).

on Zillow's website, but provide no actual specifics about where they provided this information, when they provided it, or the details of that information.  (*Id.* at ¶¶ 71, 73.)

Similarly, Hasson, Popa, and Strelzin generically allege they entered names, addresses, date of births, phone numbers, credit cards, and "other financial information" on Zillow's website.  (*Id.* at ¶¶ 72, 75, 76.)  These Plaintiffs, however, also do not identify on which subpages they purportedly provided this information or any examples of what they allegedly provided.

Kauffman alleges he claimed ownership of properties on Zillow's website, and entered his name, address, and phone number.  (*Id.* at ¶ 74.)  Margulis only alleges he entered his name and email address.  (*Id.* at ¶ 79.)  Adams and Adams' minor child H.A. do not specify what information, if any, they allegedly entered.  (*Id.* at ¶¶ 77, 78.)

In addition to vague generalities about how Plaintiffs may have interacted with the Zillow website, their claims are grounded in similarly vague generalized descriptions of session replay code's capabilities.  (*See id.* at ¶¶ 33-69.)  While the Amended Complaint contains apparent concerns that "experts" have allegedly raised about the use of session replay code – all by companies that are not parties to this litigation – Plaintiffs do not allege any specific concerns or factual allegations about ***Zillow's*** alleged use of session replay code.  (*See, e.g.*, *id.* at ¶¶ 49-52.)  The Amended Complaint is also silent as to how Zillow purportedly uses Microsoft's Clarity software.

Instead, Plaintiffs concede that "[t]he types of events captured by Session Replay Code vary by specific product and configuration," while failing to allege any facts related to Zillow.  (*Id.* at ¶ 36.)  Without pleading any facts related to how Zillow allegedly used session replay code during any of Plaintiffs' unidentified visits, Plaintiffs have merely pled what session replay code "may capture."  (*See, e.g.*, *id.* at ¶ 40.)  In doing this, Plaintiffs state in a conclusory fashion that their electronic "communications" with Zillow's website, including mouse movements, finger swipes (for those who accessed the website via their mobile phone), clicks, keystrokes, and URLs of web pages visited ***may have been*** captured through Zillow's use of session replay code,

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 5
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1 | including by Microsoft's Clarity.  (*See, e.g.*, *id.* at ¶¶ 1, 70, 81.)  These speculative allegations
2 | are insufficient to support Plaintiffs' scattershot claims.

3 | ## LEGAL STANDARD

4 | To survive a motion to dismiss, a plaintiff must plead "factual content that allows the
5 | court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
6 | *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "demands more than an unadorned, the
7 | defendant unlawfully harmed me accusation."  *Id.* (citation omitted).  Rather, "[f]actual
8 | allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp.*
9 | *v. Twombly*, 550 U.S. 544, 555 (2007).

10 | The question is not whether the claimant "will ultimately prevail…but whether his
11 | complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521,
12 | 530 (2011) (citation omitted) (quotation omitted); *see also Nieuwejaar*, 2016 WL 1436123 at *2.
13 | The "[f]actual allegations must be enough to raise a right to relief above the speculative level."
14 | *Twombly*, 550 U.S. at 555; *see also Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013)
15 | (allegations must "rise beyond mere conceivability or possibility" to meet the plausibility
16 | standard).  Courts are not required to accept as true legal conclusions or "formulaic recitation[s]
17 | of the legal elements of a cause of action."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th
18 | Cir. 2012) (citation omitted).

19 | Moreover, when construing state laws, this Court is bound by decisions of that state's
20 | highest court.  *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1101 (W.D. Wash.
21 | 2007) (Robart, J.).  "If there is no controlling decision," then this Court "is obligated to predict
22 | how the highest state court would decide the issue using intermediate appellate court decisions,
23 | decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  In the
24 | absence of convincing evidence that the state supreme court would decide differently, a federal
25 | court must follow the decisions of the state's intermediate appellate courts."  *Id.* (quotations
26 | omitted) (citations omitted).

27

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 6
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

For the reasons explained below, this Court should dismiss Plaintiffs' Amended Complaint as to Zillow with prejudice.

**ARGUMENT**

## I.   PLAINTIFFS' ALLEGATIONS ARE BASED ENTIRELY ON HYPOTHETICALS OR OTHERWISE DEVOID OF FACTS.

It is axiomatic that, at a minimum, a pleading that states a claim for relief must satisfy Rule 8.[10]  A "plaintiff relying on 'information and belief' must state the factual basis for the belief[.]"  *United States v. Center for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011).  Plaintiffs, therefore, cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citation omitted).  A "sue first, ask questions later" approach "cannot be condoned."  *Johnston v. AC JV, LLC*, 2018 WL 3769799, at *4 (W.D. Wash. Aug. 9, 2018), *aff'd*, 787 Fed. App'x. 413 (9th Cir. 2019) (granting motion to dismiss and motion for judgment on the pleadings because "Plaintiffs must offer more than mere speculation and 'sheer possibility' of liability.").

Plaintiffs' sprawling, 291-paragraph Amended Complaint asserts eleven different causes of action but fails to articulate any cognizable claim.  It does not contain any plausible basis from which this Court could conclude that Zillow improperly tracked any user's interactions with its own website or that Zillow ever accessed, intercepted, or recorded Plaintiffs' visits to its website. (*See, e.g.*, Am. Compl. at ¶¶ 33-52 (how session replay code may be utilized, using examples involving other companies from various articles, *none* of which mention Zillow); ¶¶ 57-69 (how Microsoft's Clarity software *might* be utilized).)  Plaintiffs make vague statements about how session replay code *could* operate but concede that *Zillow* may not use session replay code in

---

[10]     As explained in Section V, below, Plaintiffs' claims for violations of the consumer fraud laws of Illinois and Missouri must comply with the heightened pleading standards of Rule 9(b).  *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668-69 (7th Cir. 2008); *Lavender v. Wolpoff & Abramson, L.L.P.,* 2007 WL 2507752, at *2 (W.D. Mo. Aug.30, 2007).

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 7
No. 2:22-cv-01282-JLR

**Savitt Bruce & Willey llp**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

that manner.  (*See id.* at ¶ 89.)  Having made general allegations that have no relation to Zillow, Plaintiffs are left with no choice but to claim in conclusory terms that "Zillow's procurement and use of Microsoft Clarity's Session Replay Code, and procurement and use of other Session Replay Codes through various Session Replay Providers to collect Plaintiffs' and the Classes' Website Communications, constitutes wiretapping in violation of Washington statutory and common law as well as other states' statutory and common law." (*Id.* at ¶ 70.)

Plaintiffs' allegations, based solely on what session replay code *may* theoretically do and *may* capture, "are insufficient, without more, to raise Plaintiffs' claim[s] above the level of speculation and into plausibility." *Beldrock, et al. v. Microsoft Corp., et al.*, No. 2:22-cv-01082-JLR, Dkt. 71, at *8 (Apr. 24, 2023) (Robart, J.) (dismissing breach of duty claim, as purely speculative, where plaintiffs alleged nothing more than poor performance in comparison to other investment vehicles); *Nieuwejaar*, 2016 WL 1436123, at *1-2 ("legal conclusions and other conclusory statements receive no presumption of truth.").

The Amended Complaint is also deficient because it is an improper "shotgun" pleading that forces Zillow to guess which claims Plaintiffs intend to assert against it.  *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 304-05 (9th Cir. 1992).  To that end, only Counts I, VIII, and IX identify the defendants allegedly involved.  (*See* Am. Compl. at ¶¶ 120, 230-31, 246-47.)  The remaining counts fail to do so, instead choosing to sometimes plead against "Defendants" (*see* Counts II, VII, X and XI) and sometimes against "Zillow" (*see* Counts III, IV, V, and VI).  This deficient pleading practice fails to give Zillow notice of the claims Plaintiffs seek to assert against it.

All told, the Amended Complaint contains no factual allegations – instead, it only discusses what *may* have hypothetically occurred.  This speculation and conjecture does not rise to the plausibility pleading requirement of Rule 8.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 8
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## II.   PLAINTIFFS CONCEDE THAT WASHINGTON LAW APPLIES TO THEIR CLAIMS.

Plaintiffs not only concede that Washington law applies to their nationwide putative class claims against Zillow, but also allege that Zillow's purportedly tortious conduct emanated from Washington.  (Am. Compl. at ¶¶ 111-13.)  This is unsurprising given that Zillow's Terms of Use provide that Washington law governs[11] and Zillow also is headquartered in Washington.  (*Id.* at ¶ 111.)  Because there is no dispute about what law applies, this Court should apply Washington law to Plaintiffs' claims.  As explained below, Plaintiffs' claims fail under Washington law as a matter of law and this Court should dismiss them.

## III.   PLAINTIFFS' WIRETAPPING CLAIMS FAIL.

### A.   The Washington Privacy Act Claim (Count I) Fails.

Plaintiffs allege a claim for violation of the Washington Privacy Act ("WPA"), RCW 9.73.030(1)(a) and (b), individually and on behalf of a putative nationwide class.  (*See* Am. Compl. at ¶¶ 116-27.)  Plaintiffs' WPA claim fails for at least three independent reasons: they have not sufficiently alleged that (1) a private communication was at issue; (2) Zillow intercepted their private communications; or (3) they suffered any purported injury to their business, person, or reputation.

To state a claim under the WPA, Plaintiffs must allege that: (1) a private communication was transmitted by a device; (2) this communication was intercepted or recorded; (3) by use of a device designed to record or transmit; (4) without the consent of all parties to the private communication.  *State v. Roden*, 179 Wash. 2d 893, 898 (2014) (*en banc*).  They also must allege that Zillow injured their business, person, or reputation.  RCW 9.73.060.  Stated differently, a claim under the WPA must allege a separate and distinct injury from an alleged bare procedural

---

[11]   Zillow's Terms of Use state, in relevant part: "These Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict of laws provisions. … The Zillow Companies operate the Services from our offices in Washington, and we make no representation that the Services are appropriate or available for use in other locations."  (Exhibit A, at ¶ 17).  *See* n.9, above.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 9
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

harm.  *See Roden*, 179 Wash. 2d at 898; *McKee v. Gen. Motors Co.*, 601 F. Supp. 3d 901, 908-09 (W.D. Wash. 2022).

### 1.      The WPA Does Not Apply Because There Were No Private Communications.

As a threshold matter, although Plaintiffs may be "individuals," Zillow is not.  The WPA does not define "individual," but, when given its plain meaning, an "individual" is a "single human being as contrasted with a social group or institution."[12]  *See Roden*, 179 Wash. 2d at 899 (applying dictionary definition of "private" to the WPA in the absence of a statutory definition); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (holding that "the WPA requires communication between at least two individuals" and that Microsoft was not an individual).  This alone defeats Plaintiffs' WPA claim.

Plaintiffs' allegations that their keystrokes and mouse movements on Zillow's website constitute private communications also does not withstand scrutiny.  (*See* Am. Compl. at ¶ 122.)  Indeed, courts in this District have held that "without an individual on the other end of [their] communication (other than [the corporate defendant]), the transmission of [Plaintiffs'] data cannot be considered a communication under the WPA."  *Cousineau*, 992 F. Supp. 2d at 1129.  There, the transmission of plaintiff's geolocation data did not constitute either a "communication" or a "conversation" under the WPA because it would require the court to "stray too far from the term[s'] ordinary meaning[s]."  *Id.*; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015) ("user's geographical location, URLs, search terms, etc.—may not form the basis for liability under [the WPA] as this data was not transmitted as part of a communication between individuals but instead directed to an automated system.").  Plaintiffs' alleged keystrokes and mouse movements are akin to the data in *Cousineau* and do not constitute a communication under the WPA.  These actions do not fit within the plain meaning of "communication" under the WPA.  This Court should dismiss the WPA claim.

---

[12]      *Individual*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/individual (last visited June 6, 2023).

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 10
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs' alleged interactions with the Zillow website also were not "private" under the WPA. The WPA does not define "private," but

> Washington courts have adopted the dictionary definition: belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public. A communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable based on the duration and subject matter of the communication, the location of the communication, and the presence of potential third parties.

*In re Hopper*, 4 Wash. App. 2d 838, 845 (Wash. Ct. App. 2018) (citations omitted) (quotations omitted); *see also State v. Clark*, 129 Wash. 2d 211, 228 (1996) ("the presence of one or more third parties . . . means that the conversations were not private in any ordinary or usual meaning of that word.").

Plaintiffs could not have subjectively intended for their communications to be private. They may allege that they "did not know about" the use of session replay technology when they visited Zillow's website, (*see, e.g.*, Am. Compl. at ¶ 133), but that allegation is not determinative. Even if Plaintiffs had subjectively intended for their website interactions to be private, they did not have a reasonable expectation of privacy. The Amended Complaint acknowledges that consumers like Plaintiffs expect their online activities to be tracked and shared. (*See, e.g.*, Am. Compl. at ¶¶ 22-32.) Moreover, Zillow's Privacy Policy specifically provides that Zillow:

> [M]ay use tracking technologies to automatically collect commercial information, preferences, and internet, network and device information, including: . . . . **Information about how you use the services**, such as the pages you visit, the links you click, the ads you view and click on, purchase information and your checkout process, your location when you access or interact with our services, and other similar actions . . . . **Analytics Data**, such as information about your activity when you visit our sites or use our apps; this can include clicks, mouse movements, forms you fill out, and similar information.

Exhibit B, at pp. 2-3. Plaintiffs therefore cannot claim any reasonable expectation of privacy – particularly because they concede they ***relied*** on the website's Terms of Use, which incorporate the Privacy Policy that unambiguously discloses Zillow's use of session replay software. (*See*

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 11
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Am. Compl. at ¶ 250 (alleging that Plaintiffs were "relying on the Terms of Use of the [Zillow] Website" which includes Zillow's Privacy Policy).)

*State v. Corliss,* 67 Wash. App. 708 (1992), *aff'd*, 123 Wash. 2d 656 (1994), is instructive. There, a police informant tipped a handheld telephone receiver to allow a police officer to overhear a defendant's conversation. *Id.* at 711-12. The court held that this did not violate the WPA because, among other reasons, it was "doubtful there was a 'private communication', because [defendant] assumed the risk that [the other communicant] would allow someone else to listen – a circumstance that is not so odd or remarkable as to create in… an expectation of privacy that only one person would listen at the other end." *Id.* at 712. Similarly, website users "assume the risk" that it is commonplace for a website like Zillow to share information with third parties consistent with its disclosures and Privacy Policy.

### 2.    Zillow Did Not Intercept Private Communications.

Plaintiffs also make the conclusory allegation that session replay code intercepted their communications. (*See* Am. Compl. at ¶ 122.) Even crediting these allegations, the plain meaning of "interception" requires a situation where a communication from a sender to a recipient is accessed by a third party before the recipient received it. *See Roden*, 179 Wash. 2d at 904. Although the WPA does not define the term "interception," the Washington Supreme Court has interpreted the term using its standard dictionary meaning: "to stop…before arrival…or interrupt the progress or course." *Id.* (citing Merriam-Webster's Dictionary).

In *Roden*, the Washington Supreme Court found a violation of the WPA where the defendant's text messages were "opened, read, and responded to by an officer before they reached" the intended recipient, which "is consistent with the ordinary definition of 'intercept'— to 'stop'[.]" 179 Wash. 2d at 904; *see also Clare v. Clare*, 2022 WL 1714547, at *4-5 (Wash. Ct. App. May. 26, 2022) (a message "received without interference and read by [the] intended recipient cannot be intercepted by subsequent actions taken by other people.").

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 12
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs' allegations bear no resemblance to the interception described in *Roden* and its progeny. Nowhere do they allege that Zillow stops, impedes, or otherwise prevents or intercepts communications from them before those communications reach their intended recipient, Zillow's website. Rather, Plaintiffs allege, based on pure speculation and conclusory conjecture, that their "electronic communications are intercepted contemporaneously with their transmission." (Am. Compl. at ¶ 124.) That is, their alleged "communications" with Zillow's website were "intercepted" by unidentified actors at the time of their transmission to Zillow's website. (*Id.*) *See also Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1319, 1321-22 (S.D. Fla. 2021) (analyzing claims under both Federal Wiretap Act and Florida Security of Communications Act, Fl. Stat. § 934, *et seq.*, and granting motion to dismiss because "Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store" and, thus, defendant did not intercept contents of any communications).

Plaintiffs also do not allege their "communications" were prevented from reaching the intended recipient, Zillow's website, nor do they allege that they were accessed by a third party. Plaintiffs instead hypothesize that Microsoft stores and may access the "communications." (Am. Compl. at ¶ 69.) These allegations do not fit within the plain meaning of "interception." Specifically, storing information, which is what Zillow purportedly did through Microsoft, involves the process of saving data for future use. By contrast, intercepting information involves capturing data as it is being transmitted. Intercepting information is typically performed for surveillance or security purposes, which Plaintiffs do not allege here.

Consent to any purported interception also defeats Plaintiffs' WPA claims. Consent may be express or implied. *State v. Townsend*, 147 Wash. 2d 666, 676 (2002) ("[B]ecause Townsend, as a user of e-mail had to understand that computers are, among other things, a message recording device and that his e-mail messages would be recorded on the computer of the person to whom the message was sent, he is properly deemed to have consented to the recording of those

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 13
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

messages."); *see also State v. Wright*, 2020 WL 6557814, at *5 (Wash. App. Div. 1 2020) ("[T]he sender of a text message impliedly consents to the recipient's phone recording the text message.") (citation omitted).  Zillow's Privacy Policy (*see* Exhibit B, at pp. 2-3) discloses the exact conduct of which Plaintiffs complain; therefore their continued use of the Zillow website constitutes implied consent, particularly because they allege they expressly ***relied*** on Zillow's Terms of Use. (Am. Compl. at ¶ 250.)

### 3. The WPA Does Not Apply Because Plaintiffs Were Not Injured In Their Business, Person, Or Reputation.

Last, the WPA requires damages for persons injured by a violation of the WPA:

> Any person who, directly or by means of a detective agency or any other agent, violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation. A person so ***injured*** shall be entitled to actual damages[.]

RCW 9.73.060 (emphasis added).  "That a plaintiff bringing a claim under [the WPA] requires an injury in addition to a violation of the Act is reinforced by the fact that [the WPA] conditions the entitlement to damages, actual or liquidated, on the plaintiff being a 'person so injured.'" *McKee*, 601 F. Supp. 3d at 908 (citing *Streamline Bus. Grp., LLC v. Vidible, Inc.*, 2016 WL 3523033, at *8 (E.D. Pa. June 27, 2016)); *see also Russo v. Microsoft Corp.*, 2021 WL 2688850, at *3 n.3 (N.D. Cal. June 30, 2021); *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1044-45 (S.D. Cal. 2018).  Accordingly, a violation of the WPA without injury is insufficient to state a claim for relief.

Plaintiffs do not allege they suffered any injury to their business, person, or reputation. Instead, they merely claim that they and the putative class "had their communications intercepted in violation of the law and their right to privacy"; "Defendants' wrongful conduct has caused…mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications;" and they were "deprived…of the economic value of their

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 14
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

interactions with Zillow's website, without providing proper consideration for [their] property." (Am. Compl. at ¶¶ 106, 138, 140.)

Even taking these self-serving allegations as true, they are not sufficient. Simply put, Plaintiffs' alleged injuries plainly fail to describe an injury to their business, person, or reputation, as required by the WPA. *See, e.g.*, *Russo*, 2021 WL 2688850 at *3 (WPA claim failed where plaintiffs did not "allege enough facts to draw a reasonable inference that they have been injured by [defendant's] conduct" and finding statements "that [defendant] used and shared" their data were "far too sparse and conclusory to make the claim of personal injury plausible") (citations omitted); *Brinkley*, 340 F. Supp. 3d at 1044-45 (dismissing WPA claim for lack of actual financial damages); *Streamline Bus. Grp., LLC v. Vidible, Inc.*, 2016 WL 3523033, at *8 (E.D. Pa. June 27, 2016) (denying WPA claim when it "track[ed] the requirements for a violation" but failed to allege "injury resulting from the purported … violation").

The WPA does not articulate the standard for injury to "person," but the mental injury Plaintiffs allege is not enough because conclusory allegations that a plaintiff "suffered humiliation, mental anguish, emotional, and physical distress" are insufficient, and "[t]he court need not accept these generalized allegations as true." *Caldwell v. Boeing Co.*, 2018 WL 2113980, at *10 (W.D. Wash. May 8, 2018).

Plaintiffs' purported injuries, including the conclusory allegation that they suffered "mental anguish," are also wholly speculative. A plaintiff cannot rely on speculation about the unfettered choices made by independent actors not before the court. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (speculation about possibility that government might surveil plaintiffs "does not establish that injury based on potential future surveillance is certainly impending or is fairly traceable"). Plaintiffs' injuries are premised on multiple steps in hypothetical scenarios, none of which are pled with any certainty in the Amended Complaint. For example, they do not, and cannot, allege that any third parties did, in fact, access the alleged

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 15
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

communications.  They merely allege that third parties *could* theoretically access them.  (Am. Compl. at ¶¶ 88-91.)

Further, Plaintiffs' allegation that they "were deprived of the economic value of their interactions with Zillow's website" (Am. Compl. at ¶ 140) assumes that their interactions generated any economic value.  Without any specific factual allegations, Plaintiffs' injuries are far too speculative to support a claim.  *See Grimmett v. Brown*, 75 F.3d 506, 517 (9th Cir. 1996) (distinguishing "uncertain damage, which prevented recovery, from an uncertain extent of damage, which did not prevent recovery"); *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *7 (W.D. Wash. June 26, 2012) (plaintiffs did not allege sufficient injury for their claim that their personal information was misappropriated because alleged injury was "vague and future-oriented").  Plaintiffs' failure to allege any specific, independent injury supports this Court dismissing the WPA claim.

### B.   The Pennsylvania Wiretapping Act Claim (Count III) Fails.

Popa and Huber[13] assert an alternative claim individually and on behalf of a putative Pennsylvania subclass for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq.* ("WESCA").  These Plaintiffs fail to state a claim against Zillow for WESCA violations because they have conceded that Washington law, not Pennsylvania law, applies to their claims.  Even if Pennsylvania law were to apply, Popa and Huber fail to plausibly allege that information purportedly intercepted constituted the "contents" of the communications.

To state a WESCA claim, Popa and Huber must allege that Zillow (1) "intercepted" their electronic communication (2) without "prior consent." 18 Pa. C.S. §§ 5704(4), 5725(a).  "Intercept" is defined as the "[a]ural or other acquisition *of the contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."  18 Pa. C.S. § 5702 (emphasis added).  The term "content" does not include all information related to a

---

[13]   Hasson, a Pennsylvania resident, does not assert this claim.  (*See* Am. Compl. at ¶ 6.)

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 16
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

communication.  Rather, it is statutorily limited to "information concerning the substance, purport, or meaning of that communication."  18 Pa. C.S. § 5702.  Consequently, Pennsylvania courts interpret WESCA to principally protect the words spoken or written in a communication. "[T]o fall within the confines of [WESCA], the interception must involve the acquisition of the contents of a conversation, i.e., the actual hearing of sound." *Audenreid v. Cir. City Stores, Inc.*, 97 F. Supp. 2d 660, 663 (E.D. Pa. 2000) (holding that video surveillance system that did not record sound did not violate WESCA).

### 1.    Zillow Did Not Intercept Electronic Communications.

The Federal Wiretap Act uses identical language to define "intercept" as WESCA.  *See* 18 U.S.C. § 2510(4); *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126, n.2 (3d Cir. 2022).  There too, "contents" refers to "information the user intended to communicate, such as the spoken words of a telephone call," *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *14 (D.N.J. July 2, 2014), or the actual sounds of a call, *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 167 (1977).

Here, Popa and Huber fail to allege "interception" because they have not alleged that Zillow captured the contents of their communications.  While the content of an email or text message may fall within WESCA's ambit, courts have consistently contrasted the substance of such communication from non-content data, like routing, addressing, or signal information, which are ***not*** actionable.  *See Smith v. Maryland*, 442 U.S. 735 (1979) (distinguishing between extrinsic information used to route a communication and communicated content itself).  "In essence, addresses, phone numbers, and URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function."  *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015).

### 2.    Zillow Did Not Access the Contents of Any Communications.

Popa's and Huber's WESCA claim is based on various data that simply are not actionable as a matter of law.  The Amended Complaint asserts that Microsoft and other unidentified third-

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 17
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

party vendors allegedly intercepted mouse movements, finger swipes, keystrokes, and URLs. (Am. Compl. at ¶ 1.)  This, however, is the precise "addressing information" which is not actionable.  *See Commonwealth v. Beauford*, 475 A.2d 783, 786 (Pa. Super. Ct. 1984) ("Dialed Number Recorder" device did not intercept ***contents*** of communication where it only collected data on phone numbers dialed, length of calls, and date of calls); *see also Goldstein*, 559 F. Supp. 3d at 1320 (session replay code does not capture substance, i.e., contents, of communication).[14]

For example, the *Goldstein* court – which analyzed a statute substantively identical to WESCA – held that a plaintiff's mouse movements and clicks, keystrokes, search terms, information inputted into the website, and pages and content viewed while visiting the defendant's website did not constitute the contents of the alleged communication.  559 F. Supp. 3d at 1322.  The court reasoned that the alleged communication "is the cyber analog to record information [d]efendant could have obtained through a security camera at a brick-and-mortar store."  *Id.* at 1321.  Thus, the defendant's use of session replay code captured only plaintiff's "movements" on the website, and "no[t] contents because they did not convey the substance of any particular communication by Plaintiff."  *Id.*

Popa and Huber do not plead facts (even if accepted as true) sufficient to show that their interactions with Zillow's website are more than movements, akin to data that "could have [been] obtained through a security camera at a brick-and-mortar store."  *See Goldstein*, 559 F. Supp. 3d at 1321.  Their claim fails because these types of movements and interactions are not actionable under WESCA.

C.    The Illinois Eavesdropping Act Claim (Count V) Fails.

Strelzin and Margulis assert an alternative claim for violation of the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*, individually and on behalf of a putative Illinois subclass.  Again, their claim fails because they have conceded that Washington law, not Illinois

---

[14]    In *Popa v. Harriet Carter Gifts, Inc.*, the Third Circuit held that WESCA does not have a direct-party exception but did ***not*** analyze whether the contents of the communication at issue were intercepted.  52 F.4th 121, 129 (3d Cir. 2022).  *Popa* does not provide applicable guidance.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 18
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

law, applies.  Regardless, the Illinois Eavesdropping Act, were it to apply, is meant "to protect conversational privacy" which is not at issue here.  *See People v. Clark*, 6 N.E.3d 154, 161 (Ill. 2014).  Their claim also fails because Strelzin and Margulis do not (and cannot) allege that Zillow was not a party to the alleged communication.  *Zak v. Bose Corp.*, 2020 WL 2762552, at *3 (N.D. Ill. May 27, 2020) (dismissing claim for violation of Illinois Eavesdropping Act, with prejudice, for failing to allege that defendant was not party to communication); *see also* 720 ILCS 5/14-2(a)(3); *Vasil v. Kiip, Inc.*, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) (dismissing Illinois Eavesdropping Act claim because it does not preclude party to communications from recording or transcribing it).  On the contrary, the Amended Complaint alleges that these Plaintiffs' communications **with Zillow** were spied on **by Zillow**.  (Am. Compl. at ¶¶ 184, 190.)[15]  *See id.* This Court should dismiss Count V with prejudice.

### D.    The Missouri Wiretap Act Claim (Count VIII) Fails.

Adams and her minor child H.A. ("the Adams Plaintiffs") assert an alternative claim for violation of the Missouri Wiretap Act ("MWA"), Mo. Ann. Stat. § 542.200 *et seq.,* individually and on behalf of the putative Missouri subclass.  (Am. Compl. at ¶ 221.)  This claim fails, because the Adams Plaintiffs concede that Washington law, not Missouri law, applies.  Even if Missouri law did apply, the MWA provides a civil cause of action only against a defendant who "intercepted" a communication or "procures any other person to intercept" a communication. Mo. Stat. § 542.418.2(1).

In addition to the reasons discussed in Sections III.B and C, above, regarding Pennsylvania's WESCA and the Illinois Eavesdropping Act, the Adams Plaintiffs' claim under the MWA fails because (1) the Act does not apply to communications that one of the parties records, and (2) despite the applicable statutory exemptions, their communications were not "intercepted" within the meaning of the statute.  *See* Mo. Stat. § 542.402.2(3).

---

[15]    Amendment of this claim would be futile because Strelzin and Margulis allege that Zillow was a party to all communications.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 19
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1   Under Missouri law, an interception is not unlawful (1) where the person carrying out the

2   interception is a "party to the communication" or (2) "where one of the parties to the

3   communication has given prior consent to such interception."  Mo. Stat. § 542.402.2(3).  The

4   Adams Plaintiffs claim they were not aware that "Defendants and the other Session Replay

5   Providers were intercepting and recording their Website Communications."  (Am. Compl. at ¶

6   233.)  MWA, however, renders their awareness irrelevant, because Zillow and the "other Session

7   Replay Providers" were parties to those communications.

8   A person to whom a plaintiff's communication is "sent directly" is "necessarily one of

9   [the] parties" to the communication.  *In re Google*, 806 F.3d at 142-43.  The Adams Plaintiffs

10  cannot dispute that Zillow was a party to their communications with Zillow's website, which

11  precludes any claim that Zillow itself intercepted such communications.  *See Jurgens v.*

12  *Build.com, Inc.*, 2017 WL 5277679, at *5-6 (E.D. Mo. Nov. 13, 2017) (dismissing wiretap claim

13  against website operator under party exemption).

14  Zillow's unnamed "Session Replay Providers" were also allegedly parties to the Adams

15  Plaintiffs' communications.  It is immaterial that the Adams Plaintiffs allegedly were not aware

16  that Defendants and the "other Session Replay Providers" were "intercepting and recording their

17  Website Communications."  (Am. Compl. at ¶ 233.)  *See e.g.*, *United States v. Griggs*, 54 F.4th

18  531, 536 (8th Cir. 2022) (party exemption applied even though police officer posed as another

19  person); *In re Google*, 806 F.3d at 143-45 (party exemption applied even though advertisers

20  "procured their entrance to a conversation [with website] through a fraud").

21  It is also immaterial that the Adams Plaintiffs "did not consent to having their Website

22  Communications surreptitiously intercepted and recorded…" (Am. Compl. at ¶ 238) because

23  Zillow provided consent, which is all that the one-party exemption of the MWA requires.  While

24  case law is limited in Missouri and the Eighth Circuit, courts in other jurisdictions routinely

25  dismiss wiretap claims when the owner of a website allegedly utilizes session replay software.

26  *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274  (3d Cir. 2016) (affirming

27

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 20
No. 2:22-cv-01282-JLR

dismissal of Federal Wiretap Act claim where website owner allowed third-party advertiser to intercept its communications with website visitors); *Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *4-5 (D.N.J. Nov. 9, 2018) (dismissing Federal Wiretap Act claim where website owner allowed third-party marketing company to intercept website visitor's mouse clicks and keystrokes); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001) (similar).[16]

This Court should follow suit.  The Adams Plaintiffs allege that "Defendants intentionally operated and employed Session Replay Code on Zillow's website to spy on, automatically and secretly, and intercept its website visitors' private electronic communications with Zillow in real time…" and that their private electronic communications were "intercepted contemporaneously with their transmission." (Am. Compl. at ¶¶ 235-36.)  To be clear, only "one of the parties" must give consent.  *Lewellen v. Raff*, 843 F.2d 1103, 1115 (8th Cir. 1988).  Zillow has given the necessary "prior consent to" those Session Replay Providers alleged such "interception." *See* Mo. Stat. § 542.402.2(3); *cf. DoubleClick*, 154 F. Supp. 2d at 510 (finding it "implausible" that website owner did not authorize vendor to access plaintiff's website communications, when such access was the "defining characteristic of [the vendor's]…service").

Last, because the MWA was modeled after the Federal Wiretap Act, *see King*, 873 S.W.2d at 908-09, this claim fails for the same reason set forth in Section III.B, above.  This Court should dismiss Count VIII with prejudice.

### E.    The California Invasion of Privacy Act Claim (Count XI) Fails.

Kauffman asserts an alternative class claim under California Invasion of Privacy Act ("CIPA") wiretapping and eavesdropping provision, Cal. Penal Code § 631 ("Section 631"), individually and on behalf of the putative California subclass.  (Am. Compl. at ¶ 276.)  Again, this claim fails because Plaintiffs have conceded that Washington law, not California law,

---

[16]    Missouri courts interpreting the MWA consider "authority . . . interpreting similar statutes, including the federal wiretap act," upon which the MWA was modeled.  *State v. King*, 873 S.W.2d 905, 908-09 (Mo. Ct. App. 1994).

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 21
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

applies.  A claim under Section 631, if it were to apply, requires Kauffman to plead facts showing that Zillow used a "machine, instrument, or contrivance" to make an "unauthorized connection…with any telegraph or telephone wire, line, cable, or instrument."  Cal. Penal Code § 631(a).  Kauffman has not met these requirements.

The California Supreme Court has explained that, while Section 631 is titled "Wiretapping," it actually contains "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) [Clause 1] 'intentional wiretapping,' (2) [Clause 2] 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' [eavesdropping] and (3) [Clause 3] 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'"  *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Super. Ct.*, 583 P.2d 737, 741 (Cal. 1978)).  "Section 631(a) further contains a fourth basis for liability, [Clause 4] for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability."  *Id.* (quoting Cal. Penal Code § 631(a)).

### 1.    Zillow Did Not Engage In Wiretapping (Clause 1).

Courts have consistently interpreted that "wiretapping" [Clause 1] applies only to communications over telephones and not through the internet.  *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Clause 1 "concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) (Clause 1 "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument.") (quotations omitted).  Smart phones, including iPhones, do not fall within this definition.  *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *5 (C.D. Cal. Mar. 7, 2023) (citing *Mastel*, 549 F. Supp. 3d at 1135).

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 22
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## 2.   Zillow Cannot Eavesdrop On Its Own Communications (Clauses 2 and 4).

Kauffman alleges Zillow "intentionally tapped, electrically or otherwise, the lines of internet communication between [Kauffman] and California Subclass Members on the one hand, and the specific sites and locations [Kauffman] and California Subclass Members visited on Zillow's website on the other." (Am. Compl. at ¶ 285.)  California law is well settled, however, that a party to the communication cannot be held liable under Clause 2 of Section 631(a) for recording their own conversation. *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  Kauffman cannot make a claim under the second clause of Section 631(a).  A party may be held vicariously liable under Clause 4 only where it "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" prohibited in the previous three clauses.  Cal. Penal Code § 631.  Kauffman does not make a claim under the fourth clause of Section 631(a).  (*See* Am. Compl. at ¶¶ 289-90.)

In *Rogers v. Ulrich*, the defendant used a tape-recording device to record a conversation with the plaintiff without the plaintiff's knowledge or consent.  125 Cal. Rptr. 306 (1975).  The court found that Clause 2 did not apply to participant recording.  Looking to the Legislature's intent in passing CIPA, the court noted "it speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included." *Id.* at 309.  The court further reasoned that "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.*

Federal courts routinely affirm the rationale of *Rogers*.  *See Javier v. Assurance IQ, LLC*, 2023 WL 114225 at *4 (N.D. Cal. Jan. 5, 2023) (party to conversation cannot be held liable as eavesdropper); *Saleh v. Nike*, 562 F. Supp. 3d 503, 516 (C.D. Cal. 2021) ("Section 631(a) contains an exemption from liability for a person who is a 'party' to a communication, where a party to a communication cannot be held to wiretap another party to the same communication");

ZILLOW'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT – PAGE 23
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*Graham v. Noom*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("a party to a communication can record it (and is not eavesdropping when it does)"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (defendant would not have violated Section 631 if it had made transcript of conversation with plaintiff and then transmitted copy to third party because "sharing a record is not eavesdropping").

Kauffman alleges that "Defendants intercepted components of Plaintiff's and the California Subclass Members' private electronic communications and transmissions when Plaintiff and other Subclass Members accessed Zillow's website within the State of California." (Am. Compl. at ¶ 277.) Based on his own allegations, however, Zillow was a party to the alleged communication between Kauffman and Zillow's website. Zillow therefore cannot be held liable under the second clause of Section 631(a). *See Licea*, 2023 WL 2469630 at *7.

### 3. Zillow Did Not Intercept a Private Electronic Communication.

Kauffman also fails to identify a specific communication with Zillow that was actually intercepted. Section 631 makes it unlawful to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication", but ***only*** "while the same is ***in transit***." Cal. Penal Code § 631(a) (emphasis added). For a communication to be "intercepted", it must be acquired during transmission, not while in electronic storage. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2022). As discussed in Section III.A, above, storing information is distinguishable from intercepting information in that an interception involves capturing data as it is being transmitted.

Kauffman alleges that Zillow "read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and California Subclass Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California." (Am. Compl. at ¶ 286.) These conclusory statements are formulaic recitations of the legal elements of a cause of action and thus cannot be the basis for his claims. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 832; *Rosenow v. Facebook, Inc.*, 2020 WL

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 24
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1  1984062, at *7-8 (S.D. Cal. Apr. 27, 2020) ("Rosenow's allegation that Yahoo intercepted

2  Rosenow's communications during transit are conclusory."); *In re Vizio, Inc., Consumer Priv.*

3  *Litig.*, 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017) (granting motion to dismiss where

4  plaintiffs made only conclusory allegations of the purported interception during transmission);

5  *Hernandez v. Path, Inc*., 2012 WL 5194120, at *5 (N.D. Cal. Oct. 19, 2012) (dismissing Section

6  631 claims for, among other reasons, failing to show "intercept[tion] [of] a communication in

7  transit"); *Bradley v. Google, Inc*., 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006) (plaintiff

8  failed to state CIPA claim because "she [did] not allege[ ] that Google intercepted her

9  communications, only that her stored emails were deleted from her account").

10        This Court should dismiss Count XI of the Amended Complaint with prejudice.

11  **IV.    PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL.**

12        Plaintiffs also assert claims for invasion of privacy under Washington (Count II),

13  Pennsylvania (Count IV), Illinois (Count VII), and Missouri (Count X) common law.  Plaintiffs

14  bring each of these claims individually and on behalf of the putative class or subclasses.

15  Plaintiffs' common law claims are all grounded in Restatement (Second) of Torts § 652B.

16        Restatement (Second) of Torts § 652B requires Plaintiffs to allege that (1) Defendants

17  intentionally intruded upon their solitude or seclusion, or their private affairs; (2) Plaintiffs had

18  a legitimate and reasonable expectation of privacy; (3) Defendants' alleged intrusion would be

19  highly offensive to a reasonable person; and (4) Defendants' conduct was a proximate cause of

20  Plaintiffs' damage.  *See Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, at *7

21  (W.D. Wash. Mar. 29, 2018) (citing Restatement (Second) of Torts § 652B); *Popa v. Harriet*

22  *Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 120 (W.D. Pa. 2019) (citing Restatement (Second) of

23  Torts § 652B, and dismissing invasion of privacy claim); *Schmidt v. Ameritech Illinois*, 768

24  N.E.2d 303, 312 (Ill. App. 1st Dist. 2002) (citing Restatement (Second) of Torts § 652B); *Sofka*

25  *v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983) (same).

26

27

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 25
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

As explained below, each of these claims fails for the same reasons – Plaintiffs have not pleaded the requisite intent or that Zillow engaged in "highly offensive" conduct.  This Court should therefore dismiss each of the invasion of privacy claims.

### A.        The Washington Claim (Count II) Fails.

To state a claim for invasion of privacy-intrusion upon seclusion under Washington law, Plaintiffs must allege: (1) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs; (2) with respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy; (3) the intrusion would be highly offensive to a reasonable person; and (4) the defendant's conduct was a proximate cause of plaintiff's damage.  *Buckley*, 2018 WL 1532671, at *7 (citation omitted).

A defendant "commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Poore-Rando v. United States*, 2017 WL 5756871, at *2 (W.D. Wash. Nov. 28, 2017); *see also Wright v. Washington*, 2020 WL 3848052, at *4 (W.D. Wash. Mar. 20, 2020) ("Under Washington law, consent to disclosure of information is a complete bar to an invasion of privacy claim."). Plaintiffs concede that Zillow's website contains a privacy policy and, indeed, rely upon it to assert their Washington law claims.  (Am. Compl. at ¶ 124.)  They therefore cannot allege that Zillow possessed the requisite intent to commit this tort.  *See Gray v. Amazon.com, Inc.*, 2023 WL 1068513, at *8 (W.D. Wash. Jan. 27, 2023) (granting motion to dismiss where plaintiffs failed to show defendant "lack[ed] the necessary legal or personal permission" to commit allegedly intrusive acts where plaintiffs consented to privacy terms; alleged acts were therefore not intentional) (citation omitted).

Plaintiffs have also failed to plead any "highly offensive" conduct by Zillow.  No Washington court has recognized an intrusion upon seclusion claim for "highly offensive" disclosure or collection of digital data, and other courts "have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 26
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

violations of social norms." *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014). Courts around the country "have characterized the collection and disclosure of such data as 'routine commercial behavior.'" *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (citation omitted).

Plaintiffs have not pled any conduct that would be "highly offensive" to any reasonable person. They allege only that Zillow purportedly uses this information to understand how users engage with the website, not for some nefarious, invasive, or embarrassing purpose. (*See* Am. Compl. at ¶¶ 128-43.) This Court should dismiss Count II of the Amended Complaint with prejudice.

**B.     The Pennsylvania Claim (Count IV) Fails.**

To state a claim for invasion of privacy-intrusion upon seclusion under Pennsylvania law, which Plaintiffs have conceded does not apply, Popa and Huber must allege that Zillow "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would be highly offensive to a reasonable person." *Popa*, 426 F. Supp. 3d at 120. To give rise to an actionable claim, an invasion must be "of the sort which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at 122 (citing *Chicarella v. Passant*, 494 A.2d 1109, 1114 (Pa. Super. Ct. 1985)) (emphasis omitted). Conduct must be "extreme" in order to establish an invasion of privacy claim. *Id.* Whether a plaintiff sufficiently alleged extreme conduct highly objectionable to a reasonable person is an appropriate determination at the motion-to-dismiss stage. *In re Nickelodeon*, 827 F.3d at 295 n.205.

Pennsylvania courts have established a high bar for what constitutes "highly objectionable" conduct. In *Nagy v. Bell Telephone Co. of Pa.*, the court considered whether a telephone company intruded upon the plaintiff's seclusion by disclosing information about what numbers had been dialed from her telephone line when the plaintiff had specifically requested that the telephone company not disclose this information to any third parties. 436 A.2d 701, 702

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 27
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

(Pa. Super. Ct. 1981). Despite the plaintiff's explicit request for nondisclosure, made to protect a family member's safety, the court concluded that the disclosure "[fell] short" of highly objectionable conduct sufficient to state an intrusion upon seclusion claim. *Id.* at 704.

This high bar applies equally in the digital realm. The *Popa* court held that a defendant's alleged use of session replay code does not give rise to an actionable claim for intrusion upon seclusion under Pennsylvania law.[17] 426 F. Supp. 3d at 122. The court found this conduct was "simply not the type of highly offensive act to which liability can attach," and dismissed the intrusion upon seclusion claim. *Id.* Similarly, the *In re Nickelodeon* court found that Google's use of third-party tracking cookies on a website geared towards children was not sufficiently offensive to withstand a motion to dismiss. 827 F.3d at 294-95.

Notwithstanding Popa's and Huber's conclusory assertion that "Zillow's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy," they allege no ***facts*** supporting a conclusion that Zillow engaged highly offensive conduct. (Am. Compl. at ¶ 166.) Their references to "privacy polls and studies" concerning consumers' privacy preferences (*see id.* at ¶¶ 29-32), as well as acts and omissions of companies other than Zillow involving the use of session replay software (*see id.* at ¶¶ 49-52) are similarly unavailing. This Court should dismiss Count IV of the Amended Complaint with prejudice.

### C. The Illinois Claim (Count VII) Fails.

To state a claim for invasion of privacy-intrusion upon seclusion under Illinois law, which Plaintiffs have conceded does not apply, four requirements must be met: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs must be

---

[17] Plaintiff alleged the third-party vendor's session replay code tracked consumers' "every keystroke and mouse click" and logged consumers' IP addresses, names, residential addresses, and email addresses while they browsed defendant's website, even if they did not make a purchase. 426 F. Supp. 3d at 122. *See* n.14, above.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 28
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

private; and (4) the intrusion must cause anguish and suffering. *Melvin v. Burling*, 490 N.E.2d 1011, 1011 (Ill. 3d Dist. 1986). The Illinois Supreme Court has cited the Restatement (Second) of Torts' definition of intrusion upon seclusion with approval. *Lawlor v. North Am. Corp. of Illinois*, 983 N.E.2d 414, 424 (Ill. 2012). As set forth in Sections IV.A and B, above, Strelzin and Margulis fail to allege highly offensive or objectionable conduct on Zillow's part. This claim fails, and this Court should dismiss Count VII of the Amended Complaint with prejudice.

### D.     The Missouri Claim (Count X) Fails.

To state a claim for invasion of privacy-intrusion upon seclusion under Missouri law, which Plaintiffs have conceded does not apply, the Adams Plaintiffs must allege "(1) the existence of a secret and private subject matter; (2) a right possessed by plaintiff to keep that subject matter private; and (3) the obtaining of information about the subject matter by defendant through some method objectionable to the reasonable" person. *Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978) (citation omitted). A plaintiff must demonstrate a "reasonable expectation of privacy" over such information. *Sutherland v. Massa*, 2010 WL 11545751, at *2 (W.D. Mo. Sept. 16, 2010); *Sofka*, 662 S.W.2d at 510. As set forth in Sections IV.A and B, above, the Adams Plaintiffs fail to allege highly objectionable conduct on Zillow's part. This Court should dismiss Count X of the Amended Complaint with prejudice.

## V.     PLAINTIFFS' CONSUMER FRAUD CLAIMS FAIL.

Last, Plaintiffs assert two statutory consumer fraud claims, under Illinois (Count VI) and Missouri (Count IX) law, individually and on behalf of putative state subclasses. Both of these claims fail as a matter of law because, in addition to conceding that only Washington law applies, Plaintiffs have not sufficiently alleged cognizable damages.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 29
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

**A.** **The Illinois Consumer Fraud and Deceptive Business Practices Act Claim (Count VI) Fails.**

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citations omitted).  To state an ICFA claim, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).  The "actual damages must arise from 'purely economic injuries.'"  *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (1st Dist. 2010) (quoting *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049 (Ill. App. 2009)).

ICFA claims must be pled with the same specificity required to a fraud claim.  *In re Liburd-Chow*, 434 B.R. 863, 869 (Bankr. N.D. Ill. 2010) ("the heightened pleading requirements of Rule 9(b) apply" to ICFA claims) (citation omitted); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668-69 (7th Cir. 2008) (actions brought for "deceptive practices" under ICFA require heightened pleading).  As set forth in Section I, above, the Amended Complaint does not meet the lower pleading requirements of Rule 8.  It therefore necessarily fails to meet the heightened requirements of Rule 9(b).

Strelzin and Margulis also fail to allege any damages, as ICFA requires.  Their claimed damages are "in the form of money and/or property because the disclosure of their Website Communications has value[.]"  (Am. Compl. at ¶ 203.)  Despite alleging that Zillow collected and used information without alleging any supporting facts, the alleged harm is one of a privacy injury.  "There is no basis under Illinois law to suggest that [Plaintiffs are] entitled to claim a 'privacy injury' under ICFA."  *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023) (citation omitted).  As further explained above in Section III.A, Strelzin and

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 30
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Margulis fail to allege actual damages.  In addition, any damages based "in the form of money and/or property because the disclosure of their Website Communications has value" would be speculative.  This claim fails as a matter of law and this Court should dismiss Count VI of the Amended Complaint with prejudice.

### B.  The Missouri Merchandising Practices Act Claim (Count IX) Fails.

To state a claim for violation of the Missouri Merchandising Practices Act ("MMPA"), the Adams Plaintiffs must sufficiently allege that they (1) "purchased merchandise," (2) "primarily for personal or household purposes," and (3) "suffered an ascertainable loss" (4) "as a result of an act made unlawful by the MMPA."  *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 757 (W.D. Mo. 2015) (citing Mo. Rev. Stat. § 407.025.1).

Allegations under the MMPA must be pled with the same specificity required to support a fraud claim.  *Blake v. Career Educ. Corp.*, 2009 WL 140742 (E.D. Mo. Jan. 20, 2009) ("District Courts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA"); *Lavender,* 2007 WL 2507752, at *2 ("Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims").  Once again, because the Amended Complaint does not meet the lower pleading requirements of Rule 8, it necessarily fails to meet the heightened pleading requirements of Rule 9(b).

The Adams Plaintiffs also have not alleged that they purchased anything from Zillow, which is fatal to this claim.  *See, e.g.*, *Tolu v. Reid*, 639 S.W.3d 504, 539 (Mo. Ct. App. 2021) (affirming dismissal for failure to allege purchase); *Hug v. Am. Traffic Sols., Inc*., 2014 WL 2611832, at *5 (E.D. Mo. June 11, 2014) (dismissing claim because complaint "does not state Plaintiffs purchased any merchandise or services from Defendant").  The Adams Plaintiffs' allegation that they visited Zillow's website to use the Zillow search engine to shop for, purchase, or contract to purchase "merchandise" – real estate – for personal, family, or household use (Am. Compl. at ¶ 248) does not save their deficient claim, because they do not allege that they *purchased* real estate, and the MMPA provides a cause of action for only "one who *purchases,*

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 31
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

*not one who attempts or offers to purchase*." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984) (emphasis added).

Further, the purported "diminished value" of Plaintiffs' allegedly collected data (Am. Compl. at ¶ 260) is the type of "speculative, non-pecuniary harm" that Missouri courts have rejected as insufficient to plead an ascertainable loss. *See Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1049, 1057 (E.D. Mo. 2009) (no ascertainable loss from data breach based on "an increased risk of becoming [a] victim[] of identity theft crimes"); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345446, at *3 (N.D. Cal. Sept. 15, 2011) (applying Missouri law). This claim fails as a matter of law and this Court should dismiss Count IX of the Amended Complaint with prejudice.

## **CONCLUSION**

Factually unsupported speculation and conjecture about what a defendant might have done – no matter how often repeated – does not make it so. Despite spanning 291 paragraphs and sixty-eight pages, Plaintiffs' Amended Complaint fails to set forth sufficient facts to move their claims from possible to plausible. Plaintiffs' wiretapping claims fail because they cannot pound the proverbial square peg through a round hole – the conduct they allege (through legal conclusions) is not barred by the law. Their common law privacy claims fail because they do not, and cannot, allege facts to support the elements of those claims, most particularly that Zillow intentionally intruded on their private affairs or engaged in highly objectionable conduct. And their statutory consumer protection claims fail because they do not allege damages.

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 32
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1    For all of the foregoing reasons, Zillow respectfully requests that this Court dismiss the

2    Amended Complaint in its entirety, with prejudice.

3

4    DATED: June 6, 2023.

5    I certify that this motion contains 11,102 words, in compliance with the Local Civil Rules

6    and this Court's Order of May 31, 2023.

7                                     SAVITT BRUCE & WILLEY LLP

8
                                      By   /s/ James P. Savitt
9                                         James P. Savitt, WSBA # 16847
                                          1425 Fourth Avenue Suite 800
10                                        Seattle, Washington 98101-2272
                                          Telephone: 206.749.0500
11                                        Facsimile:  206.749.0600
                                          Email: jsavitt@sbwllp.com
12

13

14                                    BUCHANAN INGERSOLL & ROONEY PC

15                                        Samantha L. Southall (admitted *pro hac vice*)
                                          50 South 16th Street Suite 3200
16                                        Philadelphia, PA  19102
                                          Telephone: 215-665-8700
17                                        Facsimile:  215-665-8760
                                          Email: samantha.southall@bipc.com
18
                                      *Attorneys for Defendant Zillow Group, Inc.*
19

20

21

22

23

24

25

26

27

ZILLOW'S MOTION TO DISMISS CONSOLIDATED
AMENDED COMPLAINT – PAGE 33
No. 2:22-cv-01282-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Exhibit A

# Terms of Use

Terms of Use

Updated September 23, 2022

Welcome and thank you for your interest in Zillow and the Zillow family of businesses (Zillow, Inc. and its affiliated brands listed in Section 2, collectively, the "Zillow Companies," "us," "our," or "we"). By clicking a registration or new account submission button, or by otherwise using our websites, networks, mobile applications, or other services provided by the Zillow Companies (collectively, the "Services"), or accessing any content provided by us through the Services, you agree to be bound by the following terms of use, as updated from time to time (the "Terms of Use").

1. The Zillow Companies' Role. The Zillow Companies, and the Services, may assist you in performing the various tasks in a real estate transaction. However, unless explicitly specified by the terms of use for a particular Service (each a "Product's Terms"), THE SERVICES ARE NOT INTENDED TO provide you with any financial, real estate, or related advice of any kind. You understand and agree that the Services may include advertisements. To help make the advertisements relevant and useful to you, the Zillow Companies may serve advertisements based on the information we collect through the Services. See our Privacy Policy for more details.

A. Zillow, Inc. Zillow, Inc. has a real estate broker license in certain states (see Section 21). However, unless provided for in your Product's Terms, Zillow, Inc. assumes no responsibility for any result or consequence related directly or indirectly to any action or inaction that you or any consumer takes based on the Services or any other information available through or in connection with the Services.

2. The Zillow Companies' Brands and Businesses. We operate the following affiliated brands, any use of any of the Services provided by the following affiliated brands is subject to these Terms of Use: (a) Zillow; (b) Trulia; (c) Hotpads; (d) StreetEasy; (e) Out East; (f) Bridge Interactive Group; (g) Zillow Group Marketplace; (h) Mortech; (i) dotloop; (j) Signpost Homes; (k) Zillow Homes; (l) Zillow Closing Services; and (m) Zillow Home Loans. Services offered by each of these companies may be subject to additional terms of use as available on their respective websites, networks, mobile applications, or otherwise.

A. Affiliated Business Relationship Notice: This is to give you notice of business relationships among the following providers. Zillow, Inc. ("ZINC," which operates Zillow.com and promotes Zillow Offers, among other programs); Zillow Group Marketplace, Inc.("ZGMI"); Signpost Homes, Inc. ("Signpost"); Zillow Homes, Inc. ("ZHO"), Zillow Home Loans, LLC ("ZHL"); Zillow Closing Services, LLC ("ZCS"), Zillow Closing Services AZNV, LLC ("ZCS-AZNV") Zillow Closing and Escrow Services CA, Inc ("ZCS CA")and Zillow Closing Services TX, LLC ("ZCS-TX") are affiliated companies and each may refer to you the services of another.  ZINC, ZGMI, Signpost, ZHO, ZHL, ZCS, ZCS-AZNV, ZCS-TX are each indirectly wholly owned by Zillow Group, Inc. through one or more subsidiaries. Because of these relationships, any referrals of you by any of the Zillow Companies may provide the referred company, its direct or indirect parent (including Zillow Group), and our respective employees with a financial or other benefit.

B. Zillow Group Marketplace and Zillow Home Loans.  Except for ZHL, the Zillow Companies do not provide or utilize any information for use in loan-related decisions, and you acknowledge and agree not to use any information obtained from ZGMI or any other Zillow Companies' Services for loan related decisions. If you choose to engage with ZHL, you will be subject to ZHL's separate Product's Terms.  You can find more information about ZHL's mortgage lending services at https://www.zillowhomeloans.com.

3. Eligibility; Accounts and Registration. You must be at least 18 years of age to use the Services. By agreeing to these Terms of Use, you represent and warrant that: (a) you are at least 18 years of age; (b) you have not previously been suspended or removed from the Services; and (c) your registration and your use of the Services complies with all applicable laws and regulations. To access some features of the Services, you may be required to register for an account and agree to a Product's Terms, to the extent applicable to that service, which may be incorporated herein or available on a separate Zillow Companies site.  When you register for an account, you will be asked to provide us with some information about yourself, such as email address, phone number, or other contact information. You agree that the information you provide is accurate and that you will keep it accurate and up to date at all times. When you register, you will be asked to provide a password. You are solely responsible for maintaining the confidentiality of your account and password, and you are responsible for all actions taken via your account. You may not share your user account(s) with others. Unless you have entered into a commercial agreement with us permitting you to use the Services for transactions on behalf of another person, you may use the Services only for transactions on your own behalf.

4. Use of the Services; Restrictions.

A. Use of the Services. As long as you comply with these Terms of Use, we grant you a non-exclusive, limited, revocable, personal, non-transferable license to use the Services, and to download and use any App (as defined in Section 4(B) below) on your mobile device in object code form, for your personal use. If you are a real estate or mortgage professional acting in your professional capacity, you may additionally use the Services to provide information, to the extent permitted by applicable law, to your clients and to take actions on behalf of your clients ("Pro Use"). If you use the Services for a Pro Use, you represent and warrant that you have obtained all required authorizations and consents from your client. Except as expressly stated herein, these Terms of Use do not provide you with a license to use, reproduce, distribute, display, or provide access to any portion of the Services on third-party web sites or otherwise. The Services may include software for use in connection with the Services. The Services may not be used for transactions in commercial real estate, which includes, without limitation, commercially zoned properties and vacation rentals.

B. Mobile Applications. To use any mobile application feature of the Services (each, an "App"), you must have a compatible mobile device. We do not warrant that any App will be compatible with your mobile device. You may use mobile data in connection with an App and may incur additional charges from your wireless provider for using an App. You agree that you are solely responsible for any applicable charges. We may update any app and may automatically electronically update the version of any App that you have installed on a mobile device. You consent to all automatic upgrades, and understand that these Terms of Use will apply to all updated versions of an App. Any third-party open-source software included in an App is subject to the applicable open-source license and may be available directly from the creator under an open-source license. These Terms of Use do not apply to your use of software obtained from a third-party source under an open-source license.

C. Use of Content. Subject to the restrictions set forth in these Terms of Use, you may copy information from the Services without the aid of any automated processes and only as necessary for your personal use or Pro Use to view, save, print, fax, and/or e-mail such information. Notwithstanding the foregoing, the aggregate level data provided on the Zillow Local-Info Pages (the "Aggregate Data") may be used for non-personal uses, e.g., real estate market analysis. You may display and distribute derivative works of the Aggregate Data (e.g., within a graph), only so long as the Zillow Companies are cited as a source on every page where the Aggregate Data is displayed, including "Data Provided by Zillow Group." Such citation may not include any of our logos without our prior written approval or imply any relationship between you and the Zillow Companies beyond that the Zillow Companies are the source of the Aggregate Data. You are prohibited from displaying any other Zillow Companies' data without our prior written approval.

5. Prohibited Use. BY USING THE SERVICES, YOU AGREE NOT TO:

- reproduce, modify, distribute, display or otherwise provide access to, create derivative works from, decompile, disassemble, or reverse engineer any portion of the Services, except as explicitly permitted by any Product's Terms to the extent applicable to that product's Services;
- provide/post/authorize a link to any of the Services (including but not limited to an agent profile page) from a third-party website that is not a real estate-related website owned or operated by a real estate or lending professional or institution;
- remove or modify any copyright or other intellectual property notices that appear in the Services;
- use the Services in any way that is unlawful, or harms the Zillow Companies, its service providers, suppliers, affiliates, or any other user;
- use the Services in any way to discriminate against any individual or class of individuals protected under federal, state or local laws, or which may have a discriminatory impact against any individual or class of individuals, or which otherwise promotes illegal, racist or discriminatory activities or outcomes;
- distribute or post spam or other unsolicited messages, chain letters, pyramid schemes, or similar communications through the Services;
- impersonate another person, misrepresent your affiliation with another person or entity, or make any representation to any third party under false pretenses;
- reproduce, publicly display, or otherwise make accessible on or through any other website, application, or service any reviews, ratings, or profile information about real estate, lending, or other professionals, underlying images of or information about real estate listings, or other data or content available through the Services, except as explicitly permitted by us for a particular portion of the Services;
- upload invalid data, viruses, worms, or other software agents to the Services;
- post, reproduce, publicly display, or otherwise make accessible any content, which we, in our sole judgement and discretion, consider illegal, offensive or objectionable including without limitation content that harasses, discriminates, demeans, threatens or disparages any individual or class of individuals;
- interfere with, or compromise the system integrity or security of the Services, or otherwise bypass any measures we may use to prevent or restrict access to the Services;

- conduct automated queries (including screen and database scraping, spiders, robots, crawlers, bypassing "captcha" or similar precautions, or any other automated activity with the purpose of obtaining information from the Services) on the Services;
- use any of the Zillow Companies' trademarks as part of your screen name or email address on the Services;
- access or use any of the Services to develop competitive products or services; or
- attempt to, or permit or encourage any third party to, do any of the above.

6. Fees.

A. Generally. You may be required to pay fees to access certain features of the Services. All fees are in U.S. dollars and are non-refundable. If we change the fees for all or part of any of the Services, including by adding fees or charges, we will provide you advance notice of those changes. If you do not accept the changes, we may discontinue providing the applicable part of the Services to you. Our authorized third-party payment processors will charge the payment method you specified at the time of purchase or as agreed to as part of the selected Service. You authorize us to charge all fees as described in these Terms of Use for the Services you select to that payment method. If you pay any fees with a credit card, we may seek pre-authorization of your credit card account before your purchase to verify that the credit card is valid and has the necessary funds or credit available to cover your purchase.

B. Subscriptions. The Services may include features that allow for automatically recurring payments for periodic charges ("Subscription Service"). If you decide to activate a Subscription Service, you authorize us to periodically charge, on a going-forward basis and until cancellation of either the recurring payments or your account, all accrued sums on or before the payment due date for the accrued sums. The subscription will continue unless and until you cancel your subscription, or we terminate it. You must cancel your Subscription Service before it renews in order to avoid billing of the next periodic subscription fee to your account. We will bill the periodic subscription fee to the payment method you provide to us during registration (or to a different payment method if you change your payment information). We may change the subscription fee for any subsequent subscription period but will provide you advance notice of any increase before it applies. Unless otherwise stated in your Product's Terms, you may cancel a Subscription Service through the settings page in your account, by contacting us at consumercare@zillow.com, or, if applicable by contacting your business consultant.

7. User Materials.

A. UGC Definition; License Grant. Certain portions of the Services may allow users to upload or otherwise provide the Zillow Companies images, photos, video, data, text, listings, and other content ("User Materials"). Absent any additional terms provided in your Product's Terms, by uploading or otherwise providing User Materials to the Services, you grant us an irrevocable, perpetual, royalty-free worldwide license to: (i) use, copy, distribute, transmit, publicly display, publicly perform, reproduce, edit, modify, prepare derivative works of or incorporate into other works, and translate your User Materials, in connection with the Services or in any other media; and (ii) sublicense these rights, to the maximum extent permitted by applicable law. We will not pay you for your User Materials or to exercise any rights related to your User Materials set forth in the preceding sentence. We may remove or modify your User Materials at any time. You are solely responsible for all User Materials made through your user account(s) on the Services or that you otherwise make available through the Services. For all User Materials, you represent and warrant that you are the creator and owner of the User Materials, or have the necessary licenses, rights, consents, and permissions (including all permissions required under applicable privacy and intellectual property law) to authorize the Zillow Companies and other users to access and use your User Materials as necessary to exercise the licenses granted by you under these Terms of Use.  We will not use client contact information that is uploaded by agents into the Zillow Agent Hub portal for any purpose, unless that client contact information is otherwise provided to us directly by the client.

B. UGC Disclaimer. We are under no obligation to edit or control your User Materials or the User Materials of any other User and will not be in any way responsible or liable for any User Materials. We may, however, at any time and without prior notice, screen, remove, edit, or block any User content on the Services, including User Materials, that in our sole judgment violates these Terms of Use or we find otherwise objectionable, including any violation of our Good Neighbor Policy, described in Section 13(B). You understand that when using the Services, you may be exposed to User Materials of other users and acknowledge that User Materials may be inaccurate, offensive, indecent, or objectionable. You agree to waive, and do waive, any legal or equitable right or remedy you may have against us with respect to User Materials. We expressly disclaim any and all liability in connection with User Materials. If notified by a user or content owner that User Materials allegedly do not conform with these Terms of Use, we may investigate the allegation and determine in our sole discretion whether to remove those User Materials, which we reserve the right to do at any time and without notice. For more information on our handling of infringing content, please see Section 11 below.

8. 3rd Party/Linked Services/Sent information.

A. Generally. The Services include links to third-party products, services, and websites, as well as materials provided by third parties, and may include functionality that allows for the distribution of your User Materials or your personal information (collectively, your "User Information") to third parties not under our control (each, a "Third-Party Provider"). Third-Party Providers are solely responsible for their services. You are responsible for your use and submission of User Information to any third party, and your dealings or business conducted with any third party arising in connection with the Services are solely between you and such third party. Your use of third-party sites, services, or products may be subject to associated third-party terms of use and privacy policies or other agreements, which you are solely responsible for complying with. We do not endorse, and take no responsibility for such products, services, Web sites, and materials, or a Third-Party Provider's use of your User Information. If you use a tool that allows for User Information to be transferred, you agree that we may transfer the applicable User Information or other information to the applicable third parties, which are not under our control. If you submit a contact form or otherwise indicate your interest in contacting a Third-Party Provider, you may receive telemarketing calls from the Third-Party Provider using the contact information you provided. Third-Party Providers may keep your contact information and any other information received by the Third-Party Provider in processing a contact or other request form. We are not responsible for any damages or costs of any type arising out of or in any way connected with your dealings with these third parties.

B. Certain Third-Party Services.

(i)Referrals and Lead Sales. As part of the Services, you may be connected with a real estate professional. You authorize us to make such referral or lead sale and acknowledge that we may be paid valuable consideration for facilitating such connection. As part of the Services, you may be connected to a party that provides mortgage loan origination services, title and escrow services, or other settlement services. If any of these parties have an affiliated relationship with any of the Zillow Companies, then one or more of the Zillow Companies may receive a financial or other benefit from the referral between such affiliates.

(ii) Non-Affiliated Financial Products. If you choose to contact a non-affiliated bank, mortgage lender, financial institution, mortgage loan originator, loan broker, or other mortgage professional through the Services by filling out a contact, other request form or otherwise indicating your interest in contacting (or being contacted by) a Third-Party Provider (including requests for mortgage rate quotes) on the Services, you authorize the Zillow Companies, and Zillow Group Marketplace, Inc., in particular to provide the information you submit to the Third-Party Provider. If you include your name, contact information and other information in a request, your identity will no longer be anonymous to the Third-Party Provider. Your submission of information and any request for quotes through the Services is not an application for credit. In the case of non-affiliated financial products, the Zillow Companies are only providing an administrative service to consumers and participating Third-Party Providers. Loan approval standards are established and maintained solely by individual Third-Party Providers. Decisions in any related non-affiliated transactions are made by participating Third-Party Providers and are not made by the Zillow Companies and the Zillow Companies are not responsible for the underwriting activities or credit decisions of any Third-Party Provider. Any non-binding quotes provided by the Zillow Companies for Third-Party Providers' financial products are not intended to be official Loan Estimates as defined in the Real Estate Settlement Procedures Act or the Truth in Lending Act, or to otherwise serve as a disclosure of any specific loan terms or conditions under any state or federal law. Interest rates displayed through the Services are for informational purposes only and reflect non-binding quotes of the terms a Third-Party Provider might offer an applicant fitting a consumer's anonymous profile. Actual interest rates may vary. Consumers should rely on their own judgment in deciding which available loan product, terms, and Third-Party Provider best suit their needs and financial means. Except as set forth in Section 8(b)(i) above or as otherwise disclosed to you or provided in other Product's Terms, the Zillow Companies: (a) are not a Third-Party Provider, loan originator, loan processor or underwriter; (b) do not aid or assist applicants in obtaining loans, soliciting applicants or Third-Party Providers for loans, or offer or negotiate terms of applications or loans; (c) do not take mortgage applications, make loans or credit decisions, or prequalify or preapprove applicants for loans; (d) are not an agent of either any consumer or any Third-Party Provider; (e) do not endorse, refer, or recommend any Third-Party Provider that pays the Zillow Companies, or the products of any Third-Party Provider that pays the Zillow Companies; (f) are not responsible for any errors or delays caused by consumers or any Third-Party Provider in the loan process; and (g) do not guarantee offer of, or acceptance into, any particular loan program or specific loan terms, conditions, or rates with any Third-Party Provider, or that any rates or terms will be the best available.

(iii) Rental Products. If you choose to submit your information in order to submit a background or credit check, you are subject to the CIC and Experian terms as described in Section 8(C) below. We do not process or store background or credit check information related to our rental products and do not control how a landlord uses background or credit check information in evaluating applications submitted to them. We do not guarantee any acceptance by a landlord of an application but do require all landlords using the Services to comply with the Fair Housing Act and other applicable laws.

C. Additional Terms for Third Party Services. Certain aspects of the Services include Third-Party tools that are subject to additional Third-Party terms, including, but not limited to, the following:

(i) Windows Live Virtual Earth. Windows Live Virtual Earth imagery is supplied by Microsoft Corporation, and use is subject to the Microsoft MapPoint Terms of Use available at http://www.microsoft.com/maps/assets/docs/terms.aspx.

(ii) Google Maps. Some of the Services implement the Google Maps web mapping service. Your use of Google Maps is subject to Google's terms of use, available at http://www.google.com/intl/en_us/help/terms_maps.html, and Google's Privacy Policy, available at https://www.google.com/intl/ALL/policies/privacy/index.html.

(iii) Stripe. Some of the Services allow you to use Stripe Connect to make payments to other users and may include additional processing or application fees detailed when you choose to connect to Stripe. Your use of Stripe is subject to the Stripe Connected Account Agreement, available at https://stripe.com/us/connect-account/legal. Additionally, by using Stripe, you agree not to use Stripe (and the Services generally) for any Prohibited Business purposes, as listed at https://stripe.com/us/prohibited-businesses.

(iv) CIC. Some of the Services allow users to use our Third-Party background check partner CIC's services to submit an application and background check to a landlord. If you are a Renter using the CIC services, you authorize Zillow to obtain your background check report, including criminal and eviction history, and to share that information with Landlords to whom you submit an application, and agree to the CIC Legal and Privacy Policy available at https://www.cicreports.com/legal-and-privacy-policy. If you are a Landlord using the CIC services, you agree to use the background check reports in compliance with the law, and agree to the CIC Legal and Privacy Policy linked above.

(v) Chase. Some of the Services allow you to use Chase to make payments to the Zillow Companies. Your use of the Chase payments feature is subject to the Chase Paymentech Privacy Policy, available at https://www.chasepaymentech.com/.

(vi) Plaid. The rental payments feature allows you to link your bank account through Plaid for the purposes of making or receiving rental payments. By using Plaid, you agree to your personal and financial information being transferred, stored, and processed by Plaid in accordance with the Plaid Privacy Policy, available at https://plaid.com/legal.

(vii) Experian. Some of the Services allow you to use the Experian Connect service to submit a request for a credit check be sent to a landlord. If you use the Experian services, you agree to the Experian Connect Terms and Conditions, available at https://connect.experian.com/legal/terms.html.

9. Intellectual Property. The Services are owned and operated by the Zillow Companies. The user interfaces, design, information, data, code, products, software, graphics, and all other elements of the Services (the "Zillow Companies' Materials") that we provide are protected by intellectual property and other laws and are the property of the Zillow Companies or the Zillow Companies' Third-Party licensors. Except as expressly allowed by these Terms of Use, you may not make use of the Zillow Companies' Materials, and the Zillow Companies reserve all rights to the Zillow Companies' Materials and Services not granted expressly in these Terms of Use.

Intellectual Property Notices:

Certain content on the Services is owned by ZIP+4 data and the United States Postal Service. To view a complete list of our issued patents and active trademarks, click here. The names of actual companies, products, and services mentioned herein may be the trademarks of their respective owners. Any rights not expressly granted herein are reserved. We do not assert copyright or grant any rights to the underlying images or descriptions of real estate listings provided through the Services. Any use of these images and descriptions is subject to the copyright owner's permission and the requirements of applicable law.

10. Feedback. If you choose to provide input and suggestions regarding the Services, including related to any of the Zillow Companies' Materials ("Feedback"), then you hereby grant us an unrestricted, perpetual, irrevocable, non-exclusive, fully paid, royalty-free right to use the Feedback in any manner and for any purpose, including to improve the Services or create other products and services.

11. DMCA; Claims of Copyright Infringement. We respect the intellectual property rights of others and ask that everyone using the Services do the same. Anyone who believes that their work has been reproduced on the Services in a way that constitutes copyright infringement may notify our copyright agent in accordance with Title 17, United States Code, Section 512(c)(2), by providing the following information:

(i) Identification of the copyrighted work that you claim has been infringed;

(ii) Identification of the material that you claim is infringing and needs to be removed, including a description of where it is located on the Services so that the copyright agent can locate it;

(iii) Your address, telephone number, and if available, e-mail address, so that the copyright agent may contact you about your complaint; and

(iv) A signed statement that the above information is accurate, that you have a good faith belief that the identified use of the material is not authorized by the copyright owner, its agent, or the law and, under penalty of perjury, that you are the copyright owner or are authorized to act on the copyright owner's behalf in this situation.

Notices of copyright infringement claims should be sent as follows:

By mail:

Zillow, Inc.

1301 Second Avenue, Floor 31

Seattle, WA 98101

Attention: Copyright Agent

By e-mail:

If relating to content on Trulia.com and related websites: DMCA_notice_email@trulia.com

Otherwise: DMCA_notice_email@zillow.com

If you give notice of copyright infringement by e-mail, we may begin investigating the alleged copyright infringement; however, we must receive your signed statement by mail or as an attachment to your e-mail before we are required to take any action.

12. Deactivation/Deletion /Changes to Agreement. Except as stated in any Product's Terms, you may deactivate your account at any time by selecting "deactivate account" in your account settings. You can delete your account and all your account data by submitting a request to "delete your data" at https://privacy.zillowgroup.com/. If you deactivate or delete your account, you remain obligated to pay all outstanding fees, if any, incurred prior to termination relating to your use of the Services. If you violate any provision of these Terms of Use, your permission from the Zillow Companies to use the Services will terminate automatically. In addition, we may, in our sole discretion, deactivate, suspend, or terminate your access to your account and the Services at any time for any reason, with or without notice. We may alter, suspend, or discontinue the Services or any portion of the Services without notice. We will not be liable whatsoever for any change to the Services or any suspension or termination of your access to, or use of the Services. We reserve the right to change these Terms of Use at any time in our sole discretion on a going-forward basis, and we will make commercially reasonable efforts to notify you of any material changes to these Terms of Use. Your continued use of the Services after any updates are effective will represent your agreement to the revised version of the Terms of Use and will constitute acceptance of, and agreement to, any such changes. You further waive any right you may have to receive specific notice of such changes to these Terms of Use. You are responsible for regularly reviewing these Terms of Use.

13. Privacy Policy/Other Terms.

A. Privacy Policy. The Zillow Companies will collect, use, store, and disclose personal information in accordance with our Privacy Policy. Please consult our Privacy Policy for more information, which is incorporated into, and made a part of, these Terms of Use.

B. Other Terms. Your use of the Services is subject to all additional guidelines, rules, Product Terms, and agreements applicable to the Services or certain features of the Services that we may post on, or link to, from the Services, such as rules applicable to a particular product or content available through the Services, including, without limitation, the Good Neighbor Policy, the Listing Quality Policy, the Self-Tour Terms and Conditions , the Rentals User Terms, the Respectful Renting Pledge, the 3D Home Terms and Guidelines, and the Video Walkthrough Guidelines. If you are a non-affiliated Third-Party Provider who has created an industry professional account with Zillow Group, you are subject to the NMLS Data Terms. Additionally, if you are a non-affiliated Third-Party Provider who participates in any Services offered by Zillow Group Marketplace, Inc. you are also subject to the Zillow Group Market Place, Inc.'s Lender Terms of Use. All such terms are incorporated into, and made a part of, these Terms of Use.

14. Indemnification. You agree to indemnify, defend, and hold harmless the Zillow Companies, our affiliates, and our respective directors, officers, employees, and agents from any and all claims and demands made by any third party due to or arising out of: (a) your access to or use of the Services; (b) your breach of these Terms of Use; (c) your violation of any law or the rights of a third party; (d) any dispute or issue between you and any third party; (e) any User Materials you upload to, or otherwise make available through, the Services; (f) your willful misconduct; and (g) any other party's access to or use of the Services using your account and password. The Zillow Companies reserve the right, at our own expense, to assume the exclusive defense and control of any matter otherwise subject to indemnification by you, and in that case, you agree to cooperate with the Zillow Companies' defense of that claim.

15. No Warranties. THE ZILLOW COMPANIES PROVIDE THE SERVICES "AS IS," "WITH ALL FAULTS" AND "AS AVAILABLE," AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT IS WITH YOU. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE ZILLOW COMPANIES AND OUR SUPPLIERS MAKE NO REPRESENTATIONS, WARRANTIES, OR CONDITIONS, EXPRESS OR IMPLIED. THE ZILLOW COMPANIES AND OUR SUPPLIERS EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES OR CONDITIONS, EXPRESS, STATUTORY, AND IMPLIED, INCLUDING WITHOUT LIMITATION: (A) WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANLIKE EFFORT, ACCURACY, TITLE, QUIET ENJOYMENT, NO ENCUMBRANCES, NO LIENS, AND NON-INFRINGEMENT; (B) WARRANTIES OR CONDITIONS ARISING THROUGH COURSE OF DEALING OR USAGE OF TRADE; AND (C) WARRANTIES OR CONDITIONS OF UNINTERRUPTED OR ERROR-FREE ACCESS OR USE. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU THROUGH THE SERVICES OR ANY MATERIALS AVAILABLE THROUGH THE SERVICES WILL CREATE ANY WARRANTY REGARDING ANY ZILLOW COMPANIES' ENTITY OR THE SERVICES THAT IS NOT EXPRESSLY STATED IN THESE TERMS OF USE. YOU ASSUME ALL RISK FOR ANY DAMAGE THAT MAY RESULT FROM YOUR USE OF OR ACCESS TO THE SERVICES, YOUR DEALING WITH ANY OTHER USER, AND ANY MATERIALS, INCLUDING ALL USER AND ZILLOW COMPANIES' MATERIALS, AVAILABLE THROUGH THE SERVICES. YOU UNDERSTAND AND AGREE THAT YOUR USE OF THE SERVICES, AND USE, ACCESS, DOWNLOAD, OR OTHER OBTAINMENT OF MATERIALS THROUGH THE SERVICES AND ANY ASSOCIATED SITES OR SERVICES, ARE AT YOUR OWN DISCRETION AND RISK, AND THAT YOU ARE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR PROPERTY (INCLUDING YOUR COMPUTER SYSTEM OR MOBILE DEVICE USED IN CONNECTION WITH THE SERVICES), OR THE LOSS OF DATA THAT RESULTS FROM THE USE OF THE SERVICES OR THE DOWNLOAD OR USE OF THOSE MATERIALS. SOME JURISDICTIONS MAY PROHIBIT A DISCLAIMER OF WARRANTIES AND YOU MAY HAVE OTHER RIGHTS THAT VARY FROM JURISDICTION TO JURISDICTION.

16. Limitation of Liability/Exclusive Remedy. IN NO EVENT WILL THE ZILLOW COMPANIES OR ANY OF OUR AFFILIATES BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES (INCLUDING DAMAGES FOR LOSS OF PROFITS, GOODWILL, OR ANY OTHER INTANGIBLE LOSS) ARISING OUT OF, BASED ON, OR RESULTING FROM THESE TERMS OF USE OR YOUR USE OR ACCESS, OR INABILITY TO USE OR ACCESS, THE SERVICES OR ANY MATERIALS ON THE SERVICES, WHETHER BASED ON: (A) BREACH OF CONTRACT; (B) BREACH OF WARRANTY; (C) NEGLIGENCE; OR (D) ANY OTHER CAUSE OF ACTION, EVEN IF THE ZILLOW COMPANIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE ZILLOW COMPANIES ASSUME NO LIABILITY OR RESPONSIBILITY FOR ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF MATERIALS; (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO OR USE OF THE SERVICES; (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION STORED THEREIN; (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM THE SERVICES; (V) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE THAT MAY BE TRANSMITTED TO OR THROUGH OUR SERVICES BY ANY THIRD PARTY; (VI) ANY ERRORS OR OMISSIONS IN ANY MATERIALS OR FOR ANY LOSS OR DAMAGE INCURRED AS A RESULT OF THE USE OF ANY MATERIALS POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE THROUGH THE SERVICES; OR (VII) USER MATERIALS OR THE DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT OF ANY THIRD PARTY. THE AGGREGATE LIABILITY OF THE ZILLOW COMPANIES AND ANY OF OUR AFFILIATES TO YOU FOR ALL CLAIMS ARISING OUT OF OR RELATING TO THE USE OF, OR INABILITY TO USE, ANY PORTION OF THE SERVICES OR OTHERWISE UNDER THESE TERMS OF USE, WHETHER UNDER CONTRACT, TORT, OR OTHERWISE, IS LIMITED TO THE GREATER OF: (1) THE AMOUNT YOU HAVE PAID TO THE ZILLOW COMPANIES FOR THE SERVICES IN THE 12 MONTHS PRIOR TO THE EVENTS OR CIRCUMSTANCES GIVING RISE TO THE CLAIMS; OR (2) $100. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL DAMAGES. ACCORDINGLY, THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. EACH PROVISION OF THESE TERMS OF USE THAT PROVIDES FOR A LIMITATION OF LIABILITY, DISCLAIMER OF WARRANTIES, OR EXCLUSION OF DAMAGES IS INTENDED TO AND DOES ALLOCATE THE RISKS BETWEEN THE PARTIES UNDER THESE TERMS. THIS ALLOCATION IS AN ESSENTIAL ELEMENT OF THE AGREEMENT OF THE PARTIES. THE LIMITATIONS IN THIS SECTION WILL APPLY EVEN IF ANY LIMITED REMEDY FAILS ITS ESSENTIAL PURPOSE.

17. Choice of Law; Disputes. These Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict of laws provisions. You agree to submit to the personal and exclusive jurisdiction and venue in the state and federal courts sitting in King County, Washington for all disputes, claims, and actions arising from or in connection with the Services or otherwise under these Terms of Use. The Zillow Companies operate the Services from our offices in Washington, and we make no representation that the Services are appropriate or available for use in other locations.

18. General. You agree not to export from anywhere any part of the Services provided to you, or any direct product thereof, except in compliance with, and with all licenses and approvals required under, applicable export laws, rules and regulations. All Services used by the U.S. Government are provided with the commercial license rights described herein. These Terms of Use may be amended only by a written agreement signed by authorized representatives of the parties to these Terms of Use. If any part of these Terms of Use is determined to be invalid or unenforceable, then the invalid or unenforceable provision will be replaced with a valid, enforceable provision that most closely matches the intent of the original provision and the remainder of these Terms of Use will continue in effect. The section titles in these Terms of Use are used solely for the convenience of the parties and have no legal or contractual significance. We may assign this Agreement, in whole or in part, at any time with or without notice to you. You may not assign these Terms of Use, or assign, transfer or sublicense your rights, if any, in the Services. Our failure to act with respect to a breach, or our choice to otherwise waive breach by you or others, does not waive our right to act with respect to subsequent or similar breaches. Except as expressly stated herein, these Terms of Use, and all expressly incorporated terms and agreements, constitute the entire agreement between you and the Zillow Companies with respect to the Services and supersede all prior or contemporaneous communications of any kind between you and the Zillow Companies with respect to the Services. The following sections of these Terms of Use shall survive any termination of these Terms of Use: 3, 5-8, 10-12, and 14-22.

19. Consent to Communications. By using the Services, you consent to receiving certain electronic communications from us as further described in the Privacy Policy. Please read our Privacy Policy to learn more. You agree that any notices, agreements, disclosures, surveys, or other communications that we send to you electronically will satisfy any legal communication requirements, including that those communications be in writing.

The Services may provide web forms, links, or contact information, including phone numbers, that can connect you with the Zillow Companies or third parties, such as real estate agents and Third-Party Providers. Communications through these methods may be routed through a third-party service ("Communications Service"). Calls may be recorded or monitored for quality assurance, training, or customer service purposes. You will be notified at the beginning of a call if it may be recorded or monitored. You consent to such recording and monitoring by the Zillow Companies or the Communications Service. We also use the Communications Service to track phone calls and text messages between you and real estate professionals so that we and the real estate professional can access certain details about the contact. As part of this process, we and the Communications Service will receive in real time, and store, data about your call or text message, including the date and time of the call or text message, your phone number, and the content of the text message. You consent to these practices by us and the Communications Service. The information is subject to the Privacy Policy.

20. Notice to California Residents. If you are a California resident, under California Civil Code Section 1789.3, you may contact the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs in writing at 1625 N. Market Blvd., Suite S-202, Sacramento, California 95834, or by telephone at (800) 952-5210 in order to resolve a complaint regarding the Service or to receive further information regarding use of the Service.

21. Contact Information and License Disclosures. The Services are offered by Zillow, Inc. and its affiliates, located at 1301 Second Avenue, Floor 31, Seattle, WA 98101. You may contact the Zillow Companies by sending correspondence to that address or emailing consumercare@zillow.com. See a complete list of Zillow, Inc.'s real estate brokerage licenses, here.

Zillow Group Marketplace, Inc. is a wholly-owned subsidiary of Zillow, Inc. and has its headquarters at 1301 Second Ave., 30th floor, Suite 3000-A, Seattle, Washington 98101. The Nationwide Mortgage Licensing System (NMLS) Identification Number for Zillow Group Marketplace, Inc. is 1303160. To see a complete list of Zillow Group Marketplace, Inc.'s licenses, see Licensing and Disclosures, EQUAL HOUSING OPPORTUNITY.

Zillow Home Loans, LLC is a wholly-owned subsidiary of Zillow, Inc., and has its headquarters at 10975 El Monte, Overland Park, KS 66211. The NMLS Identification Number for Zillow Home Loans, LLC is 10287. To see a complete list of Zillow Home Loans, LLC's licenses, see this Licensing page. ZILLOW HOME LOANS, LLC IS AN EQUAL HOUSING LENDER.

Zillow Closing Services, LLC, Zillow Closing Services AZNV, LLC and Zillow Closing Services TX, LLC are wholly-owned subsidiaries of Zillow Group, Inc. Licensing information for the Zillow Closing Services entities can be found here.

22. Notice to Apple Users. If you are using our mobile applications on an iOS device, the terms of this Section 22 apply. You acknowledge that these Terms of Use are between you and the Zillow Companies only, not with Apple, and Apple is not responsible for the Services or related Materials. Apple has no obligation to furnish any maintenance or support services with respect to the Services. If the Services fail to conform to any applicable warranty, you may notify Apple and Apple will refund any applicable purchase price for the mobile application to you; to the maximum extent permitted by applicable law, Apple has no other warranty obligation with respect to the Services. Apple is not responsible for addressing any claim by you or any third party relating to the Services or your possession or use of the Services, including: (a) product liability claims; (b) any claim that the Services fail to conform to any applicable legal or regulatory requirement; and (c) claims arising under consumer protection or similar legislation. Apple is not responsible for the investigation, defense, settlement, or discharge of any third-party claim that the Services or your possession and use of the mobile application infringe that third party's intellectual property rights. You agree to comply with any applicable third-party terms when using the Services. Apple and Apple's subsidiaries are third party beneficiaries of Section 22 of these Terms of Use, and upon your acceptance of these Terms or Use, Apple will have the right (and will be deemed to have accepted the right) to enforce this Section 22 of these Terms of Use against you. You hereby represent and warrant that: (i) you are not located in a country that is subject to a U.S. Government embargo, or that is on Title 15, Part 740 Supplement 1, Country Group E of the U.S. Code of Federal Regu

Terms of Use

Updated September 23, 2022

Welcome and thank you for your interest in Zillow and the Zillow family of businesses (Zillow, Inc. and its affiliated brands listed in Section 2, collectively, the "Zillow Companies," "us," "our," or "we"). By clicking a registration or new account submission button, or by otherwise using our websites, networks, mobile applications, or other services provided by the Zillow Companies (collectively, the "Services"), or accessing any content provided by us through the Services, you agree to be bound by the following terms of use, as updated from time to time (the "Terms of Use").

1. The Zillow Companies' Role. The Zillow Companies, and the Services, may assist you in performing the various tasks in a real estate transaction. However, unless explicitly specified by the terms of use for a particular Service (each a "Product's Terms"), THE SERVICES ARE NOT INTENDED TO provide you with any financial, real estate, or related advice of any kind. You understand and agree that the Services may include advertisements. To help make the advertisements relevant and useful to you, the Zillow Companies may serve advertisements based on the information we collect through the Services. See our Privacy Policy for more details.

A. Zillow, Inc. Zillow, Inc. has a real estate broker license in certain states (see Section 21). However, unless provided for in your Product's Terms, Zillow, Inc. assumes no responsibility for any result or consequence related directly or indirectly to any action or inaction that you or any consumer takes based on the Services or any other information available through or in connection with the Services.

2. The Zillow Companies' Brands and Businesses. We operate the following affiliated brands, any use of any of the Services provided by the following affiliated brands is subject to these Terms of Use: (a) Zillow; (b) Trulia; (c) Hotpads; (d) StreetEasy; (e) Out East; (f) Bridge Interactive Group; (g) Zillow Group Marketplace; (h) Mortech; (i) dotloop; (j) Signpost Homes; (k) Zillow Homes; (l) Zillow Closing Services; and (m) Zillow Home Loans. Services offered by each of these companies may be subject to additional terms of use as available on their respective websites, networks, mobile applications, or otherwise.

A. Affiliated Business Relationship Notice: This is to give you notice of business relationships among the following providers. Zillow, Inc. ("ZINC," which operates Zillow.com and promotes Zillow Offers, among other programs); Zillow Group Marketplace, Inc.("ZGMI"); Signpost Homes, Inc. ("Signpost"); Zillow Homes, Inc. ("ZHO"), Zillow Home Loans, LLC ("ZHL"); Zillow Closing Services, LLC ("ZCS"), Zillow Closing Services AZNV, LLC ("ZCS-AZNV") Zillow Closing and Escrow Services CA, Inc ("ZCS CA")and Zillow Closing Services TX, LLC ("ZCS-TX") are affiliated companies and each may refer to you the services of another.  ZINC, ZGMI, Signpost, ZHO, ZHL, ZCS, ZCS-AZNV, ZCS-TX are each indirectly wholly owned by Zillow Group, Inc. through one or more subsidiaries. Because of these relationships, any referrals of you by any of the Zillow Companies may provide the referred company, its direct or indirect parent (including Zillow Group), and our respective employees with a financial or other benefit.

B. Zillow Group Marketplace and Zillow Home Loans.  Except for ZHL, the Zillow Companies do not provide or utilize any information for use in loan-related decisions, and you acknowledge and agree not to use any information obtained from ZGMI or any other Zillow Companies' Services for loan related decisions. If you

choose to engage with ZHL, you will be subject to ZHL's separate Product's Terms.  You can find more information about ZHL's mortgage lending services at https://www.zillowhomeloans.com.

3. Eligibility; Accounts and Registration. You must be at least 18 years of age to use the Services. By agreeing to these Terms of Use, you represent and warrant that: (a) you are at least 18 years of age; (b) you have not previously been suspended or removed from the Services; and (c) your registration and your use of the Services complies with all applicable laws and regulations. To access some features of the Services, you may be required to register for an account and agree to a Product's Terms, to the extent applicable to that service, which may be incorporated herein or available on a separate Zillow Companies site.  When you register for an account, you will be asked to provide us with some information about yourself, such as email address, phone number, or other contact information. You agree that the information you provide is accurate and that you will keep it accurate and up to date at all times. When you register, you will be asked to provide a password. You are solely responsible for maintaining the confidentiality of your account and password, and you are responsible for all actions taken via your account. You may not share your user account(s) with others. Unless you have entered into a commercial agreement with us permitting you to use the Services for transactions on behalf of another person, you may use the Services only for transactions on your own behalf.

4. Use of the Services; Restrictions.

A. Use of the Services. As long as you comply with these Terms of Use, we grant you a non-exclusive, limited, revocable, personal, non-transferable license to use the Services, and to download and use any App (as defined in Section 4(B) below) on your mobile device in object code form, for your personal use. If you are a real estate or mortgage professional acting in your professional capacity, you may additionally use the Services to provide information, to the extent permitted by applicable law, to your clients and to take actions on behalf of your clients ("Pro Use"). If you use the Services for a Pro Use, you represent and warrant that you have obtained all required authorizations and consents from your client. Except as expressly stated herein, these Terms of Use do not provide you with a license to use, reproduce, distribute, display, or provide access to any portion of the Services on third-party web sites or otherwise. The Services may include software for use in connection with the Services. The Services may not be used for transactions in commercial real estate, which includes, without limitation, commercially zoned properties and vacation rentals.

B. Mobile Applications. To use any mobile application feature of the Services (each, an "App"), you must have a compatible mobile device. We do not warrant that any App will be compatible with your mobile device. You may use mobile data in connection with an App and may incur additional charges from your wireless provider for using an App. You agree that you are solely responsible for any applicable charges. We may update any app and may automatically electronically update the version of any App that you have installed on a mobile device. You consent to all automatic upgrades, and understand that these Terms of Use will apply to all updated versions of an App. Any third-party open-source software included in an App is subject to the applicable open-source license and may be available directly from the creator under an open-source license. These Terms of Use do not apply to your use of software obtained from a third-party source under an open-source license.

C. Use of Content. Subject to the restrictions set forth in these Terms of Use, you may copy information from the Services without the aid of any automated processes and only as necessary for your personal use or Pro Use to view, save, print, fax, and/or e-mail such information. Notwithstanding the foregoing, the aggregate level data provided on the Zillow Local-Info Pages (the "Aggregate Data") may be used for non-personal uses, e.g., real estate market analysis. You may display and distribute derivative works of the Aggregate Data (e.g., within a graph), only so long as the Zillow Companies are cited as a source on every page where the Aggregate Data are displayed, including "Data Provided by Zillow Group." Such citation may not include any of our logos without our prior written approval or imply any relationship between you and the Zillow Companies beyond that the Zillow Companies are the source of the Aggregate Data. You are prohibited from displaying any other Zillow Companies' data without our prior written approval.

5. Prohibited Use. BY USING THE SERVICES, YOU AGREE NOT TO:

- reproduce, modify, distribute, display or otherwise provide access to, create derivative works from, decompile, disassemble, or reverse engineer any portion of the Services, except as explicitly permitted by any Product's Terms to the extent applicable to that product's Services;
- provide/post/authorize a link to any of the Services (including but not limited to an agent profile page) from a third-party website that is not a real estate-related website owned or operated by a real estate or lending professional or institution;
- remove or modify any copyright or other intellectual property notices that appear in the Services;
- use the Services in any way that is unlawful, or harms the Zillow Companies, its service providers, suppliers, affiliates, or any other user;
- use the Services in any way to discriminate against any individual or class of individuals protected under federal, state or local laws, or which may have a discriminatory impact against any individual or class of

individuals, or which otherwise promotes illegal, racist or discriminatory activities or outcomes;

- distribute or post spam or other unsolicited messages, chain letters, pyramid schemes, or similar communications through the Services;
- impersonate another person, misrepresent your affiliation with another person or entity, or make any representation to any third party under false pretenses;
- reproduce, publicly display, or otherwise make accessible on or through any other website, application, or service any reviews, ratings, or profile information about real estate, lending, or other professionals, underlying images of or information about real estate listings, or other data or content available through the Services, except as explicitly permitted by us for a particular portion of the Services;
- upload invalid data, viruses, worms, or other software agents to the Services;
- post, reproduce, publicly display, or otherwise make accessible any content, which we, in our sole judgement and discretion, consider illegal, offensive or objectionable including without limitation content that harasses, discriminates, demeans, threatens or disparages any individual or class of individuals;
- interfere with, or compromise the system integrity or security of the Services, or otherwise bypass any measures we may use to prevent or restrict access to the Services;
- conduct automated queries (including screen and database scraping, spiders, robots, crawlers, bypassing "captcha" or similar precautions, or any other automated activity with the purpose of obtaining information from the Services) on the Services;
- use any of the Zillow Companies' trademarks as part of your screen name or email address on the Services;
- access or use any of the Services to develop competitive products or services; or
- attempt to, or permit or encourage any third party to, do any of the above.

6. Fees.

A. Generally. You may be required to pay fees to access certain features of the Services. All fees are in U.S. dollars and are non-refundable. If we change the fees for all or part of any of the Services, including by adding fees or charges, we will provide you advance notice of those changes. If you do not accept the changes, we may discontinue providing the applicable part of the Services to you. Our authorized third-party payment processors will charge the payment method you specified at the time of purchase or as agreed to as part of the selected Service. You authorize us to charge all fees as described in these Terms of Use for the Services you select to that payment method. If you pay any fees with a credit card, we may seek pre-authorization of your credit card account before your purchase to verify that the credit card is valid and has the necessary funds or credit available to cover your purchase.

B. Subscriptions. The Services may include features that allow for automatically recurring payments for periodic charges ("Subscription Service"). If you decide to activate a Subscription Service, you authorize us to periodically charge, on a going-forward basis and until cancellation of either the recurring payments or your account, all accrued sums on or before the payment due date for the accrued sums. The subscription will continue unless and until you cancel your subscription, or we terminate it. You must cancel your Subscription Service before it renews in order to avoid billing of the next periodic subscription fee to your account. We will bill the periodic subscription fee to the payment method you provide to us during registration (or to a different payment method if you change your payment information). We may change the subscription fee for any subsequent subscription period but will provide you advance notice of any increase before it applies. Unless otherwise stated in your Product's Terms, you may cancel a Subscription Service through the settings page in your account, by contacting us at consumercare@zillow.com, or, if applicable by contacting your business consultant.

7. User Materials.

A. UGC Definition; License Grant. Certain portions of the Services may allow users to upload or otherwise provide the Zillow Companies images, photos, video, data, text, listings, and other content ("User Materials"). Absent any additional terms provided in your Product's Terms, by uploading or otherwise providing User Materials to the Services, you grant us an irrevocable, perpetual, royalty-free worldwide license to: (i) use, copy, distribute, transmit, publicly display, publicly perform, reproduce, edit, modify, prepare derivative works of or incorporate into other works, and translate your User Materials, in connection with the Services or in any other media; and (ii) sublicense these rights, to the maximum extent permitted by applicable law. We will not pay you for your User Materials or to exercise any rights related to your User Materials set forth in the preceding sentence. We may remove or modify your User Materials at any time. You are solely responsible for all User Materials made through your user account(s) on the Services or that you otherwise make available through the Services. For all User Materials, you represent and warrant that you are the creator and owner of the User Materials, or have the necessary licenses, rights, consents, and permissions (including all permissions required under applicable privacy and intellectual property law) to authorize the Zillow Companies and other users to access and use your User Materials as necessary to exercise the licenses granted by you under these Terms of Use.  We will not use client contact information that is uploaded by agents into the Zillow Agent Hub portal for any purpose, unless that client contact information is otherwise provided to us directly by the client.

B. UGC Disclaimer. We are under no obligation to edit or control your User Materials or the User Materials of any other User and will not be in any way responsible or liable for any User Materials. We may, however, at any time and without prior notice, screen, remove, edit, or block any User content on the Services, including User Materials, that in our sole judgment violates these Terms of Use or we find otherwise objectionable, including any violation of our Good Neighbor Policy, described in Section 13(B). You understand that when using the Services, you may be exposed to User Materials of other users and acknowledge that User Materials may be inaccurate, offensive, indecent, or objectionable. You agree to waive, and do waive, any legal or equitable right or remedy you may have against us with respect to User Materials. We expressly disclaim any and all liability in connection with User Materials. If notified by a user or content owner that User Materials allegedly do not conform with these Terms of Use, we may investigate the allegation and determine in our sole discretion whether to remove those User Materials, which we reserve the right to do at any time and without notice. For more information on our handling of infringing content, please see Section 11 below.

8. 3rd Party/Linked Services/Sent information.

A. Generally. The Services include links to third-party products, services, and websites, as well as materials provided by third parties, and may include functionality that allows for the distribution of your User Materials or your personal information (collectively, your "User Information") to third parties not under our control (each, a "Third-Party Provider"). Third-Party Providers are solely responsible for their services. You are responsible for your use and submission of User Information to any third party, and your dealings or business conducted with any third party arising in connection with the Services are solely between you and such third party. Your use of third-party sites, services, or products may be subject to associated third-party terms of use and privacy policies or other agreements, which you are solely responsible for complying with. We do not endorse, and take no responsibility for such products, services, Web sites, and materials, or a Third-Party Provider's use of your User Information. By using a tool that allows for User Information to be transferred, you agree that we may transfer the applicable User Information or other information to the applicable third parties, which are not under our control. If you submit a contact form or otherwise indicate your interest in contacting a Third-Party Provider, you may receive telemarketing calls from the Third-Party Provider using the contact information you provided. Third-Party Providers may keep your contact information and any other information received by the Third-Party Provider in processing a contact or other request form. We are not responsible for any damages or costs of any type arising out of or in any way connected with your dealings with these third parties.

B. Certain Third-Party Services.

(i)Referrals and Lead Sales. As part of the Services, you may be connected with a real estate professional. You authorize us to make such referral or lead sale and acknowledge that we may be paid valuable consideration for facilitating such connection. As part of the Services, you may be connected to a party that provides mortgage loan origination services, title and escrow services, or other settlement services. If any of these parties have an affiliated relationship with any of the Zillow Companies, then one or more of the Zillow Companies may receive a financial or other benefit from the referral between such affiliates.

(ii) Non-Affiliated Financial Products. If you choose to contact a non-affiliated bank, mortgage lender, financial institution, mortgage loan originator, loan broker, or other mortgage professional through the Services by filling out a contact, other request form or otherwise indicating your interest in contacting (or being contacted by) a Third-Party Provider (including requests for mortgage rate quotes) on the Services, you authorize the Zillow Companies, and Zillow Group Marketplace, Inc., in particular to provide the information you submit to the Third-Party Provider. If you include your name, contact information and other information in a request, your identity will no longer be anonymous to the Third-Party Provider. Your submission of information and any request for quotes through the Services is not an application for credit. In the case of non-affiliated financial products, the Zillow Companies are only providing an administrative service to consumers and participating Third-Party Providers. Loan approval standards are established and maintained solely by individual Third-Party Providers. Decisions in any related non-affiliated transactions are made by participating Third-Party Providers and are not made by the Zillow Companies and the Zillow Companies are not responsible for the underwriting activities or credit decisions of any Third-Party Provider. Any non-binding quotes provided by the Zillow Companies for Third-Party Providers' financial products are not intended to be official Loan Estimates as defined in the Real Estate Settlement Procedures Act or the Truth in Lending Act, or to otherwise serve as a disclosure of any specific loan terms or conditions under any state or federal law. Interest rates displayed through the Services are for informational purposes only and reflect non-binding quotes of the terms a Third-Party Provider might offer an applicant fitting a consumer's anonymous profile. Actual interest rates may vary. Consumers should rely on their own judgment in deciding which available loan product, terms, and Third-Party Provider best suit their needs and financial means. Except as set forth in Section 8(b)(i) above or as otherwise disclosed to you or provided in other Product's Terms, the Zillow Companies: (a) are not a Third-Party Provider, loan originator, loan processor or underwriter; (b) do not aid or assist applicants in obtaining loans, soliciting applicants or Third-Party Providers for loans, or offer or negotiate terms of applications or loans; (c) do not take mortgage applications, make loans

or credit decisions, or prequalify or preapprove applicants for loans; (d) are not an agent of either any consumer or any Third-Party Provider; (e) do not endorse, refer, or recommend any Third-Party Provider that pays the Zillow Companies, or the products of any Third-Party Provider that pays the Zillow Companies; (f) are not responsible for any errors or delays caused by consumers or any Third-Party Provider in the loan process; and (g) do not guarantee offer of, or acceptance into, any particular loan program or specific loan terms, conditions, or rates with any Third-Party Provider, or that any rates or terms will be the best available.

(iii) Rental Products. If you choose to submit your information in order to submit a background or credit check, you are subject to the CIC and Experian terms as described in Section 8(C) below. We do not process or store background or credit check information related to our rental products and do not control how a landlord uses background or credit check information in evaluating applications submitted to them. We do not guarantee any acceptance by a landlord of an application but do require all landlords using the Services to comply with the Fair Housing Act and other applicable laws.

C. Additional Terms for Third Party Services. Certain aspects of the Services include Third-Party tools that are subject to additional Third-Party terms, including, but not limited to, the following:

(i) Windows Live Virtual Earth. Windows Live Virtual Earth imagery is supplied by Microsoft Corporation, and use is subject to the Microsoft MapPoint Terms of Use available at http://www.microsoft.com/maps/assets/docs/terms.aspx.

(ii) Google Maps. Some of the Services implement the Google Maps web mapping service. Your use of Google Maps is subject to Google's terms of use, available at http://www.google.com/intl/en_us/help/terms_maps.html, and Google's Privacy Policy, available at https://www.google.com/intl/ALL/policies/privacy/index.html.

(iii) Stripe. Some of the Services allow you to use Stripe Connect to make payments to other users and may include additional processing or application fees detailed when you choose to connect to Stripe. Your use of Stripe is subject to the Stripe Connected Account Agreement, available at https://stripe.com/us/connect-account/legal. Additionally, by using Stripe, you agree not to use Stripe (and the Services generally) for any Prohibited Business purposes, as listed at https://stripe.com/us/prohibited-businesses.

(iv) CIC. Some of the Services allow users to use our Third-Party background check partner CIC's services to submit an application and background check to a landlord. If you are a Renter using the CIC services, you authorize Zillow to obtain your background check report, including criminal and eviction history, and to share that information with Landlords to whom you submit an application, and agree to the CIC Legal and Privacy Policy available at https://www.cicreports.com/legal-and-privacy-policy. If you are a Landlord using the CIC services, you agree to use the background check reports in compliance with the law, and agree to the CIC Legal and Privacy Policy linked above.

(v) Chase. Some of the Services allow you to use Chase to make payments to the Zillow Companies. Your use of the Chase payments feature is subject to the Chase Paymentech Privacy Policy, available at https://www.chasepaymentech.com/.

(vi) Plaid. The rental payments feature allows you to link your bank account through Plaid for the purposes of making or receiving rental payments. By using Plaid, you agree to your personal and financial information being transferred, stored, and processed by Plaid in accordance with the Plaid Privacy Policy, available at https://plaid.com/legal.

(vii) Experian. Some of the Services allow you to use the Experian Connect service to submit a request for a credit check be sent to a landlord. If you use the Experian services, you agree to the Experian Connect Terms and Conditions, available at https://connect.experian.com/legal/terms.html.

9. Intellectual Property. The Services are owned and operated by the Zillow Companies. The user interfaces, design, information, data, code, products, software, graphics, and all other elements of the Services (the "Zillow Companies' Materials") that we provide are protected by intellectual property and other laws and are the property of the Zillow Companies or the Zillow Companies' Third-Party licensors. Except as expressly allowed by these Terms of Use, you may not make use of the Zillow Companies' Materials, and the Zillow Companies reserve all rights to the Zillow Companies' Materials and Services not granted expressly in these Terms of Use.

Intellectual Property Notices:

Certain content on the Services is owned by ZIP+4 data and the United States Postal Service. To view a complete list of our issued patents and active trademarks, click here. The names of actual companies, products, and services mentioned herein may be the trademarks of their respective owners. Any rights not expressly granted

herein are reserved. We do not assert copyright or grant any rights to the underlying images or descriptions of real estate listings provided through the Services. Any use of these images and descriptions is subject to the copyright owner's permission and the requirements of applicable law.

10. Feedback. If you choose to provide input and suggestions regarding the Services, including related to any of the Zillow Companies' Materials ("Feedback"), then you hereby grant us an unrestricted, perpetual, irrevocable, non-exclusive, fully paid, royalty-free right to use the Feedback in any manner and for any purpose, including to improve the Services or create other products and services.

11. DMCA; Claims of Copyright Infringement. We respect the intellectual property rights of others and ask that everyone using the Services do the same. Anyone who believes that their work has been reproduced on the Services in a way that constitutes copyright infringement may notify our copyright agent in accordance with Title 17, United States Code, Section 512(c)(2), by providing the following information:

(i) Identification of the copyrighted work that you claim has been infringed;

(ii) Identification of the material that you claim is infringing and needs to be removed, including a description of where it is located on the Services so that the copyright agent can locate it;

(iii) Your address, telephone number, and if available, e-mail address, so that the copyright agent may contact you about your complaint; and

(iv) A signed statement that the above information is accurate, that you have a good faith belief that the identified use of the material is not authorized by the copyright owner, its agent, or the law and, under penalty of perjury, that you are the copyright owner or are authorized to act on the copyright owner's behalf in this situation.

Notices of copyright infringement claims should be sent as follows:

By mail:

Zillow, Inc.

1301 Second Avenue, Floor 31

Seattle, WA 98101

Attention: Copyright Agent

By e-mail:

If relating to content on Trulia.com and related websites: DMCA_notice_email@trulia.com

Otherwise: DMCA_notice_email@zillow.com

If you give notice of copyright infringement by e-mail, we may begin investigating the alleged copyright infringement; however, we must receive your signed statement by mail or as an attachment to your e-mail before we are required to take any action.

12. Deactivation/Deletion /Changes to Agreement. Except as stated in any Product's Terms, you may deactivate your account at any time by selecting "deactivate account" in your account settings. You can delete your account and all your account data by submitting a request to "delete your data" at https://privacy.zillowgroup.com/. If you deactivate or delete your account, you remain obligated to pay all outstanding fees, if any, incurred prior to termination relating to your use of the Services. If you violate any provision of these Terms of Use, your permission from the Zillow Companies to use the Services will terminate automatically. In addition, we may, in our sole discretion, deactivate, suspend, or terminate your access to your account and the Services at any time for any reason, with or without notice. We may alter, suspend, or discontinue the Services or any portion of the Services without notice. We will not be liable whatsoever for any change to the Services or any suspension or termination of your access to, or use of the Services. We reserve the right to change these Terms of Use at any time in its sole discretion on a going-forward basis, and we will make commercially reasonable efforts to notify you of any material changes to these Terms of Use. Your continued use of the Services after any updates are effective will represent your agreement to the revised version of the Terms of Use and will constitute acceptance of, and agreement to, any such changes. You further waive any right you may have to receive specific notice of such changes to these Terms of Use. You are responsible for regularly reviewing these Terms of Use.

13. Privacy Policy/Other Terms.

A. Privacy Policy. The Zillow Companies will collect, use, store, and disclose personal information in accordance with our Privacy Policy. Please consult our Privacy Policy for more information, which is incorporated into, and made a part of, these Terms of Use.

B. Other Terms. Your use of the Services is subject to all additional guidelines, rules, Product Terms, and agreements applicable to the Services or certain features of the Services that we may post on, or link to, from the Services, such as rules applicable to a particular product or content available through the Services, including, without limitation, the Good Neighbor Policy, the Listing Quality Policy, the Self-Tour Terms and Conditions , the Rentals User Terms, the Respectful Renting Pledge, the 3D Home Terms and Guidelines, and the Video Walkthrough Guidelines. If you are a non-affiliated Third-Party Provider who has created an industry professional account with Zillow Group, you are subject to the NMLS Data Terms. Additionally, if you are a non-affiliated Third-Party Provider who participates in any Services offered by Zillow Group Marketplace, Inc. you are also subject to the Zillow Group Market Place, Inc.'s Lender Terms of Use. All such terms are incorporated into, and made a part of, these Terms of Use.

14. Indemnification. You agree to indemnify, defend, and hold harmless the Zillow Companies, our affiliates, and our respective directors, officers, employees, and agents from any and all claims and demands made by any third party due to or arising out of: (a) your access to or use of the Services; (b) your breach of these Terms of Use; (c) your violation of any law or the rights of a third party; (d) any dispute or issue between you and any third party; (e) any User Materials you upload to, or otherwise make available through, the Services; (f) your willful misconduct; and (g) any other party's access to or use of the Services using your account and password. The Zillow Companies reserve the right, at our own expense, to assume the exclusive defense and control of any matter otherwise subject to indemnification by you, and in that case, you agree to cooperate with the Zillow Companies' defense of that claim.

15. No Warranties. THE ZILLOW COMPANIES PROVIDE THE SERVICES "AS IS," "WITH ALL FAULTS" AND "AS AVAILABLE," AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT IS WITH YOU. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE ZILLOW COMPANIES AND OUR SUPPLIERS MAKE NO REPRESENTATIONS, WARRANTIES, OR CONDITIONS, EXPRESS OR IMPLIED. THE ZILLOW COMPANIES AND OUR SUPPLIERS EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES OR CONDITIONS, EXPRESS, STATUTORY, AND IMPLIED, INCLUDING WITHOUT LIMITATION: (A) WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WORKMANLIKE EFFORT, ACCURACY, TITLE, QUIET ENJOYMENT, NO ENCUMBRANCES, NO LIENS, AND NON-INFRINGEMENT; (B) WARRANTIES OR CONDITIONS ARISING THROUGH COURSE OF DEALING OR USAGE OF TRADE; AND (C) WARRANTIES OR CONDITIONS OF UNINTERRUPTED OR ERROR-FREE ACCESS OR USE. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU THROUGH THE SERVICES OR ANY MATERIALS AVAILABLE THROUGH THE SERVICES WILL CREATE ANY WARRANTY REGARDING ANY ZILLOW COMPANIES' ENTITY OR THE SERVICES THAT IS NOT EXPRESSLY STATED IN THESE TERMS OF USE. YOU ASSUME ALL RISK FOR ANY DAMAGE THAT MAY RESULT FROM YOUR USE OF OR ACCESS TO THE SERVICES, YOUR DEALING WITH ANY OTHER USER, AND ANY MATERIALS, INCLUDING ALL USER AND ZILLOW COMPANIES' MATERIALS, AVAILABLE THROUGH THE SERVICES. YOU UNDERSTAND AND AGREE THAT YOUR USE OF THE SERVICES, AND USE, ACCESS, DOWNLOAD, OR OTHER OBTAINMENT OF MATERIALS THROUGH THE SERVICES AND ANY ASSOCIATED SITES OR SERVICES, ARE AT YOUR OWN DISCRETION AND RISK, AND THAT YOU ARE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR PROPERTY (INCLUDING YOUR COMPUTER SYSTEM OR MOBILE DEVICE USED IN CONNECTION WITH THE SERVICES), OR THE LOSS OF DATA THAT RESULTS FROM THE USE OF THE SERVICES OR THE DOWNLOAD OR USE OF THOSE MATERIALS. SOME JURISDICTIONS MAY PROHIBIT A DISCLAIMER OF WARRANTIES AND YOU MAY HAVE OTHER RIGHTS THAT VARY FROM JURISDICTION TO JURISDICTION.

16. Limitation of Liability/Exclusive Remedy. IN NO EVENT WILL THE ZILLOW COMPANIES OR ANY OF OUR AFFILIATES BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES (INCLUDING DAMAGES FOR LOSS OF PROFITS, GOODWILL, OR ANY OTHER INTANGIBLE LOSS) ARISING OUT OF, BASED ON, OR RESULTING FROM THESE TERMS OF USE OR YOUR USE OR ACCESS, OR INABILITY TO USE OR ACCESS, THE SERVICES OR ANY MATERIALS ON THE SERVICES, WHETHER BASED ON: (A) BREACH OF CONTRACT; (B) BREACH OF WARRANTY; (C) NEGLIGENCE; OR (D) ANY OTHER CAUSE OF ACTION, EVEN IF THE ZILLOW COMPANIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE ZILLOW COMPANIES ASSUME NO LIABILITY OR RESPONSIBILITY FOR ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF MATERIALS; (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO OR USE OF THE SERVICES; (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION STORED THEREIN; (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM THE SERVICES; (V) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE THAT MAY BE TRANSMITTED TO OR THROUGH OUR SERVICES BY ANY THIRD PARTY; (VI) ANY ERRORS OR OMISSIONS IN ANY MATERIALS OR FOR ANY LOSS OR DAMAGE INCURRED AS A RESULT OF THE USE OF ANY MATERIALS POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE THROUGH THE SERVICES; OR (VII) USER MATERIALS OR THE DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT OF

ANY THIRD PARTY, THE AGGREGATE LIABILITY OF THE ZILLOW COMPANIES AND ANY OF OUR AFFILIATES TO YOU FOR ALL CLAIMS ARISING OUT OF OR RELATING TO THE USE OF, OR INABILITY TO USE, ANY PORTION OF THE SERVICES OR OTHERWISE UNDER THESE TERMS OF USE, WHETHER UNDER CONTRACT, TORT, OR OTHERWISE, IS LIMITED TO THE GREATER OF: (1) THE AMOUNT YOU HAVE PAID TO THE ZILLOW COMPANIES FOR THE SERVICES IN THE 12 MONTHS PRIOR TO THE EVENTS OR CIRCUMSTANCES GIVING RISE TO THE CLAIMS; OR (2) $100. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL DAMAGES. ACCORDINGLY, THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. EACH PROVISION OF THESE TERMS OF USE THAT PROVIDES FOR A LIMITATION OF LIABILITY, DISCLAIMER OF WARRANTIES, OR EXCLUSION OF DAMAGES IS INTENDED TO AND DOES ALLOCATE THE RISKS BETWEEN THE PARTIES UNDER THESE TERMS. THIS ALLOCATION IS AN ESSENTIAL ELEMENT OF THE AGREEMENT OF THE PARTIES. THE LIMITATIONS IN THIS SECTION WILL APPLY EVEN IF ANY LIMITED REMEDY FAILS ITS ESSENTIAL PURPOSE.

17. Choice of Law; Disputes. These Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict of laws provisions. You agree to submit to the personal and exclusive jurisdiction and venue in the state and federal courts sitting in King County, Washington for all disputes, claims, and actions arising from or in connection with the Services or otherwise under these Terms of Use. The Zillow Companies operate the Services from our offices in Washington, and we make no representation that the Services are appropriate or available for use in other locations.

18. General. You agree not to export from anywhere any part of the Services provided to you, or any direct product thereof, except in compliance with, and with all licenses and approvals required under, applicable export laws, rules and regulations. All Services used by the U.S. Government are provided with the commercial license rights described herein. These Terms of Use may be amended only by a written agreement signed by authorized representatives of the parties to these Terms of Use. If any part of these Terms of Use is determined to be invalid or unenforceable, then the invalid or unenforceable provision will be replaced with a valid, enforceable provision that most closely matches the intent of the original provision and the remainder of these Terms of Use will continue in effect. The section titles in these Terms of Use are used solely for the convenience of the parties and have no legal or contractual significance. We may assign this Agreement, in whole or in part, at any time with or without notice to you. You may not assign these Terms of Use, or assign, transfer or sublicense your rights, if any, in the Services. Our failure to act with respect to a breach, or our choice to otherwise waive breach by you or others, does not waive our right to act with respect to subsequent or similar breaches. Except as expressly stated herein, these Terms of Use, and all expressly incorporated terms and agreements, constitute the entire agreement between you and the Zillow Companies with respect to the Services and supersede all prior or contemporaneous communications of any kind between you and the Zillow Companies with respect to the Services. The following sections of these Terms of Use shall survive any termination of these Terms of Use: 3, 5-8, 10-12, and 14-22.

19. Consent to Communications. By using the Services, you consent to receiving certain electronic communications from us as further described in the Privacy Policy. Please read our Privacy Policy to learn more. You agree that any notices, agreements, disclosures, surveys, or other communications that we send to you electronically will satisfy any legal communication requirements, including that those communications be in writing.

The Services may provide web forms, links, or contact information, including phone numbers, that can connect you with the Zillow Companies or third parties, such as real estate agents and Third-Party Providers. Communications through these methods may be routed through a third-party service ("Communications Service"). Calls may be recorded or monitored for quality assurance, training, or customer service purposes. You will be notified at the beginning of a call if it may be recorded or monitored. You consent to such recording and monitoring by the Zillow Companies or the Communications Service. We also use the Communications Service to track phone calls and text messages between you and real estate professionals so that we and the real estate professional can access certain details about the contact. As part of this process, we and the Communications Service will receive in real time, and store, data about your call or text message, including the date and time of the call or text message, your phone number, and the content of the text message. You consent to these practices by us and the Communications Service. The information is subject to the Privacy Policy.

20. Notice to California Residents. If you are a California resident, under California Civil Code Section 1789.3, you may contact the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs in writing at 1625 N. Market Blvd., Suite S-202, Sacramento, California 95834, or by telephone at (800) 952-5210 in order to resolve a complaint regarding the Service or to receive further information regarding use of the Service.

21. Contact Information and License Disclosures. The Services are offered by Zillow, Inc. and its affiliates, located at 1301 Second Avenue, Floor 31, Seattle, WA 98101. You may contact the Zillow Companies by sending correspondence to that address or emailing consumercare@zillow.com. See a complete list of Zillow, Inc.'s real

estate brokerage licenses, here.

Zillow Group Marketplace, Inc. is a wholly-owned subsidiary of Zillow, Inc. and has its headquarters at 1301 Second Ave., 30th floor, Suite 3000-A, Seattle, Washington 98101. The Nationwide Mortgage Licensing System (NMLS) Identification Number for Zillow Group Marketplace, Inc. is 1303160. To see a complete list of Zillow Group Marketplace, Inc.'s licenses, see Licensing and Disclosures, EQUAL HOUSING OPPORTUNITY.

Zillow Home Loans, LLC is a wholly-owned subsidiary of Zillow, Inc., and has its headquarters at 10975 El Monte, Overland Park, KS 66211. The NMLS Identification Number for Zillow Home Loans, LLC is 10287. To see a complete list of Zillow Home Loans, LLC's licenses, see this Licensing page. ZILLOW HOME LOANS, LLC IS AN EQUAL HOUSING LENDER.

Zillow Closing Services, LLC, Zillow Closing Services AZNV, LLC and Zillow Closing Services TX, LLC are wholly-owned subsidiaries of Zillow Group, Inc. Licensing information for the Zillow Closing Services entities can be found here.

22. Notice to Apple Users. If you are using our mobile applications on an iOS device, the terms of this Section 22 apply. You acknowledge that these Terms of Use are between you and the Zillow Companies only, not with Apple, and Apple is not responsible for the Services or related Materials. Apple has no obligation to furnish any maintenance or support services with respect to the Services. If the Services fail to conform to any applicable warranty, you may notify Apple and Apple will refund any applicable purchase price for the mobile application to you; to the maximum extent permitted by applicable law, Apple has no other warranty obligation with respect to the Services. Apple is not responsible for addressing any claim by you or any third party relating to the Services or your possession or use of the Services, including: (a) product liability claims; (b) any claim that the Services fail to conform to any applicable legal or regulatory requirement; and (c) claims arising under consumer protection or similar legislation. Apple is not responsible for the investigation, defense, settlement, or discharge of any third-party claim that the Services or your possession and use of the mobile application infringe that third party's intellectual property rights. You agree to comply with any applicable third-party terms when using the Services. Apple and Apple's subsidiaries are third party beneficiaries of Section 22 of these Terms of Use, and upon your acceptance of these Terms or Use, Apple will have the right (and will be deemed to have accepted the right) to enforce this Section 22 of these Terms of Use against you. You hereby represent and warrant that: (i) you are not located in a country that is subject to a U.S. Government embargo, or that is on Title 15, Part 740 Supplement 1, Country Group E of the U.S. Code of Federal Regulations; and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

See our previous Terms of Use:

2021 Terms of Use

**ZILLOW**GROUP

About Us

Media Room

Investors

Careers

Privacy Policy

Terms of Use

Our Brands

- Zillow
- Trulia
- StreetEasy
- Hotpads



- ○ Zillow Rentals
- ○ Zillow Premier Agent
- ○ Zillow Home Loans
- ○ Zillow Closing Services
- ○ ShowingTime+

Our Blogs
- ○ Corporate
- ○ Consumer
- ○ Research
- ○ Tech
- ○ Mortgage Learning
- ○ Agent Resources
- ○ Landlord Resources

Follow Us

© 2006-2023 MFTB Holdco, Inc., a Zillow affiliate

Exhibit B



# Privacy Policy

The information we collect, why we use it, who we share it with, and how we protect it, along with the tools you can use to manage your privacy.

**Effective Date:** January 2023

When you use Zillow Group services to find, buy, rent, or sell your home, get a mortgage, or connect to a real estate pro, we know you're trusting us with your data. We also know we have a responsibility to respect your privacy, and we work hard to do just that. This Privacy Notice explains what personal data we collect, why we use it, who we share it with, and how we protect it, along with the tools you can use to manage your privacy. We periodically revise this Notice to reflect new and evolving laws that govern privacy. This Privacy Notice is not a contract and does not create any legal rights or obligations.

**Who We Are**: Zillow Group offers a wide range of offerings that focus on all stages of your home journey: searching, renting, buying, selling, financing, and home improvement.

We know that everyone's home journey is different, and that deciding on the right place to call home is an intimate, personal experience. Along with a wealth of information about homes, neighborhoods, market conditions, local real estate professionals, and financing options, we also use the information you give us to provide our services and help you find your next home.

We carefully evaluate how we use data to make sure that we're using your information to provide value **for you**. On this page, we aim to explain everything you need to know about your privacy at Zillow. If you have any questions that we haven't answered here, you can always contact us at privacy@zillow.com.

When we use the terms "Zillow Group", "we", "us", or "our" in this Privacy Notice, we are referring to Zillow, Inc. and its affiliated brands.

**Our Offerings**: When we use the terms "offerings" or "services," we are referring to our Internet websites, mobile applications, and other services that link to this Privacy Notice and that we offer and manage on our own behalf, including:

- Our corporate websites that link to this Privacy Notice;
- Rental tools;
- Connections (such as connecting you to a lender or agent); and
- Other offerings we may make available through our sites and apps.

This Privacy Notice does not cover or address:

- Our business-facing brands, such as dotloop, ShowingTime, ShowingTime+, Mortech, and Bridge Interactive, all of which have their own Privacy Notices;
- Zillow Home Loans and Zillow Closing Services, each of which has its own Privacy Notice;
- Disclosures or rights we may provide to you in relation to the United States Fair Credit Reporting Act (FCRA) or the United States Gramm-Leach-Bliley Act (GLBA);
- Disclosures or rights we may provide to you in relation to U.S. state-specific financial privacy laws;
- Offerings that we provide solely on behalf of our business partners; and
- Personal data and privacy practices relating to job applicants, employees and other Zillow Group personnel.

We separately provide notices required under the GLBA, containing GLBA- and state-specific financial privacy law disclosures in connection with GLBA-covered services. If you would like to obtain another copy of a GLBA notice we previously provided to you, please contact us at privacy@zillow.com.

For offerings provided on behalf of our customers who are real estate professionals (such as real estate agents, builders, third-party lenders, and landlords), please refer to the privacy notice of the real estate professional with whom you have a relationship for information on how they engage us to process your personal data.For individuals based outside the United States and Canada, this Privacy Notice applies solely to their browsing and actions on our website(s) accessible at: www.zillow.com; www.trulia.com; www.hotpads.com; www.zillowgroup.com; www.streeteasy.com, and www.outeast.com.

# Quick links

**What is Personal Data?**

**Our Collection and Use of Personal Data**

**Our Disclosure of Personal Data**

**Choices About Your Data**

**Third-Party Tracking and Interest-Based Advertising**

**Children's Personal Data**

**Region-Specific Disclosures**

**Third-Party Websites**

**Updates to this Privacy Notice**

**Contact us**

**Additional U.S. State Privacy Disclosures**

**What is Personal Data?**

When we use the term "personal data" in this Privacy Notice, we mean information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, to an individual or household. It does not include aggregated or de-identified information that is maintained in a form that is not capable of being associated with or reasonably linked to an individual.

**Our Collection and Use of Personal Data**

The personal data we collect, the way we collect it, and how we use it will depend on how you are interacting with us and the type of services you use.

**Information We Collect As You Use Our Services**

*Collection of Personal Data*

As is true of most digital platforms, we and our third-party providers collect certain personal data automatically when you visit or interact with our websites, mobile apps, and other online services. This includes things like your home search history, homes you view, purchase activity, what you've clicked on and other uses of our websites, and the amount of time you spend looking at different parts of our websites.

Specifically, we and our third party partners may use tracking technologies to automatically collect commercial information, preferences, and internet, network and device information, including:

- **Information about how you access our services**, such as the website from which you came and the website to which you are going when you leave our websites, how frequently you access the services, when and whether you open emails or click the links contained in emails, whether you access the services from multiple devices and other actions you take on the services.
- **Information about how you use the services**, such as the pages you visit, the links you click, the ads you view and click on, purchase information and your checkout process, your location when you access or interact with our services, and other similar actions.
- **Information about the computer, tablet, smartphone or other device you use**, such as your IP address, browser type, Internet service provider, platform type, device type/model/manufacturer, operating system, date and time stamp, a unique ID that allows us to uniquely identify your browser, mobile device, or your account

(including, e.g., a persistent device identifier or an Ad ID), and other such information (referred to herein as "Log Data").

- **Analytics Data**, such as information about your activity when you visit our sites or use our apps; this can include clicks, mouse movements, forms you fill out, and similar information. We use this to better understand what features and parts of the website are most useful, and which ones may need to be improved.

- **Cookies, pixels, and other tracking**: We and our partners use various tools to collect data when you visit our sites and apps, including cookies, pixel tags, and other similar technologies. Cookies are bits of electronic data that can be transferred to your computer or other device to identify your browser. When you use Zillow, we and our partners may use cookies and other tools to gather information about how you view and use our services and content, and to connect your activity with other data we store about you. The use of cookies helps us serve you better by understanding what you're interested in, tracking trends, measuring the effectiveness of ads, saving your preferences, and storing information you may want to retrieve on a regular basis, such as your favorite homes. We also allow approved partners to collect data from your browser or device for advertising and measurement purposes using their own cookies or similar tools; these are categorized as "Advertising Cookies," and you can choose whether to disable them via either our Privacy Center or the "Cookie Preference" link at the bottom of our websites.

This information allows us to improve your customer experience. For example, we may use this information to enhance and personalize your user experience, to monitor and improve our websites and services, and for other internal purposes.  We may also use this information to: (a) remember information so that you will not have to re-enter it during your visit or the next time you visit the Sites; (b) provide custom, personalized content, and information; (c) identify and contact you across multiple devices; (d) provide and monitor the effectiveness of our services; (e) perform analytics and detect usage patterns on our services; (f) diagnose or fix technology problems; (g) detect or prevent fraud or other harmful activities; and (h) otherwise to plan for and enhance our services.

We and our third party partners may collect information through tracking technologies for personalized advertising purposes. To learn more about our advertising practices and your choices relating to advertising, please see "Third-Party Tracking and Interest-Based Advertising."

**Information You Give Us or Create Using Our Services**

*Collection of Personal Data*

When you use our services, websites, or apps, we collect personal data from you. We might also collect personal data about you from our business partners, payment processors, service providers, and other third parties who collect personal data on our behalf. This information might include:

- **Account Registration and Profile Information**: If you register for an account through our services or complete a Zillow profile, we collect account identifiers (including a username and password, as well as internal identifiers we assign to individual accounts to allow our systems to connect account information stored in different databases) and account history and records (including services you've used or interacted with, the date and type of account creation, account status, log in activity, transactions, the services we provide, messages received in connection with the services, and your activity on our websites and mobile applications). We use this information to create and administer your account, provide you with the relevant services and information, communicate with you regarding your account and your use of the services, for customer support purposes, and to send you communications by email, push notification, or by text message, in accordance with your preferences.
- **Customer Service and Communication History**: Including name, address, email, customer service requests, Account Identifiers, Account History and the contents of requests and correspondence with us (including recordings of phone calls, where permitted by law).
- **Feedback Information**: If you submit a review, feedback or other comments, we collect your contact information (such as first and last name, email address, and phone number) and any feedback and ratings relating to our services and products, including reviews you create of real estate pros.
- **Inquiries and Communication**:  If you communicate with us or otherwise submit an inquiry or question (e.g., via webform), we collect your contact information (such as first and last name, email address, and phone number), account identifiers and history (described above), and any other personal data you choose to provide in the content of your message or communication.  We use this information to investigate and respond to your inquiries, to facilitate communication with us, to provide you with requested information, to enhance the services we offer, and to manage and grow our business.  If you represent a company or agency interested in partnering with us, we will also collect your professional and employment information in order to respond to your inquiries, communicate with you, to manage and grow our organization and to facilitate a business relationship.  Our websites and online services provide you the ability to connect with us through an online web form that collects contact information (such as first and last name, email address, phone number, company name, and title with company), area(s) of interest or concern, and a custom message.

- **Location Data**: Including general geographic location reflected in the Log Data we collect or more precise location when you choose to share it with us through your device or browser settings.
- **Newsletters and Email Communication**: Many of our websites and online services provide you an opportunity to sign up for our newsletters and email communications by providing your email address. We use your email address to communicate with you about our services and exciting developments at Zillow Group, which may include marketing communications. Please see the "Choices About Your Data" section below for additional information about opting out of our marketing communications.
- **Payment Information**: We and our third-party service providers collect information relating to your transactions with us, including details regarding payments you've made through our sites or apps. We use third-party payment tools to process and store payment information like credit card numbers or bank account information. We don't store this information ourselves.

Although we often collect the personal data described above directly from you, we may also collect certain information through our business partners, service providers, and other third parties that collect it on our behalf, such as communications providers, data brokers, payment processors, payment system providers, and information technology providers.

Please note that we link the personal data we collect in connection with our services with the other personal data that we collect and may use it for the purposes we describe in more detail in the other sections of this Privacy Notice.

**Other Collection of Personal Data**

In addition to the personal data collected above, we may also collect personal data as follows:

- **Affiliates**:  We may receive information about you collected by other Zillow Group companies, businesses, brands, and affiliated entities in our family of companies, so that information you provide to one brand may be used by us to better provide you services and communicate with you.
- **Business Partners**: Our business partners, such as agent partners, lending partners, builders, property managers, and other real estate professionals collect personal data in connection with their services and often share some or all of this information with us. For example, we receive information about transactions you complete with partners with whom we've connected you through our services.
- **Business Representatives**: We collect professional personal data about representatives of third-party businesses, including representatives of our customers and business partners, in connection with our services and the operation of our business, which may include:
  - *Contact Information*: Including full name, email address, mailing address, and telephone number.
  - *Professional Information*: Including job title, job function, company name and characteristics, professional background, and nature of the relationship with us.
  - *Tax and Payment Information*: Including a personal tax identification number, bank account information, and payment information where you are a representative of a sole proprietor or similar legal structure that uses personal tax and account information in lieu of separate business information.
  - *Inquiry Information*: Including the contents of emails, texts, and other communications and, where permitted by law, recordings of calls with us.
  - *Feedback Information*, including information provided in response to surveys we may conduct with customers or business partners, or unsolicited feedback received regarding our services and business.
- **Office and Event Visitors**: We collect personal data about visitors to our physical offices and events, which may include:
  - *Contact Information*: Including full name, email address, mailing address, and telephone number.
  - *Professional Information*: Including job title, job function, company name, professional background, and nature of the relationship with us.
  - *Visit Information*: Including the purpose of the visit and any restrictions or preferences while on premise (such as dietary restrictions).
  - *Security Information*: Including a copy of a government ID (such as a driver's license) and a record of the visitor's access to our office or event, any use by the visitor of our computer systems, and images or video recordings of the visitor while on premises (where permitted by law).
- **Service Providers**: Our service providers, such as payment processors and marketing providers, collect personal data and often share some or all of this information with us. For example, we receive personal data from payment processors to confirm that an individual's payment for the services was accepted. We use this information to comply with our legal obligations, to monitor activity to identify and provide you with promotions and offers, and to prevent fraud, protect our rights and the rights of others, to inform our marketing and advertising activities, and to help provide our services.
- **Information Providers**: We may from time to time obtain information from third-party information providers to correct or supplement personal data we collect. For example, we may obtain updated contact information from third-party information providers to reconnect with you.

- **Publicly Available Information**: We may collect personal data from publicly available sources, such as information you publicly post or tag us in on social media sites or elsewhere online, and information contained in public records databases, such as government records or public review websites, to supplement the personal data identified above. We will use this information to conduct market research, verify your identity, prevent fraud, and improve our services.

**Other Uses of Personal Data**

In addition to the uses identified above, we use the personal data we collect to:

- Facilitate our day-to-day business operations, such as helping you find your next home, or connect with a real estate agent, lender, landlord, or other real estate professional;
- Create and maintain the services, develop new products and services, and improve existing products and services;
- Aggregate information we receive from you and third parties to help understand individual needs, customize our services and offerings, and provide everyone better service;
- Conduct research and analytics designed to understand our customer base and improve and grow our business, products, services, and customer experience;
- Communicate with you to provide technical or administrative support;
- Prevent, investigate, and defend against fraud or unlawful or criminal activity, access to, or use of personal data and our data system services;
- Enforce, investigate, and resolve disputes and security issues and to enforce our Terms of Service and any other contracts;
- Comply with legal obligations and other governmental demands;
- Understand your preferences and interests to better serve you on your home-finding journey;
- Personalize your individual experience, including providing educational resources and pointing you to homes you might be interested in or offerings of ours that might help you find your next home; and
- For any other lawful, legitimate business purpose.

**Our Disclosure of Personal Data**

We may disclose your personal data in the instances described below.  For further information on your choices regarding your information, see the "Choices About Your Data" section below.

We disclose your personal data in the following ways:

- **Within Zillow Group**: We are able to offer the products and services we make available because of the hard work of the entire Zillow Group team. Zillow Group entities disclose your personal data to other Zillow Group entities for purposes and uses that are consistent with this Privacy Notice and applicable law. For example, one part of Zillow might share your personal data with another in order to ensure that all the people helping in your home journey are working together for you.
- **Business Partners**: At your direction, we may share your personal data with our business partners in order to provide you with our products and services. For example, if you ask us to, we'll share your contact information with a real estate agent or mortgage lender.
- **Marketing Partners**: We coordinate and share your personal data with our marketing partners, including advertising networks, social networks, and marketing communication providers, in order to communicate with you about our products and services and market our products and services to you. We may also share aggregated demographic information with third parties interested in advertising on our online services to assist them in understanding the audience they would be reaching, but this information is not designed to identify any specific individual.
- **Service Providers**: We share information with third party vendors and service providers that perform services for or on our behalf, which may include identifying and serving targeted advertisements, providing mailing or email services, tax and accounting services, customer service, product fulfillment, payments processing, photo sharing, data processing and enhancement services, fraud prevention, web hosting, analytic services, or other online functionality, subject to appropriate contractual terms protecting the confidentiality and use of such data. We never allow service providers to use your personal data for their own purposes.
- **Business Transaction or Reorganization**: We may take part in or be involved with a corporate business transaction, such as a merger, acquisition, joint venture, or financing or sale of company assets. We may disclose your personal data to a third party during negotiation of, in connection with, or as an asset in such a corporate business transaction. Your personal data may also be disclosed in the event of insolvency, bankruptcy, or receivership.
- **Legal Obligations and Rights**: We may disclose your personal data to third parties, such as legal advisors and law enforcement:
  - In connection with the establishment, exercise, or defense of legal claims;
  - To comply with laws and regulations or to respond to lawful requests and legal process;

- To protect our rights and property and the rights and property of our agents, customers, and others, including to enforce our agreements, policies, and terms of use;
  - To detect, suppress, or prevent fraud;
  - To reduce credit risk and collect debts owed to us;
  - To protect the health and safety of us, our customers, or any person; or
  - As otherwise required by applicable law.
  - For Zillow's policy on government and civil requests for information, please see Government and Civil Information Requests.
- **Otherwise with Consent or At Your Direction**: We may disclose your personal data to certain other third parties or publicly with your consent or direction. If you post a comment or review our website or a comment on our social media sites, the information you provide may be displayed publicly online for others to view.

### Choices About Your Data

**Profile Access and Data Sharing**. You may access and update your profile information, such as your user name, address, or billing information, and may change some of your data sharing preferences on your account page.

**Location and Device Permissions**. You may control location tracking by adjusting your location services options on the "Settings" app on your mobile device.  We may continue to approximate your location based on your IP address when you access the services through a computer or device. If you would like to update your device content access permissions, such as permissions to access your camera, you can do so in the "Settings" app on your mobile device.

**Promotional Messages**. You can stop receiving promotional email communications from us by following the "unsubscribe" instructions provided in such communications.  We make every effort to promptly process all unsubscribe requests. You may still receive service-related communications, including account verification, transactional communications, changes/updates to features of the services, and technical and security notices.

**Third Party Tracking and Interest-Based Advertising**. We participate in interest-based advertising and use third party advertising companies to serve you targeted advertisements based on your browsing history. To learn more about our advertising practices and your choices relating to advertising, please see "Third-Party Tracking and Interest-Based Advertising."

### Third-Party Tracking and Interest-Based Advertising

We may participate in interest-based advertising and use third party advertising companies to serve you targeted advertisements based on your browsing history. We may permit third party online advertising networks, social media companies, and other third-party services to collect information about your use of our websites, including our mobile apps, over time so that they may play or display ads on our services, on other websites, apps, or services you may use, and on other devices you may use. Typically, though not always, the information used for interest-based advertising is collected through tracking technologies, such as cookies, Flash objects, web beacons, embedded scripts, mobile SDKs, location-identifying technologies, and similar technology (collectively, "tracking technologies"), which recognize the device you are using and collect information, including clickstream information, browser type, time and date you visited the site, device ID or AdID, geolocation, and other information. We may share a common account identifier (such as an e-mail address or user ID) or hashed data with our third-party advertising partners to help identify you across devices. We and our third-party partners may use this information to make the advertisements you see online more relevant to your interests, as well as to provide advertising-related services such as reporting, attribution, analytics, and market research.

We, or our third-party partners, may link your various devices so that content you see on one device can result in relevant advertising on another device. We may share a common account identifier (such as a hashed email address or user ID) or work with third-party partners who use tracking technologies or statistical modeling tools to determine if two or more devices are linked to a single user or household. We, and our partners, can use this cross-device linkage to serve interest-based advertising and other personalized content to you across your devices (including to improve your user experience), to perform analytics, and to measure the performance of our advertising campaigns.

### Your Choices

As noted above, depending on your browser or mobile device, you may be able to set your browser to delete or notify you of cookies and other tracking technology by actively managing the settings on your browser or mobile device. You may be able to limit interest-based advertising through the settings on your mobile device by selecting "limit ad tracking" (iOS) or "opt-out of interest based ads" (Android).  Please note that opt-outs are browser specific, so opting out on one browser will not affect a second browser, or device. Moreover, if you buy a new device, use a different browser, or clear all your cookies, you will have to opt out all over again. To learn more about interest-based advertising and how you may be able to opt-out of some of this advertising, you may

wish to visit the Network Advertising Initiative's online resources, at http://www.networkadvertising.org/choices, and/or the DAA's resources at www.aboutads.info/choices. You may also be able to opt-out of some – but not all – interest-based ads served by mobile ad networks by visiting http://youradchoices.com/appchoices and downloading the mobile AppChoices app. Note that some of these opt-outs may not be effective unless your browser is set to accept cookies. If you delete cookies, change your browser settings, switch browsers or computers, or use another operating system, you may need to opt-out again.

**Children's Personal Data**

Our websites and online services are not directed to, and we do not intend to or knowingly collect or solicit personal data from children under the age of 13. If you are under the age of 13, please do not use our websites or online services or otherwise provide us with any personal data either directly or by other means. If a child under the age of 13 has provided personal data to us, we encourage the child's parent or guardian to contact us as described below to request that we remove the personal data from our systems. If we learn that any personal data we collect has been provided by a child under the age of 13, we will promptly delete that personal data.

**Region-Specific Disclosures**

We may choose or be required by law to provide different or additional disclosures relating to the processing of personal data about residents of certain countries, regions, or states. Please see below for disclosures that may be applicable to you:

- If you are a resident of the State of California, Colorado, Connecticut, Utah, or Virginia in the United States, please see below for additional U.S. state-specific privacy disclosures.
- If you are a resident of the State of Nevada in the United States, Chapter 603A of the Nevada Revised Statutes permits a Nevada resident to opt out of potential future sales of certain covered information that a website operator has collected or will collect about the resident. To submit such a request, please contact us at privacy@zillow.com.

**Third-Party Websites**

Our websites and online services may include links to or redirect you to third-party websites, plug-ins and applications, including social media services where you may connect with us. Third-party websites may also reference or link to our websites and online services. Except where we post, link to, or expressly adopt or refer to this Privacy Notice, this Privacy Notice does not apply to, and we are not responsible for, any personal data practices of third-party websites and online services or the practices of other third parties. To learn about the personal data practices of these third parties, please visit their respective privacy notices or policies.

**Updates to this Privacy Notice**

We will update this Privacy Notice from time to time. When we make changes to this Privacy Notice, we will change the "Last Updated" date at the beginning of this Privacy Notice. If we make material changes to this Privacy Notice, we will notify you. All changes shall be effective from the date of publication unless otherwise provided in the notification.

**Contact Us**

If you have any questions or requests in connection with this Privacy Notice or other privacy-related matters, please send an email to privacy@zillow.com.

Alternatively, inquiries may be addressed to:

Zillow, Inc.
Attn: Consumer Care
1301 Second Avenue

Floor 31
Seattle, WA 98101

**Additional U.S. State Privacy Disclosures**

These Additional U.S. State Privacy Disclosures supplement the above information by providing additional information about our personal data processing practices relating to individual residents of the States of California, Colorado, Connecticut, Utah, and Virginia. Unless otherwise expressly stated, all terms defined in our Privacy Notice retain the same meaning in these Disclosures.

**Additional Personal Data Disclosures**

*Sensitive Information*

The following personal data elements we collect may be classified as "sensitive" under certain privacy laws ("sensitive information"):

- Social Security number, driver's license number, and passport number;
- Credit/debit card number plus expiration date and security code (CVV), and financial account number and routing number;
- Username and password; and
- Precise geolocation data.

We use this sensitive information for the purposes set forth in the "Our Collection and Use of Personal Data" section of our Privacy Notice, to enter into and perform a contract with you, to comply with legal and regulatory requirements, to protect the life or physical safety of you or others, or as otherwise permissible for our internal business purposes consistent with applicable laws.

We do not sell your sensitive information, and we do not process or otherwise share sensitive information for the purpose of targeted advertising.

**De-identified Information**

We may at times receive or process personal data to create de-identified data that can no longer reasonably be used to infer information about, or otherwise be linked to, a particular individual or household. Where we maintain deidentified data, we will maintain and use the data in de-identified form and not attempt to re-identify the data except as required or permitted by law.

**Your Privacy Choices**

Depending on your state of residency and subject to certain legal limitations and exceptions, you may be able to exercise some or all of the following rights:

| ***The Right to Know*** | The right to confirm whether we are processing your personal data and, under some state laws, to obtain certain personalized details about the personal data we have collected about you, including:

The categories of personal data collected;

The categories of sources of the personal data;

The purposes for which the personal data were collected;

The categories of personal data disclosed to third parties (if any), and the categories of recipients to whom the personal data were disclosed;

The categories of personal data shared for cross-context behavioral advertising purposes (if any), and the categories of recipients to whom the personal data were disclosed for those purposes; and

The categories of personal data sold (if any), and the categories of third parties to whom the personal data were sold.data and, under some state laws, to obtain certain personalized details about the personal data we have collected about you, including:The categories of personal data collected;The |

| | |
|---|---|
| | categories of sources of the personal data;The purposes for which the personal data were collected; The categories of personal data disclosed to third parties (if any), and the categories of recipients to whom the personal data were disclosed;The categories of personal data shared for cross-context behavioral advertising purposes (if any), and the categories of recipients to whom the personal data were disclosed for those purposes; andThe categories of personal data sold (if any), and the categories of third parties to whom the personal data were sold. |
| *The Right to Access & Portability* | The right to obtain access to the personal data we have collected about you and, where required by law, the right to obtain a copy of the personal data in a portable and, to the extent technically feasible, readily usable format that allows you to transmit the data to another entity without hindrance. |
| *The Right to Correction* | The right to correct inaccuracies in your personal data, taking into account the nature of the personal data and the purposes of the processing of the personal data. |

| | |
|---|---|
| ***The Right to Deletion*** | The right to have us delete the personal data we maintain about you. |
| ***The Right to Opt-Out of Sales or Sharing of Personal Data*** | The right to direct us not to "sell" your personal data to third parties for monetary or other valuable consideration, or "share" your personal data to third parties for cross-context behavioral advertising purposes and targeted advertising purposes. |
| ***"Shine the Light"*** | California residents that have an established business relationship with us have rights to know how their personal data is disclosed to third parties for their direct marketing purposes under California's "Shine the Light" law, or the right to opt out of such practices (Civ. Code §1798.83). |

Depending on your state of residence, you may also have the right to not receive retaliatory or discriminatory treatment in connection with a request to exercise the above rights. However, the exercise of the rights described above may result in a different price, rate, or quality level of product or service where that difference is reasonably related to the impact the right has on our relationship or is otherwise permitted by law.

**Submitting Privacy Rights Requests**

To submit a request to exercise one of the privacy rights identified above, please:

- Navigate to our **Privacy Center**; or
- Email us at privacy@zillow.com.

We may need to verify your identity before processing your request. In order to submit a request, you'll need to log in to your account with us so we can verify your identity. If you can't log in or don't have an account, we may not be able to link you to any personal data of yours on our systems, but we'll do our best. In certain circumstances, we may decline a request to exercise the rights described above, particularly where we are unable to verify your identity or locate your information in our systems. We will use personal data provided in connection with a Rights Request only to review and comply with the request.

*To Exercise Your Right to Opt-Out of Personal Data Sales or Sharing for Targeted Advertising*

Unless you have exercised your Right to Opt-Out, we may disclose your personal data to third parties who may use such information for their own purposes in accordance with their own privacy policies.  Under some state laws, disclosing personal data for online advertising like this may be considered a "sale of personal data" or "sharing for targeted advertising."

Zillow allows certain companies to place tracking technologies like cookies and pixels on our sites, which allow those companies to receive information about your activity on Zillow that is associated with your browser or device. The companies may use that data to serve you more relevant ads on our sites or others. Except for this kind of selling or sharing, Zillow doesn't otherwise sell any of your personal data.  You always have control over whether these technologies work on your devices. At any time, you can use our cookie preference tools to manage what kinds of cookies and other tracking technologies you're comfortable with. Check out our Privacy Center for information about how to access these tools. You can also disable cookies altogether by adjusting the settings on your browser. However, if you choose to disable some or all cookies, many parts of our services may no longer work. For more information, see the "Third-Party Tracking and Interest-Based Advertising" section in the Privacy Notice.

You do not need to create an account with us to exercise your Right to Opt-Out. However, we may ask you to provide additional personal data so that we can properly identify you to track compliance with your opt-out request. We will only use personal data provided in an opt-out request to review and comply with the request. If you choose not to provide this data, we may be able to process your request only to the extent we are able to identify you in our data systems.

To exercise the Right to Opt Out of Personal Information Sales or Sharing: Navigate to our **Privacy Center** or email privacy@zillow.com with sufficient information to identify you and your request.

**Submitting Authorized Agent Requests**

In certain circumstances, you are permitted by law to use an authorized agent to submit requests on your behalf through the designated methods set forth above where we can verify the authorized agent's authority to act on your behalf. In order to verify the authorized agent's authority, we generally require evidence of either: (i) a valid power of attorney; or (ii) a signed letter containing your name and contact information, the name and contact information of the authorized agent, and a statement of authorization for the request. Depending on the evidence provided and your state of residence, we may still need to separately reach out to you to confirm the authorized agent has permission to act on your behalf and to verify your identity in connection with the request.

**Appealing Privacy Rights Decisions**

Depending on your state of residence, you may be able to appeal a decision we have made in connection with your privacy rights request. All appeal requests should be submitted via email to privacy@zillow.com.

**Minors**

We do not sell the personal data of consumers we know to be less than 16 years of age, unless we receive affirmative authorization (the "Right to Opt In") from either the minor who is between 13 and 16 years of age, or the parent or guardian of a minor less than 13 years of age.

If you are under the age of 18 and you want to remove your name or comments from our website or publicly displayed content, please contact us directly at privacy@zillow.com. We may not be able to modify or delete your information in all circumstances.

If you wish to submit a privacy request on behalf of your minor child in accordance with applicable jurisdictional laws, you must provide sufficient information to allow us to reasonably verify your child is the person about whom we collected personal information and you are authorized to submit the request on your child's behalf (i.e., you are the child's legal guardian or authorized representative).

**California-Specific Disclosures**

The following disclosures only apply to residents of the State of California.

*California Categories of Personal Data*

California law requires we provide disclosures to you about what personal data we collect by reference to the enumerated categories of personal data set forth within California law. To address this obligation, we have identified the relevant enumerated California personal data category for the personal data, sources and purposes described in the "Our Collection and Use of Personal Data" section of our Privacy Notice below:

- **Identifiers**, including Account Registration and Profile Information, information related to your feedback, inquiries, and communications, credit and identity information relating to data used to identify you, full name, IP

address, and government identification number (including Social Security number, passport number, and driver's license number).

- **Customer Records**, including Account Registration and Profile Information, Security/Authentication Information, and Payment Information.
- **Protected Classification Characteristics**, including age, date of birth, gender, and sex.
- **Commercial Information**, including Account Registration and Profile Information relating to your purchases, Profile Information relating to your transactions, preferences, and interests, and Feedback Information.
- **Internet/Network Information**, including information about how you access and use the services, Log Data, and Analytics Data.
- **Geolocation Data,** including general geographic location or more precise location with your consent or when permitted by law.
- **Sensory Information**, including, where permitted by law, recordings of phone calls between us and individuals, and image and video recordings of visitors to our offices or events.
- **Profession/Employment Information**, including the business or organization you represent, your title with that business or organization, and information relating to your role with the business or organization.
- **Sensitive Information**, including Social Security number, driver's license number, passport number, credit/debit card number plus expiration date and security code (CVV), financial account number and routing number, username and password, and precise geolocation.
- **Other Personal Data**, including any information you provide us in connection with signing up for newsletters, email communications, and surveys, personal data you permit us to see when interacting with us through social media, and personal data you provide us in relation to a question, request, inquiry, survey, contest, or promotion.
- **Inferences**, including our predictions about interests and preferences and related Service Profile Information.

We collect this data from the following sources: directly from you, from our business partners and affiliates, from your browser or device when you visit our mobile app(s) or use our Services, or from third parties that you permit to share information with us. Please see "Our Collection and Use of Personal Data" section of our Privacy Notice for more information about the sources of personal data we collect. We disclose all of these categories of personal data for a business purpose to service providers or other third parties at the consumer's direction, as outlined in the "Our Disclosure of Personal Data" section of our Privacy Notice.

*Retention of Personal Data*

We strive to retain your personal data only for as long as is reasonably necessary to fulfill the purpose for which it was collected. However, if necessary, we may retain your personal data for longer periods of time, until set retention periods and deadlines expire, for instance where we are required to do so in accordance with legal, tax and/or accounting requirements set by a legislature, regulator, or other government authority.

To determine the appropriate duration of the retention of personal data, we consider the amount, nature and sensitivity of the personal data, the potential risk of harm from unauthorized use or disclosure of personal data and if we can attain our objectives by other means, as well as our legal, regulatory, tax, accounting, and other applicable obligations.

Therefore, we retain personal data for as long as you use our services for the purposes explained in our Privacy Notice, including maintaining a user account. When you discontinue the use of our services, we will retain your personal data for as long as necessary to comply with our legal obligations, to resolve disputes and defend claims, as well as for any additional purpose based on the choices you have made, such as to receive marketing communications.

Once retention of your personal data is no longer necessary for the purposes outlined above, we will either delete or de-identify the personal data or, if this is not possible (for example, because personal data has been stored in backup archives), then we will securely store your personal data and isolate it from further processing until deletion or deidentification is possible.

*"Shine the Light" Disclosures*

The California "Shine the Light" law gives residents of California the right under certain circumstances to request information from us regarding the manner in which we share certain categories of personal information (as defined in the Shine the Light law) with third parties for their direct marketing purposes. To opt out of this type of sharing, please visit our Privacy Center or email us at privacy@zillow.com.

*Consumer Rights Metrics 2021*You can find data that reflects the California consumer rights requests that we have processed in the 2021 calendar year (January 2021 – December 2021) by clicking here.

See our previous Privacy Policies:

Effective March 7, 2022

Effective January 1, 2020

Effective June 25, 2019

**ZILLOW**GROUP

About Us

Media Room

Investors

Careers

Privacy Policy

Terms of Use

Our Brands

- Zillow

- Trulia

- StreetEasy

- Hotpads

- Zillow Rentals

- Zillow Premier Agent

- Zillow Home Loans

- Zillow Closing Services

- ShowingTime+

Our Blogs

- Corporate

- Consumer

- Research

- Tech

- Mortgage Learning

- Agent Resources

- Landlord Resources

Follow Us



© 2006-2023 MFTB Holdco, Inc., a Zillow affiliate

1

## CERTIFICATE OF SERVICE

2       I hereby declare under penalty of perjury under the laws of the United States of

3  America that on this date, the foregoing document was filed electronically with the Court and

4  thus served simultaneously upon all counsel of record.

5       I declare under penalty of perjury that the foregoing is true and correct.

6       EXECUTED on June 6, 2023.

7

8                           _____

9                           Rondi A. Greer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE
No. 2:22-cv-01282-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500