THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| *In Re: Zillow Group, Inc. Session Replay Software Litigation*<br><br>This Document Refers to: All Actions | Master File No. 2:22-cv-01282-JLR<br><br>MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: SEPTEMBER 8, 2023<br><br>ORAL ARGUMENT REQUESTED |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR)

1

**TABLE OF CONTENTS**

2

**Page**

3       I.      INTRODUCTION ................................................................................................ 1

4       II.     ARGUMENT ..................................................................................................... 2

5               A.      Plaintiffs did not "communicate" with Zillow, which defeats all of
                        Plaintiffs' wiretapping claims. ................................................................ 2
6
                B.      Plaintiffs do not plead a Washington Privacy Act ("WPA") claim. ....................... 4
7
                C.      Plaintiffs do not state a Missouri Wiretap Act ("MWA") claim. .......................... 7
8
                D.      Plaintiffs do not state a California Invasion of Privacy Act ("CIPA")
9                       claim.......................................................................................................... 9

10              E.      Plaintiffs' Opposition confirms the rule of lenity should apply here................... 12

11              F.      Plaintiffs do not state a claim for invasion of privacy. ........................................ 14

12                      1.      Plaintiffs do not allege a reasonable expectation of privacy or
                                "unreasonable" or "highly offensive" conduct by Microsoft. .................. 14
13
                        2.      Plaintiffs' Washington and Illinois invasion of privacy claims fail
14                              for additional reasons. .............................................................. 17

15      III.    CONCLUSION ............................................................................................... 17

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS – i
(No. 2:22-cv-01282-JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Bell Atl. Corp. v. Twombly,*

5
    550 U.S. 544 (2007)......................................................................................................2

6

*Byars v. Goodyear Tire & Rubber Co.,*
    2023 WL 1788553 (C.D. Cal. Feb. 3, 2023)..............................................................10

7

*Commonwealth v. Spangler,*

8
    809 A.2d 234 (Pa. 2002)...............................................................................................8

9

*Cook v. Gamestop,*

10
    2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ..................................................... passim

11

*Cousineau v. Microsoft Corp.,*
    992 F. Supp. 2d 1116 (W.D. Wash. 2012).................................................................4, 9

12

*Facebook, Inc. v. Duguid,*

13
    141 S. Ct. 1163 (2021)...........................................................................................4, 8, 13

14

*Fin. Software Sys. v. Questrade, Inc.,*

15
    2018 WL 3141329 (E.D. Pa. June 27, 2018).............................................................14

16

*Goldstein v. Costco Wholesale Corp.,*
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) .......................................................................3

17

*Gray v. Twitter Inc.,*

18
    2021 WL 11086642 (W.D. Wash. Mar. 17, 2021) ...................................................14

19

*Hammerling v. Google LLC,*

20
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)...........................................................12

21

*Hazel v. Prudential Financial, Inc.,*
    2023 WL 3933073 (N.D. Cal. June 9, 2023)..............................................................12

22

*hiQ Labs v. LinkedIn Corp.,*

23
    31 F.4th 1180 (9th Cir. 2022) .............................................................................13, 14

24

*In re Carrier IQ, Inc.,*

25
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................9

26

*In re Facebook, Inc. Internet Tracking Litigation,*
    956 F.3d 589 (9th Cir. 2020) .....................................................................................15

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS – ii
(No. 2:22-cv-01282-JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015).............................................................................9, 15

*In re Meta Pixel Healthcare Litig.*,
    2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ......................................................9

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)...........................................................................16, 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...............................................................12

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .............................................................................10

*Jacome v. Spirit Airlines Inc.*,
    2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ................................................3, 4

*Katz-Lacabe v. Oracle America, Inc.*,
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ........................................................10

*Klumb v. Goan*,
    884 F. Supp. 2d 644 (E.D. Tenn. 2012)..................................................................9

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ............................................................................9, 12

*Phillips v. American Motorist Insurance*,
    996 S.W.2d 584 (Mo. Ct. App. 1999)..................................................................8, 9

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019)...............................................................2, 14

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) ...................................................................................8

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2021)........................................................3

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ......................................................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Russo v. Microsoft*,

4

2021 WL 2688850 (N.D. Cal. June 30, 2021) ..............................................................4

5

*Saber Interactive Inc. v. Oovee, LTD.*,
2022 WL 5247190 (W.D. Wash. Oct. 6, 2022) ..........................................................11

6

*Saleh v. Nike, Inc.*,

7

562 F. Supp. 3d 503 (C.D. Cal. 2021) .........................................................................3

8

*Samia v. Experian Info. Sols., LLC*,
2022 WL 298369 (S.D. Cal. Feb. 1, 2022) ...................................................................7

9

*Schmidt v. Ameritech Ill.*,

10

768 N.E.2d 303 (Ill. App. Ct. 2002) ..........................................................................17

11

*Schuyleman v. Barnhart Crane & Rigging Co.*,

12

2023 WL 5427933 (W.D. Wash. Aug. 23, 2023) .........................................................6

13

*State v. Corliss*,
838 P.2d 1149 (Wash. Ct. App. 1992) .....................................................................5, 6

14

*State v. Novick*,

15

384 P.3d 252 (Wash. Ct. App. 2016) ...........................................................................7

16

*State v. Roden*,

17

321 P.3d 1183 (Wash. 2014).........................................................................................6

18

*Stokes v. Bally's Pacwest, Inc.*,
54 P.3d 161 (Wash. Ct. App. 2002) .............................................................................7

19

*United States v. Forrester*,

20

512 F.3d 500 (9th Cir. 2008) ......................................................................................15

21

*United States v. Hutchins*,

22

361 F. Supp. 3d 779 (E.D. Wis. 2019) .........................................................................9

23

*United States v. Nosal*,

24

676 F.3d 854 (9th Cir. 2012) ..................................................................................1, 13

**STATUTES**

25

26

18 U.S.C. § 2510(4) ...........................................................................................................8

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS – iv
(No. 2:22-cv-01282-JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

18 U.S.C. § 2510(5) .................................................................................................9

18 U.S.C. § 2511 ....................................................................................................4

Cal. Penal Code § 631 ..........................................................................................10

Mo. Rev. Stat. § 542.400 ........................................................................................7

Mo. Rev. Stat. § 542.402.2 .....................................................................................9

Mo. Rev. Stat. § 542.408.4 .....................................................................................8

RCW 9.73.030 ........................................................................................................4

RCW 9.73.060 ........................................................................................................4

**RULES**

Fed. R. Civ. Proc. 12(b)(6) .....................................................................................2

**OTHER AUTHORITIES**

Mark Huffner, *Is 'session replay software' a privacy threat or just improving
    your web experience*, Consumer Affairs (Oct. 25, 2022),
    https://www.consumeraffairs.com/news/is-session-replay-software-a-privacy-
    threat-or-just-improving-your-web-experience-102522.html...............................16

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS – v
(No. 2:22-cv-01282-JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
## I.      INTRODUCTION

2          In its Motion to Dismiss, Microsoft showed that Plaintiffs have not plausibly alleged they

3    engaged in a "communication" when they interacted with Zillow's website—which alone defeats

4    their wiretapping claims. Additionally, as in *Cook v. Gamestop*, 2023 WL 5529772 (W.D. Pa.

5    Aug. 28, 2023), *appealed filed*, No. 23-2574 (3d Cir. Aug. 29, 2023), which dismissed with

6    prejudice wiretapping claims *based on the same Microsoft Clarity service as here*, Plaintiffs have

7    not plausibly alleged their website actions contained the "contents" of any communication or

8    were "private." Importantly, Plaintiffs themselves embrace Zillow's Terms of Use (TOU), which

9    included its Privacy Policy that *disclosed* the technology at issue—so Plaintiffs, who are

10   involved in other session replay cases, had no reasonable expectation that such technology

11   *wasn't* running on Zillow's website.

12         Plaintiffs' Opposition does not meaningfully respond to these arguments. Instead,

13   Plaintiffs point back to their conclusory allegations that their website interactions were

14   "communications," Opp'n 12–13; continue to conclude that their mouse movements, clicks, and

15   other website activity constitute "content," even though under the weight of authority those are at

16   best "record information" of the sort that "could have [been] obtained through a security camera

17   at a brick-and-mortar store," *Cook*, 2023 WL 5529772, at *8; and make no response to the fact

18   that Clarity's masking settings would have prevented Microsoft from accessing or collecting any

19   text they input on Zillow's website, *see* Compl. ¶ 64; MTD Ex. 2. Plaintiffs' wiretapping claims

20   should be dismissed for all these reasons, too.

21         Microsoft also showed that Plaintiffs' wiretapping claims fail for the additional,

22   independent reason that Plaintiffs are seeking to stretch criminal statutes beyond what is

23   permitted under the rule of lenity, which would "unintentionally turn ordinary citizens into

24   criminals." *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012). Plaintiffs claim that the

25   rule does not apply because there is no "grievous ambiguity" in the wiretapping statutes, but they

26   never explain why "intercept," "private," "contents," and "in transit" apply to the conduct here,

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

under the plain meaning of those terms. Instead, they admit that "session replay may not have been predictable when [the] Acts were passed." Opp'n 28. The rule of lenity exists precisely to avoid the draconian outcome that Plaintiffs are pursuing.

Finally, as in *Cook*, which also dismissed with prejudice common law intrusion upon seclusion claims based on the Clarity service, and as in *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019), which did so with respect to Plaintiff Popa's claim as to a similar session replay service, Microsoft showed that Plaintiffs have not plausibly alleged a reasonable expectation of privacy or "unreasonable" or "highly offensive" conduct. In response, Plaintiffs point to highly generalized case law about privacy expectations and make a vague request for discovery. *See* Opp'n 29–32. But Plaintiffs nowhere explain how, as serial litigants visiting a website that disclosed its use of tracking technologies, Plaintiffs reasonably believed that Zillow would not use a third party's diagnostic software to optimize its site. As in *Cook* and *Popa*, this Court should find that Plaintiffs do not meet the standard for a reasonable expectation of privacy or highly offensive conduct and should dismiss these claims, too.

Plaintiffs' complaint suffers from the same "fundamental flaw" as in *Cook*: it fails to "plead the necessary facts to support [their] claims for violation of the [State] Wiretap Act[s] or intrusion upon seclusion." *Cook*, 2023 WL 5529772, at *1. Rule 12(b)(6) demands dismissal.

## II. ARGUMENT

### A. Plaintiffs did not "communicate" with Zillow, which defeats all of Plaintiffs' wiretapping claims.

An undisputed threshold requirement of any State Wiretap Act claim is the presence of a "communication." *See* MTD 8–10. As Microsoft showed and the Opposition confirms, Plaintiffs did not communicate with Zillow when they allegedly browsed Zillow's website.

Plaintiffs argue they "clearly allege these were communications," Opp'n 8, but simply saying so does not make it so. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (insufficient to merely parrot statutory language). Nor has Microsoft conflated "contents" with

1    "communications" as Plaintiffs contend. *See* MTD 21–24 (separately addressing the "content"

2    issue). Rather, Microsoft makes the common sense argument that people do not ordinarily use or

3    understand the term "communications" to describe browsing or filling out forms on internet

4    websites, and there is no evidence the state legislatures intended to extend that term beyond its

5    ordinary meaning. *See* MTD 8–10 (collecting cases).

6         Further, as Microsoft already showed (MTD 10 n.6), and as Plaintiffs concede (Opp'n 13

7    n.1), the question whether the plaintiffs in *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal.

8    2021) had engaged in communications was not argued to the court. Nor was it adequately

9    considered in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2021).

10   *Saleh* simply adopted without critique the plaintiffs' framing of their website activity as

11   "communications with Nike." 562 F. Supp. 3d at 518. *Revitch* noted that a website user who

12   clicks on "items of interest" on a website is akin to "a customer who calls to inquire about a

13   store's products." 2019 WL 5485330, at *1. But that analysis, with which several courts,

14   including the *Cook* court addressing the same Microsoft technology, have (rightly) disagreed—

15   MTD 23–24 (discussing *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla.

16   2021) and *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)—is

17   flawed because it wrongly analogizes a server's automated response to a webpage query with

18   actual verbal communication between humans.

19        Plaintiffs claim *Goldstein* and *Jacome*, which dismissed wiretapping claims involving

20   session replay technology, actually support their position because those courts dismissed claims

21   based on a "tracking device" exception to the definition of "electronic communications" in the

22   Florida Security of Communications Act ("FSCA"). Plaintiffs claim this is proof that

23   "communications" include "tracking." Opp'n 12–13. But even a cursory read of *Goldstein* and

24   *Jacome* confirm that those courts were extremely skeptical that the FSCA applied to website

25   browsing behavior at all. *See Goldstein*, 559 F. Supp. 3d at 1321 ("[C]ontrary to Plaintiff's

26   interpretation, these [website] actions did not convey the substance of any communication.");

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 3

1  *Jacome*, 2021 WL 3087860 at *3 ("[The legislatures] did not intend for [wiretapping law] to

2  extend to the use of commonplace analytics software to improve a website browsers' experience

3  . . . ."). The much simpler explanation for the FSCA's "tracking device" exception is that the

4  legislature took a "belt and suspenders approach in writing the statute" to ensure that law

5  enforcement had access to necessary tools—not that the legislature intended to construe

6  "communication" so broadly as to defy ordinary meaning. *See Facebook, Inc. v. Duguid*, 141 S.

7  Ct. 1163, 1172 & n.7 (2021) (cleaned up) (rejecting similar argument).

8         Because Plaintiffs have not alleged facts showing their website interactions were

9  "communications" under the Washington, Missouri, or California wiretapping laws, the Court

10  should dismiss these claims with prejudice.

11  **B.**      **Plaintiffs do not plead a Washington Privacy Act ("WPA") claim.**

12         Plaintiffs' WPA claim fails on multiple, additional grounds. ***First,*** the WPA's

13  wiretapping provision applies only to communications between "two or more *individuals*," RCW

14  9.73.030(1)(a), and not to Plaintiffs' alleged one-way communications with Zillow. MTD 11.

15  Plaintiffs do not identify any case law contradicting this clear holding in *Cousineau v. Microsoft*

16  *Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012). Instead, they attack an argument

17  Microsoft didn't make—that the WPA cannot apply to corporations *at all* because they are not

18  "persons." *See* Opp'n 15. Microsoft does not dispute that the WPA applies to corporate

19  "persons" *if and when* they intercept a communication between "two or more individuals," but

20  that is not what Plaintiffs allege happened here. *Russo v. Microsoft*, 2021 WL 2688850, at *7

21  (N.D. Cal. June 30, 2021), cited by Plaintiffs, analyzed the "person" language of

22  Section 9.73.060—not the "two or more individuals" language of Section 9.73.030(1)(a). The

23  non-WPA cases that Plaintiffs cite shed no light on the meaning of "individual" under the WPA

24  because they discuss statutes that do not contain that limitation. *See* Opp'n 15; Cal. Penal Code

25  § 631(a); 18 U.S.C. § 2511(1)(d).

26

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 4

1   **Second**, the WPA protects only "private" communications, and Plaintiffs have not

2   plausibly alleged a reasonable expectation of privacy in using Zillow's website. MTD 11–13. As

3   explained by the *Cook* court when rejecting the plaintiff's nearly-identical claims:

> At most, the information that GameStop intercepted related to [Ms.
> Cook's] product preferences. Product preference information is not
> personal information. This information is no different from what
> GameStop employees would have been able to observe if Ms. Cook
> had gone into a brick-and-mortar store and began browsing the
> inventory. Her physical movements in the store are like her mouse
> movements, her pauses to look at inventory are like her mouse
> pointer hovering over products, and her picking up video games off
> the shelf are like placing those same titles in her virtual cart. Ms.
> Cook certainly doesn't have a reasonable expectation of privacy in
> this kind of public shopping behavior in the physical world, and she
> doesn't have it in the digital world, either.

11  2023 WL 5529772, at *5. Identical reasoning applies here. Just as Plaintiffs cannot reasonably

12  expect their presence at an open house is "private," they cannot reasonably expect their browsing

13  of a house *online* is "private." This is especially true as to these Plaintiffs, who do not dispute

14  being serial session replay litigants who have knowledge of the kinds of technologies that

15  websites use. MTD 12. Finally, Plaintiffs embrace Zillow's TOU, which incorporates Zillow's

16  Privacy Policy, and do not dispute that Zillow disclosed that it used session replay technology in

17  that Policy.[1] *Compare id.*, *with generally*, Opp'n. The issue here is whether Plaintiffs reasonably

18  could have expected "privacy" in their purported communications on a website that disclosed

19  otherwise. *See State v. Corliss*, 838 P.2d 1149, 1151 (Wash. Ct. App. 1992), *aff'd*, 870 P.2d 317

---

[1] The Court should deny Plaintiffs' request to strike Zillow's Privacy Policy because it is allegedly dated after Plaintiffs *first* visited the Zillow website. Opp'n 34–35. Plaintiffs link to the *current* Zillow TOU in their complaint, and so it is proper for Microsoft to attach the *current* Privacy Policy referenced in those terms. Compl. ¶ 18. And Plaintiffs allege they "routinely visit[]" Zillow's website, *id.* ¶¶ 71–79, and do not deny that the Policy governs current use. The current Policy also links to earlier versions, which include substantially similar disclosures about tracking technology. *See, e.g.*, https://www.zillowgroup.com/previous-privacy-policy/ (effective date January 1, 2020, addressing "Cookies, pixel tags, and other tracking technologies").

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   (Wash. 1994);[2] *see also* Compl. 8 n.12 (citing Pew Research Center Survey that 79% of people

2   know that websites collect online activities). They could not.

3       ***Third,*** Plaintiffs fail to allege that Microsoft "intercepted" any purported

4   communications. *See* MTD 13–14. The Washington Supreme Court has held that to allege an

5   interception, a plaintiff must show that the defendant "stop[ped] . . . before arrival . . . or

6   interrupt[ed] the progress or course" of any communication or conversation. *Id.* (citing *State v.*

7   *Roden*, 321 P.3d 1183, 1188 (Wash. 2014)). Plaintiffs plead only vague, conclusory allegations

8   of interception of communications "between" Plaintiffs and Zillow, and "contemporaneously

9   with their transmission," Compl. ¶¶ 85, 124, 155, 186, 236, but their Opposition confirms they

10  cannot point to any allegation showing that Microsoft collected their purported communications

11  before Zillow, as *Roden* requires. *Compare also* Opp'n 17–18, *with* MTD 13–14 (collecting

12  cases). Plaintiffs' alternative response—that interception need not *prevent* receipt of the

13  communication, Opp'n 18—is a straw man, since Microsoft never argued that.

14      Plaintiffs separately argue (Opp'n 17) they need not allege "interception" to state a WPA

15  claim for "recording." But Plaintiffs do not allege a WPA "recording" claim. *See* Compl.

16  ¶¶ 122–24 (alleging violation of the *interception* prohibition), 118 (mentioning but not invoking

17  the "recording" prohibition). A WPA recording claim is therefore not before the Court, and "[i]t

18  is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

19  dismiss." *Schuyleman v. Barnhart Crane & Rigging Co.*, 2023 WL 5427933, at *3 (W.D. Wash.

20  Aug. 23, 2023) (Robart, J.) (citation omitted).

21      ***Fourth,*** software is not a "device" under the WPA. *See* MTD 14. Plaintiffs' authority

22  does not hold otherwise. *See State v. Novick*, 384 P.3d 252, 254 (Wash. Ct. App. 2016) (cited at

23

24      [2] Plaintiffs attempt to neutralize the *Corliss* decision on the "privacy" element by noting that on appeal the Washington Supreme Court affirmed *Corliss* based on the lack of

25  "interception" by a "device" without reaching whether a "private communication" was at issue. *See* Opp'n 17 n.2. But this hardly undermines the lower court's ruling, i.e., that the defendant assumed the risk that a police informant would allow someone else to listen in to his phone call

26  with the defendant. *See* MTD 13 (discussing *Corliss* in more detail).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Opp'n 18)*. There, the court did not hold that spying software was a "device"; it did not consider the "device" element at all.

**Fifth,** Microsoft established that Plaintiffs consented to Zillow's use of Clarity when they continued using the Zillow website with notice of the Zillow TOUs that incorporate the Privacy Policy. *See* MTD 13–15. Plaintiffs' arguments around online contract formation are irrelevant, as they admit they relied on (and thus agreed to) Zillow's TOU. Comp. ¶¶ 113, 250. Since the Privacy Policy is expressly incorporated into that agreement, they have therefore admittedly accepted the Privacy Policy. *See Stokes v. Bally's Pacwest, Inc.*, 54 P.3d 161, 164 (Wash. Ct. App. 2002) ("[A] person who signs an agreement without reading it is generally bound by its terms as long as there was ample opportunity to examine the contract and the person failed to do so for personal reasons.").

**Sixth,** Microsoft showed that Plaintiffs have not plausibly alleged that Microsoft's conduct caused each of them an injury to their business, person, or reputation. *See* MTD 15–16 (collecting cases). In response, Plaintiffs fail to identify any facts to support their conclusory allegations of "mental anguish," "emotional distress," worry, fear, and "suffering arising from their loss of privacy and confidentiality" Opp'n 19; Compl. ¶¶ 138–39. This does not suffice. *See* MTD 15-16; *Samia v. Experian Info. Sols., LLC*, 2022 WL 298369, at *3 (S.D. Cal. Feb. 1, 2022) (dismissing claims following identity theft in part because plaintiff failed to plead facts to support allegations that he "suffered emotional distress and damage to his credit worthiness").

## C.   Plaintiffs do not state a Missouri Wiretap Act ("MWA") claim.

Plaintiffs do not dispute that the MWA only prohibits interceptions of wire communications involving "*aural* acquisition," Mo. Rev. Stat. § 542.400(6); *see also* MTD 17. Instead, they argue the word "aural" should be read *out* of the statute, primarily based on isolated dicta from *Phillips v. American Motorist Insurance*, 996 S.W.2d 584 (Mo. Ct. App. 1999), mentioning "e-mail" in a hypothetical. *Id.* at 591. But *Phillips* involved tapes of *phone conversations*, not non-aural signals, so the court did not consider whether non-aural interactions

1    could somehow meet the MWA's "aural acquisition" requirement. Nor does the fact the MWA

2    was "mostly modeled" on the FWA make a difference, as Plaintiffs suggest. Opp'n 20. The

3    FWA expressly prohibits the "aural *or other* acquisition" of the contents of a communication. 18

4    U.S.C. § 2510(4) (emphasis added). The MWA does not include the "other acquisition"

5    language. Preemption does not save Plaintiffs' claim, as the FWA only preempts state laws to the

6    extent they afford less protection against wiretapping *by law enforcement*—not civil causes of

7    action. *See Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002); *Popa v. Harriet Carter*

8    *Gifts, Inc.*, 52 F.4th 121, 125–26 (3d Cir. 2022).

9        Unable to satisfy the undisputed "wire communications" element of the MWA, Plaintiffs

10   argue the spirit of *federal* law is "to evolve." Opp'n 22. Even if true, that has no bearing on

11   Missouri law, which prohibits only the interception of "wire communications" and does not

12   extend to "electronic communications" like the FWA. *See* MTD 18–19. Plaintiffs ask the Court

13   to infer otherwise by turning to the hypothetical of a wireless modem, but that is not the

14   technology before the Court here and they cite no case law applying the MWA to "website

15   communications" such as those alleged here, and Microsoft is aware of none. The Court should

16   reject Plaintiffs' invitation to effectively rewrite the MWA's statutory language. *See Duguid*, 141

17   S. Ct. at 1172–73 (courts may not amend statutes even in the face of new technology).[3]

18       While Plaintiffs continue to insist that session replay software code is a "device," they

19   cannot identify a single Missouri court so holding and Microsoft is aware of none. This is

20   unsurprising, as courts have regularly held otherwise under other wiretap laws. *See* MTD 17-18.

21   Plaintiffs' cases all involve different statutes with different language. *See United States v.*

22   *Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (interpreting the FWA as to the

23

24       [3] Law enforcement's obligation to indicate in their wiretap applications "whether the
     interception involves a cellular or other wireless device," Opp'n 22 (citing Mo. Rev. Stat.
25   § 542.408.4(2)) does not, as Plaintiffs suggest, change the plain language of the MWA. That
     administrative requirement likely accounts for the fact the FWA (unlike the MWA) protects
26   cellular communications and, as already discussed, the FWA preempts less-protective state laws
     in the law enforcement context.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 8

interception of "electronic communications," which the MWA does not cover, and "Section 2510(5)'s reference to 'mechanism,'" also not in the MWA); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (interpreting "device" under laws covering electronic communications). Plaintiffs' other cases do not even discuss the "device" requirement. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) (defendant did not raise whether advertising pixel qualified as a "device"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (not addressing whether software was a "device"); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661 (E.D. Tenn. 2012) (never mentioning the word "device").

Finally, it is undisputed that the MWA requires only the consent of *one party* to the conversation and Zillow (an alleged party) undisputedly consented to the use of Clarity. Plaintiffs claim the crime-tort exception applies because they say Zillow intercepted communications for the tortious purpose of violating the Missouri Merchandising Practice Act. *See* Opp'n 22–23 (citing Mo. Rev. Stat. § 542.402.2(3)); Compl. ¶¶ 255–62. Even if that were true (and it is not), it still would not revive Plaintiffs' MWA claim against *Microsoft.* As several courts have clarified, the only the purpose that matters for this exception is that of the alleged interceptor. *See Phillips*, 996 S.W.2d at 589 ("It is not unlawful for a person to intercept a communication . . . or where one of the parties to the conversation has consented to the interception, *provided that he is not doing so* for a 'criminal or tortious' purpose.") (emphasis added); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144–45, 145 n.81 (3d Cir. 2015) (framing analogous inquiry under FWA as whether "the defendant … [has] the intent to use the illicit recording to commit a tort or crime"). Plaintiffs do not (and cannot) allege a criminal or tortious purpose by Microsoft, so Zillow's consent defeats their MWA claims against Microsoft.

**D.   Plaintiffs do not state a California Invasion of Privacy Act ("CIPA") claim.**

Plaintiffs concede they do not allege claims under the first clause of Section 631, requiring dismissal of any such claim. *See* Opp'n 23. Their remaining CIPA claims fail because

1    they have not adequately alleged any of their website interactions constituted the "contents" of a

2    communication. Cal. Penal Code § 631(a). Numerous courts have held that names, addresses,

3    URLs, and information about how someone used a website—the things Plaintiffs allege

4    Microsoft collected—are record information, not "contents" under CIPA. *See* MTD 21–24

5    (collecting cases). Likewise, the court in *Cook* held that "none" of the "mouse movements and

6    clicks, keystrokes, and URLs of web pages visited" allegedly collected by Microsoft's Clarity

7    service "constitutes the 'content' of 'communications.'" 2023 WL 5529772 at *8 (citation

8    omitted).

9        Seeking to side-step these cases, Plaintiffs respond that record information (such as a

10    name) transforms into the content of a communication when typed into a web form. Opp'n 23–

11    24. But their own authority shows otherwise. For example, in *Byars v. Goodyear Tire & Rubber*

12    *Co.*, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023), the court held that a live online conversation

13    with a Goodyear representative constituted the contents of communications because such a

14    conversation "plausibly contain[ed] *more* than mere record [name and address] information." *Id.*

15    at *4 (emphasis added). And in *Katz-Lacabe v. Oracle America, Inc.*, 2023 WL 2838118 (N.D.

16    Cal. Apr. 6, 2023), plaintiffs alleged they input text describing personal medical information into

17    online forms, which the court held was "just barely enough" to plead content under CIPA. *Id.* at

18    *9 (emphasis omitted). Unlike the plaintiffs in those cases, Plaintiffs here allege they input

19    names, address, birth dates, phone numbers, and credit card numbers, which are all well-

20    recognized categories of non-content "record" information, into text fields on the Zillow website.

21    *See* Compl. ¶¶ 71–78; MTD App. A; MTD 22 (collecting cases). Plaintiffs do not describe any

22    website interaction they had with Zillow that contained the "intended message conveyed by [a]

23    communication" (i.e., contents), *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014),

24    and their position that merely typing into webforms transforms record information into content

25    "impermissibly render[s] the distinction between content and non-content in the statute

26    superfluous." *Cook*, 2023 WL 5529772, at *9.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 10

1    Additionally, Plaintiffs do not plausibly allege Microsoft collected any webform

2  information at all. *See* MTD 23–24. The complaint establishes that Clarity includes default

3  masking settings that prevent Microsoft and its customers from collecting data typed into

4  webforms, *see* Compl. ¶ 64; MTD Ex. 2, including the credit score, loan, and "other financial

5  information" vaguely described by some (but not all) Plaintiffs, *see* MTD App. A. Plaintiffs do

6  not allege Zillow changed these default settings, or had any reason to, so they have not met their

7  burden to plausibly allege that Microsoft or Zillow possesses any alleged "contents." *See Cook*,

8  2023 WL 5529772, at *7 (dismissing complaint where plaintiff did not allege that GameStop had

9  changed Clarity's default masking setting or had "in fact, harnessed the capabilities [of Clarity],

10 and it had the result of capturing the contents of specific communications"); *see also Saber*

11 *Interactive Inc. v. Oovee, LTD.*, 2022 WL 5247190, at *8 (W.D. Wash. Oct. 6, 2022) (dismissing

12 claims where plaintiff "pleaded no facts to create a 'reasonable inference' that the identified

13 features are nonfunctional"). Plaintiffs cannot simply brush aside their own allegations about

14 Clarity's masking practices by now claiming masking raises a fact question.

15    Even if Plaintiffs had alleged communications (and they have not), their claim would still

16 fail because they do not plausibly allege that Microsoft acted "intentional[ly]" or "willful[ly]" to

17 intercept their communications. Again, the complaint establishes Microsoft uses default masking

18 to *prevent* collection of text inputs on webforms. Compl. ¶ 64; MTD Ex. 2. Plaintiffs do not

19 dispute that Microsoft prohibits use of Clarity "in connection with content which may contain

20 sensitive user materials, such as . . . financial services" and requires its customers to comply with

21 all privacy laws. *See* MTD Ex. 1 § 1(b)(ii), (iii); MTD 24–25. Thus, even if Plaintiffs had

22 plausibly alleged they provided any such information to the Zillow website (and they have not),

23 that still would not state a claim against Microsoft given the masking procedures and contractual

24 requirements imposed by Microsoft on Zillow—defeating any "intentional" or "willful"

25 argument as to Microsoft. Plaintiffs say a defendant need not intend to violate the law to be

26 found liable, but that ignores that California courts interpret the term "willful" under CIPA to

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 11

1    mean that the defendant *knew* the communications were confidential—something Plaintiffs have

2    not, and cannot, allege here. *See* MTD 24–25 (collecting cases).

3        Plaintiffs similarly fail to meaningfully respond to Microsoft's showing they failed to

4    sufficiently allege facts supporting interception "in transit." *See* MTD 25–26 (discussing

5    *Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022); *In re Vizio, Inc.,*

6    *Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017); *Rosenow v. Facebook, Inc.*, 2020

7    WL 1984062 (S.D. Cal. Apr. 27, 2020)). For one, they do not address or distinguish any of the

8    relevant cases.[4] Opp'n 25–26. And the cases on which they do rely do not apply, as one involved

9    a genuine factual dispute on summary judgment regarding a highly technical patent, *Hazel v.*

10   *Prudential Financial, Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023), and the other

11   provided detailed allegations in the complaint about how the technology intercepted emails "as

12   the communications are sent," *Luis*, 833 F.3d at 630–31. Plaintiffs point to allegations that

13   "wiretapping by Microsoft Clarity was ongoing for the duration of their visits" and that it took

14   only 30 milliseconds "to send the captured Website Communications to Microsoft." Opp'n 26.

15   But they do not explain—and it is hardly evident—how either allegation plausibly supports their

16   conclusion that Microsoft intercepted communications while in transit. Allegations of "potential

17   capabilities" are insufficient. *Cook*, 2023 WL 5529772, at *7.

18   **E.    Plaintiffs' Opposition confirms the rule of lenity should apply here.**

19       Plaintiffs do not deny that each State Wiretap Act alleged is a criminal statute containing

20   civil remedies. Because it is, at a *minimum*, ambiguous whether the terms "communications,"

21   "intercept," "private," and "contents" extend to session replay software, the rule of lenity bars

22   Plaintiffs' State Wiretap Act claims against Microsoft. *See* MTD 26–29; *see also Cook*, 2023

23   WL 5529772, at *8 (observing that mouse movements and clicks have not "historically not been

24   recognized as content" under wiretapping law; and considering them to naturally be "the cyber

25   analog to record information" that could be observed by a security camera in a physical store).

26   _____

[4] Plaintiffs only discuss *Hammerling* with respect to their invasion of privacy claim.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

As Plaintiffs themselves allege, session replay software is ubiquitous and not previously understood to constitute an unlawful wiretap. *See* Compl. ¶¶ 27–31. To now hold this commonplace software amounts to unlawful interception of private communications would "unintentionally turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 863.

Plaintiffs argue the State Wiretap Acts apply to session replay technology because the legislative histories and statutory texts suggest a broad intention "to protect historical privacy rights." Opp'n 27–28. But the Ninth Circuit rejected that exact argument in *hiQ Labs v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022). There, and contrary to Plaintiffs' contention that the court failed to consider "applying a criminal law civilly to emergent technologies," Opp'n 28, the court considered whether "scraping" data from LinkedIn's website in violation of a cease-and-desist letter was "without authorization" under the Computer Fraud and Abuse Act ("CFAA"). It answered "no" and applied the rule of lenity to the term "without authorization" "so as not to turn a criminal hacking statute into a 'sweeping Internet-policing mandate.'" *hiQ Labs*, 31 F.4th at 1200–01. Importantly, the court so held *even though* the broad statutory purpose of the CFAA was to prevent digital trespass. *Id.* The Court should apply the same rationale here, where the Wiretap Acts language is at least as ambiguous as "without authorization" under the CFAA.

Nor may courts inject new meaning into old statutes to keep up with changing technology, as Plaintiffs suggest. In the Supreme Court's words: "Court[s] must interpret what Congress wrote." *Duguid*, 141 S. Ct. at 1172–73 (rejecting plaintiffs' argument because the touchstone of statutory interpretation is the plain meaning, not the broad legislative purpose; and refusing to interpret robocall prohibition to reach new technologies not prohibited by the statute's plain language, even though the statute's underlying purpose was to prevent nuisance calls).[5]

---

[5] Plaintiffs misconstrue an out-of-district case on personal jurisdiction and virtual contacts in urging this Court to reimagine the State Wiretap Acts. *See* Opp'n 28–29 (citing *Fin. Software Sys. v. Questrade, Inc.*, 2018 WL 3141329, at *5 (E.D. Pa. June 27, 2018)).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Plaintiffs wholly ignore *Gray v. Twitter Inc.*, 2021 WL 11086642 (W.D. Wash. Mar. 17,

2    2021). But *Gray*, like *hiQ Labs*, underscores how common terms are at least ambiguous in the

3    context of evolving technology—there, whether the term "telephone record" encompasses a

4    "telephone number." *Id.* at *9. Similarly, the average person would not understand session replay

5    technology as amounting to wiretapping. Yet "[w]hen statutes have criminal consequences, the

6    average person must be able to read the statute and understand what is, and what is not,

7    prohibited." *Id.* (citations omitted). The rule of lenity applies, and the Court should dismiss

8    Plaintiffs' wiretapping claims on this basis, too.

9    **F.  Plaintiffs do not state a claim for invasion of privacy.**

10    Plaintiffs have not pleaded facts sufficient to state their primary (Washington) or

11    alternative (Illinois and Missouri) claims for common law intrusion upon seclusion against

12    Microsoft.[6] These claims require both (1) a reasonable expectation of privacy, and

13    (2) unreasonable or highly offensive conduct—both of which are lacking here. Nor do Plaintiffs

14    dispute (or acknowledge) that a federal court already dismissed an invasion of privacy claim by

15    Plaintiff Ashley Popa related to similar technology, *Popa*, 426 F. Supp. 3d at 122–23, and that

16    the *Cook* court recently rejected the same claims involving the same Clarity service at issue here,

17    2023 WL 5529772, at *10.

18    **1.  Plaintiffs do not allege a reasonable expectation of privacy or "unreasonable"
         or "highly offensive" conduct by Microsoft.**

19
20    Plaintiffs cannot satisfy the first element of any of their common-law privacy claims—a

     reasonable expectation of privacy—for multiple, overlapping reasons:

21
     - As the *Cook* court already held with respect to Clarity's alleged use on
22
        Gamestop's website, mouse clicks, browsing behavior, and name, address,
23
        financial, and other types of data input into texts fields on a website are not
24
        private facts as a matter of law, 2023 WL 5529772, at *10; *see also supra* 7–8;
25

26    ───────────────
     [6] Plaintiffs do not bring a Pennsylvania common law claim against Microsoft. *Compare*
     Opp'n 29, *with* Compl. ¶¶ 159–72.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

- Plaintiffs admit Clarity has default masking settings, and do not deny that these settings would have prevented Microsoft from collecting information Plaintiffs entered into text fields, *see* Compl. ¶ 64; MTD Ex. 2. As in *Cook*, where Clarity masking processes were described in the complaint in the same manner and detail as here, the masking processes establish that Clarity did not "in fact … harness[] the capabilities" described in Plaintiffs' complaint. 2023 WL 5529772, at *7.

- Plaintiffs do not dispute that Zillow discloses its use of "tracking technologies" in *both* its current and historical privacy policies, *see supra* note 1;

- Plaintiffs cannot deny that they are serial litigants with knowledge about how session replay technology works, *see* MTD App. B (table of prior lawsuits); and

- Plaintiffs affirmatively allege that most consumers are aware that information about their online activities is collected. *See* Compl. ¶ 31; *id.* 8 n.12 (citing 2019 Pew Research Center survey).

These alleged and/or admitted facts negate any reasonable expectation of privacy here. Plaintiffs' cases do not lead to a different outcome. Opp'n 30–32. Unlike in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 601–02 (9th Cir. 2020), Plaintiffs point to nothing in the Zillow TOU or Privacy Policy that led them to believe Zillow's website would not use third-party tracking technologies. Nor do Plaintiffs allege they took action to block Zillow from collecting data from them. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 151 (reasonable expectation of privacy where plaintiffs activated a cookie blocker). Instead, Plaintiffs' allegations show they were aware Zillow used tracking technologies like Clarity because they know such technologies are common-place and they acknowledge the Zillow TOUs, which incorporate the Privacy Policy expressly disclosing this practice. Plaintiffs' other cases are inapposite. *See United States v. Forrester*, 512 F.3d 500, 510 & n.6 (9th Cir. 2008) (addressing constitutional state action by law enforcement, not civil conduct).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 15

1    ***Second***, Plaintiffs neither allege facts showing "unreasonable" or "highly offensive"

2    conduct by Microsoft, nor distinguish Microsoft's cases. *See* MTD 31–33 (collecting cases).

3    Plaintiffs do not dispute that Microsoft's default masking policy prevents the collection of user-

4    input text. *See* Compl. ¶ 64; MTD Ex. 2. And they do not deny that Microsoft requires customers

5    to comply with all privacy laws and prohibits websites from using Clarity to collect sensitive

6    data such as financial data. *See* MTD 29–32; Ex. 1 § 1(b)(ii). Under those circumstances, even

7    taking all Plaintiffs allegations as true,[7] Microsoft's conduct in providing Zillow a service to

8    better understand customer engagement on Zillow's website is hardly "highly offensive."

9    Plaintiffs do not cite a single remotely analogous case, and the most analogous case—*Cook*,

10   involving the very same Microsoft technology—unequivocally held otherwise: "The information

11   that GameStop allegedly intercepted does not clear this threshold." 2023 WL 5529772, at *4

12   (relating to "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other

13   electronic communications in real-time").

14        Plaintiffs' own cases support Microsoft's position here. *See* Opp'n 32–33. The Third

15   Circuit affirmed dismissal of privacy claims against Google because third-party cookies were

16   common and "can serve legitimate commercial purposes," even when used to track the web

17   activities of children. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016).

18   And while the *Nickelodeon* court allowed claims against Viacom to proceed, that was because

19   Viacom, unlike here, affirmatively represented to parents that it *would not* collect children's

20   personal information, such that they may have "created an expectation of privacy on Viacom's

21   websites [and] encouraged parents to permit their children to browse those websites under false

22   pretenses." *Id.* at 295.

---

23   [7] Paragraph 48 of the complaint even references an article that describes session replay

24   code as "likely fully legal[.]" Mark Huffner, *Is 'session replay software' a privacy threat or just improving your web experience*, Consumer Affairs (Oct. 25, 2022),

25   https://www.consumeraffairs.com/news/is-session-replay-software-a-privacy-threat-or-just-improving-your-web-experience-102522.html. It explains, "session replay was mainly used for

26   troubleshooting and diagnostics. It's useful for finding chokepoints where users are getting stuck or confused."

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 2.   Plaintiffs' Washington and Illinois invasion of privacy claims fail for additional reasons.

Washington law requires, but Plaintiffs have not alleged, that Microsoft was "substantially certain" it lacked the necessary permission to deploy Clarity on Zillow's website. MTD 33. Plaintiffs do not dispute that Microsoft makes Clarity available to website owners who must comply with all laws when they use it. *See* MTD Ex. 1 § 1(b)(ii). On these facts, Plaintiffs cannot allege (and have not alleged) that Microsoft was "substantially certain" that it lacked necessary permission to provide session replay software to Zillow. MTD 25, 33. The detours in Plaintiffs' Opposition into whether Zillow' Privacy Policy was browsewrapped or clickwrapped have no bearing on Microsoft's certainty around lack of consent.

And as for their Illinois claim, Plaintiffs point to no factual allegations showing they suffered injury as a result of Microsoft's conduct as Illinois law requires. *See* MTD 33–34. As explained, Plaintiffs' assertions of mental anguish, emotional distress, and suffering are factually unsupported and implausible. *See supra* 9; MTD 16, 33–34. And any such distress would not have been caused by *Microsoft* here given its requirements surrounding use of Clarity; its masking procedures; and Zillow's disclosure that it uses tracking technologies. And intrusion upon seclusion is not itself an injury under Illinois law. *See Schmidt v. Ameritech Ill.*, 768 N.E.2d 303, 316 (Ill. App. Ct. 2002) (requiring "actual injury *in the form of*, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community").

### III.   CONCLUSION

For the foregoing reasons and those in its Motion to Dismiss, Microsoft respectfully requests that the Court dismiss Plaintiffs' complaint against it with prejudice.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    DATED: September 8, 2023

2

3    I certify that this brief contains 5,987 words, in compliance with the Local Civil Rules

4    and this Court's Order of September 6, 2023.

5

6

7                                    By: */s/ Nicola C. Menaldo*

8                                        Nicola C. Menaldo, Bar No. 44459
                                         Anna Mouw Thompson, Bar No. 52418
9                                        **Perkins Coie LLP**
                                         1201 Third Avenue, Suite 4900
10                                       Seattle, Washington 98101-3099
                                         Telephone: +1.206.359.8000
11                                       Facsimile: +1.206.359.9000
                                         NMenaldo@perkinscoie.com
12                                       AnnaThompson@perkinscoie.com

13                                       James G. Snell, Bar No. 173070
                                         **Perkins Coie LLP**
14                                       3150 Porter Drive
                                         Palo Alto, California 94304-1212
15                                       Telephone: +1.650.838.4300
                                         Facsimile: +1.650.838.4350
16                                       JSnell@perkinscoie.com

17                                       *Attorneys for Defendant Microsoft Corporation*

18

19

20

21

22

23

24

25

26

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:22-cv-01282-JLR) – 18