The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| *In Re: Zillow Group, Inc. Session Replay Software Litigation*<br><br>This Document Refers to: All Actions | Master File No. 2:22-cv-01282-JLR<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## **TABLE OF CONTENTS**

**ARGUMENT**

I. Plaintiffs Have Article III Standing Because the Interception of Their Communications Was an Invasion of Privacy, a Harm that Has Been Traditionally Protected at Common Law, and the Wiretapping Statutes' Heightened Protection of Communications Meets *Spokeo*'s test. ........................................................................................ 2

II. Courts Denying Standing in Session Replay Cases Have Erred in Three Main Ways. 6

III. Each Plaintiff Alleged that Session Replay Code Disclosed Sensitive Information to the Session Replay Providers. ........................................................................................ 8

**CONCLUSION** ............................................................................................................................ 9

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - i

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ................................................................................................3, 8

*Cook v. GameStop, Inc.*,
  --- F. Supp. 3d ---, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) .........................................2

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ........................................................................................... passim

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................................... passim

*Garcia v. Build.com, Inc.*,
  No. 22-CV-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ........................9

*In re Google Referrer Header Priv. Litig.*,
  465 F. Supp. 3d 999 (N.D. Cal. 2020) .....................................................................................8

*Lightoller v. Jetblue Airways Corp.*,
  No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ................2, 6, 7, 8

*Mikulsky v. Noom, Inc.*,
  No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023) ..................2, 6, 7

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .........................................................................2

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ......................................................................................................... passim

*State v. Corliss*,
  838 P.2d 1149 (Wash. App. Ct. 1992), *aff'd*, 870 P.2d 317 (Wash. 1994) ............................4

*Straubmuller v. JetBlue Airways Corp.*,
  Civil Action No. DKC 23-384, 2023 WL 5671615 (D. Md. Sept. 1, 2023) ..........................2

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................................1, 3, 6, 7

*In re Vizio, Inc. Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................................................6

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - ii

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Yockey v. Salesforce, Inc.*,
   No. 22-CV-09067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ..............................4, 9

**Statutes**

CIPA ...................................................................................................................................4, 7

FCRA .......................................................................................................................................7

Federal Wiretap Act ................................................................................................................3

Privacy Act ..............................................................................................................................6

Video Privacy Protection Act .................................................................................................4

VPPA .......................................................................................................................................5

**Other Authorities**

Rule 12(b)(6) ...........................................................................................................................5

www.zillow.com ......................................................................................................................1

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - iii

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF STANDING

Plaintiffs' standing does not turn on whether they allege that the Defendants' wiretapping resulted in the interception of "sensitive" or "personal" information. Rather, Defendants' very act of intruding upon Plaintiffs' right to privacy in their communications confers standing because the statutes at issue expanded common law privacy protections in exactly that way. On September 11, 2023, this Court issued an Order directing the parties to brief the issue on whether Plaintiffs have standing to pursue their claims against Defendants Zillow Group, Inc. ("Zillow") and Microsoft Corporation ("Microsoft") (together, "Defendants"). ECF No. 64. Respectfully, the Court should not follow the decisions in other Session Replay Code-related cases that have failed to find Article III standing for such claims, as those opinions wrongly apply binding Supreme Court and Ninth Circuit precedent regarding Article III standing.

As the Supreme Court and Ninth Circuit have explained, the invasion of a legal right created by statute is sufficient to confer an Article III injury-in-fact where the alleged statutorily-protected harm has a *close relationship* to a harm that has traditionally been regarded as providing a basis for common law actions, such as reputational harms, the disclosure of private information, and intrusion upon seclusion. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Spokeo v. Robins*, 578 U.S. 330 (2016); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). There is no requirement that the harm be an exact duplicate, as other courts analyzing standing in Session Replay Code cases have incorrectly suggested. *See TransUnion*, 141 S. Ct. at 2209 ("we do not require an exact duplicate"). The opinions that denied standing identified on page three and four of the Court's Order all failed to follow Ninth Circuit law. Indeed, looking at controlling Ninth Circuit authority, Defendants' invasion of Plaintiffs' privacy through the use of Session Replay Code embedded on www.zillow.com lies safely within the zone of harms that legislatures may identify for statutory protection and that *do* satisfy Article III when incurred.

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Indeed, being victimized by wiretapping bears a close relationship to the invasion of personal rights that are protected by the common law tort of an invasion of privacy, meaning that Defendants' intrusions are "not at all like the sort of 'bare procedural violation' that the Supreme Court has said would fall short of an Article III injury." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). As such, Plaintiffs have Article III standing to pursue their claims against Defendants.

## ARGUMENT

**I. Plaintiffs Have Article III Standing Because the Interception of Their Communications Was an Invasion of Privacy, a Harm that Has Been Traditionally Protected at Common Law, and the Wiretapping Statutes' Heightened Protection of Communications Meets *Spokeo's* test.**

This Court has asked Plaintiffs to address why they have Article III standing in light of recent decisions in other Session Replay Code cases, including *Straubmuller v. JetBlue Airways Corp.*, Civil Action No. DKC 23-384, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023); *Cook v. GameStop, Inc.*, __ F. Supp. 3d __, 2:22-cv-1292, 2023 WL 5529772, at *3–4 (W.D. Pa. Aug. 28, 2023); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023); and *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023).

However, each of these cases rests on the mistaken notion that plaintiffs in Session Replay Code cases have not suffered an Article III injury-in-fact unless Session Replay Code captured information that the reviewing court subjectively deems to be private, sensitive, or personally identifying information. *See, e.g.*, *Lightoller*, 2023 WL 3963823, at *5 ("Plaintiff does not allege that Defendant recorded or collected any of her personal information."); *GameStop, Inc.*, 2023 WL 5529772, at *4 ("Ms. Cook did not enter any personally identifying information at any point during her interaction."). This failure to recognize the broader concrete protections afforded by the statutes in question cannot be reconciled with the holdings of *Eichenberger* and *In re Facebook*, both of which remain good law and are binding on this Court.

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

In determining whether "an alleged intangible harm" is concrete, courts may "consider whether [the] harm has a close relationship to a harm that has traditionally been regarded as providing a basis" for common law actions. *Spokeo*, 578 U.S. at 341. "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 141 S. Ct. at 2204.[1] Courts must "afford due respect" to a legislature's "decision to impose a statutory prohibition or obligation on a defendant," and when a statute's protections have a close relationship to a traditionally recognized harm, legislatures may "'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* at 2204–05 (quoting *Spokeo*, 578 U.S. at 341). This precisely explains why Plaintiffs have standing.

The Ninth Circuit squarely held on numerous occasions that statutes protecting privacy interests—such as anti-wiretapping and anti-disclosure laws—pass the *Spokeo* test because invasion of privacy is a harm that has long been actionable at common law. *In re Facebook, Inc.*, 956 F.3d at 598–99 (explaining that the Federal Wiretap Act and similar state laws "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing," and listing further cases); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116–19 (9th Cir. 2020) (similar); *Eichenberger*, 876 F.3d at 983–84 (finding that the Video Privacy beyond the statutory violation, a plaintiff does not need to "allege any further harm to have standing.").

In short, once a court discerns that a statutory cause of action emerged from a legislature's decision to codify a particular form of privacy protection, the plaintiff can establish standing by alleging that the defendant's violation of the statute caused harm to the plaintiff's protected privacy interests. Nothing more is required. *See Campbell*, 951 F.3d at 1117 ("When . . . a

---

[1] Importantly, *TransUnion* did not break any new ground on the meaning of a concrete harm. *TransUnion* merely reaffirmed the conclusion already reached in *Spokeo*: "bare procedural violation[s], divorced from any concrete harm" do not confer standing. *TransUnion*, 141 S. Ct. at 2213 (quoting *Spokeo*, 578 U.S. at 341).

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

statutory provision identifies a substantive right that is infringed any time it is violated, a plaintiff bringing a claim under that provision 'need not allege any further harm to have standing.'") (quoting *Eichenberger*, 876 F.3d at 983–84).

Here, the various wiretapping laws Plaintiffs allege Defendants violated reflect their respective state legislatures' decisions to codify certain privacy protections in communications. *See, e.g.*, *Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2023 WL 5519323, at *3 (N.D. Cal. Aug. 25, 2023) (quoting *In re Facebook, Inc.*, 956 F.3d at 598) ("Statutes such as CIPA and WESCA thus codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."); *State v. Corliss*, 838 P.2d 1149, 1150 (Wash. App. Ct. 1992), *aff'd*, 870 P.2d 317 (Wash. 1994) ("The primary purpose of the [Washington Wiretap Statute] is the protection of individuals' privacy from public dissemination (even in trial) of illegally obtained information."). Put differently, the statutes' expansion of protection to a wider range of information than would be protected by common law torts is *precisely* the type of "elevation" of an intangible harm to a concrete injury that the Supreme Court blessed in *Spokeo*.

The Ninth Circuit's analyses in *Eichenberger* and *In re Facebook* provide the road map this Court must follow, and they demonstrate that the question of Plaintiffs' standing does not entail a qualitative assessment of the *sensitivity* of the communications allegedly intercepted. The statutes expanded the right of privacy beyond the common law, so that the specific content being communicated is no longer determinative of whether legal protection and a presumption of privacy attaches. The *entire* purpose of the statutes was to protect privacy in communications more generally, without regard to whether any particular type of "sensitive" information is being conveyed.

The plaintiff in *Eichenberger* alleged that ESPN violated the Video Privacy Protection Act ("VPPA") by disclosing to a third party the plaintiff's Roku device serial number and the identity of the videos he watched. *Eichenberger*, 876 F.3d at 981. The Ninth Circuit noted that the statute provided a "substantive privacy interest" in consumers' video viewing histories, and

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

did not "protect only against harms such as embarrassment and harassment." *Id.* at 983. Because "[v]iolations of the right to privacy have long been actionable at common law," the VPPA protected a substantive right the legislature could codify as a concrete harm, unlike the "procedural" violation at issue in *Spokeo*. *Eichenberger*, 876 at 983–84. Therefore, the plaintiff could show standing simply by alleging a violation of the VPPA, which is exclusively connected to the protection of privacy rights. *Id.*

The Ninth Circuit did not follow the reasoning used by some district courts addressing Session Replay Code—namely whether the sensitivity or personally identifiable qualities of the information at issue should be weighed. *See id.* at 982–84. Instead, the Ninth Circuit held that the plaintiff failed to state a VPPA claim because the two types of information disclosed by ESPN (device serial number and viewing history) were not by themselves "personally identifiable information" as required by the statute. *Id.* at 985–86.

Similarly, in *In re Facebook, Inc.*, the Ninth Circuit's standing analysis turned on the fact that the statutes providing the causes of action brought by the plaintiffs were codifications of substantive rights to privacy, and thus the alleged statutory violations gave rise to concrete injuries. *In re Facebook, Inc.*, 956 F.3d at 598. When looking at the standing question, the court did not engage in any evaluation of how "sensitive" URL or IP address information is, and the Ninth Circuit specifically noted that the allegations concerned tracking of this data "'no matter how sensitive' or personal users' browsing histories were.'" *Id.* at 598 (emphasis added). Only later in the opinion did the Ninth Circuit assess whether plaintiffs could have a reasonable privacy expectation in the type of information collected. *Id.* at 603–06. Rather than deciding the issue as a matter of law (as other courts addressing Session Replay Code have), the Ninth Circuit found that these issues could not be resolved at the pleading stage. *Id.* at 606.

In both cases, the Ninth Circuit's separate treatment of the standing question and the allegations needed to state the elements of a claim is the correct approach that this Court is bound to follow. The latter issue is not a jurisdictional question and is properly addressed under a Rule

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

12(b)(6) analysis. *See also In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017) (rejecting defendant's argument that plaintiffs lacked standing because the disclosed information was not personally identifiable and noting that "this argument improperly conflates the merits" with standing).

In sum, Plaintiffs' standing does not derive from the "mere" violation of a statute. Rather, Plaintiffs' standing derives from the invasion of their privacy interests as protected by statutes that satisfy the test established in *Spokeo*. The interception of Plaintiffs' communications with Zillow's website by Microsoft, with Zillow's participation, caused Plaintiffs to suffer a concrete and particularized injury. Plaintiffs therefore have standing to pursue their claims.

## II. Courts Denying Standing in Session Replay Cases Have Erred in Three Main Ways.

The recent district court decisions addressing standing in Session Relay Code cases are wrongly decided because they fail to follow the directly analogous reasoning in *Eichenberger* and *In re Facebook, Inc.*, and they entirely disregard the Supreme Court's admonition that legislatures may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *TransUnion*, 141 S. Ct. at 2204–05 (quoting *Spokeo*, 578 U.S. at 341).

For example, in both *Lightoller* and *Noom*, the courts dismissed claims under the California Invasion of Privacy Act ("CIPA") because they found that the plaintiffs failed to allege what personal information they input on the respective websites. *See Lightoller*, 2023 WL 3963823, at *4; *Noom*, 2023 WL 4567096, at *5. However, these decisions erred in at least three ways.

First, the *Lightoller* court erred when it wrongly believed that the Ninth Circuit's decision in *In re Facebook* was abrogated by *TransUnion*. *See Lightoller*, 2023 WL 3963823 at *3 (characterizing *In re Facebook* as "untenable in light of the Supreme Court's holding in *TransUnion* that 'Article III standing requires a concrete injury even in the context of a statutory violation.'"). But the *TransUnion* decision simply applies the *Spokeo* test to a FCRA case; it does

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

not—in any way—change the law of standing as laid out in *Spokeo*. *See TransUnion*, 141 S. Ct. at 2204–05 (reiterating *Spokeo*'s recognition that legislatures may elevate harms to actionable legal status even if they were previously inadequate in law, provided they bear a "close relationship" to harms traditionally recognized as protected at common law). In fact, the passage that *Lightoller* implies is "new" in *TransUnion* is just a quotation from *Spokeo*, meaning that it was already the law when *Eichenberger* and *In re Facebook* were decided by the Ninth Circuit. *See Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Second, both the *Lightoller* and *Noom* courts failed to acknowledge that the Supreme Court expressly held that legislatures may "elevate" previously non-cognizable injuries into actionable ones, provided that the harm bears a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit. *TransUnion*, 141 S. Ct. at 2204–05. Instead of recognizing that CIPA properly extends ("elevates") privacy protections to communications that (arguably) may not have been protected at common law, the *Lightoller* and *Noom* courts ignored this legislative power and displaced the substantive statutory protections with the courts' own judgment about what information is sufficiently "personal" or "private" to give rise to protectable privacy interest. See *Lightoller*, 2023 WL 3963823 at *4; *Noom*, 2023 WL 4567096, at *5–6. Thus, the courts limited the scope of cognizable concrete harms to only those traditionally protected at common law, disregarding the Supreme Court's clear holdings that "*Spokeo* does not require an exact duplicate in American history and tradition," and that "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *TransUnion*, 141 S. Ct. at 2204.

*Third*, the factual distinctions the *Lightoller* court attempted to draw between the case before it and *In re Facebook* do not appear to exist when the precise facts of the cases are compared. User browsing histories, in the form of URLs and IP addresses, were the only data

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

that the *Facebook* plaintiffs alleged the defendant surreptitiously obtained. *See In re Facebook*, 956 F.3d at 596. Although the *Lightoller* plaintiff, like Plaintiffs here, alleged that Session Replay software resulted in the interception *of this same type of data*, the court suggested that the data at issue in *In re Facebook* was somehow "more personal." *See Lightoller*, 2023 WL 3963823 at *4 (noting plaintiff's allegations that text entries and "URLs of webpages visited" were intercepted); *id.* at *5 (attempting to distinguish *In re Facebook* as "involv[ing] the tracking and collecting of sensitive personal information"). However, as another district court pointed out, "the Ninth Circuit did not rest its decision in either [*Campbell* or *In re Facebook*] on the particular type of data at issue." *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020). Instead, the Ninth Circuit looked to the type of information protected by the statute at issue and whether the harm protected against had roots in common law. It did in those cases, so the statutes acceptably "elevated" the harms they prohibited into concrete injuries.

### III. Each Plaintiff Alleged that Session Replay Code Disclosed Sensitive Information to the Session Replay Providers.

In any event, each Plaintiff alleged they entered private information on Zillow's website. *See* CAC ¶ 73 ("Plaintiff Huber has substantively engaged with Zillow's website to browse homes available for purchase, update her housing information, and has entered personal and financial information, such as name, address, date of birth, phone number, credit score range, current loans, and estimates of loans into text fields and Zillow questionnaires."); ¶ 75 ("Popa . . . entered personal and financial information, such as name, address, date of birth, phone number, credit card, and other financial information into text fields."); ¶ 72 (same for Plaintiff Hasson); ¶ 76 (same for Plaintiff Strezlin); ¶ 77 ("Adams has substantively engaged with Zillow's website and has entered information into text fields."); ¶ 78 (same for Plaintiff Adams' minor child H.A.).

Plaintiffs further allege that this information was intercepted by the Session Replay Code embedded on Zillow's website to various Session Replay Providers, including Microsoft, who then used certain device and browser information to create unique IDs and profiles for Plaintiffs.

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

*See* CAC 82–83. Such allegations are sufficiently concrete and particularized to confer Article III standing. *See Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2023 WL 5519323, at *3 (N.D. Cal. Aug. 25, 2023) (finding plaintiffs had standing where they "allege[d] that they disclosed personal health information over Chat and that Salesforce collected the communications containing that information."); *Garcia v. Build.com, Inc.*, No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) (allegations that defendant "secretly intercepted and recorded Plaintiff's chat messages without informing her and without her consent" stated a concrete and particularized injury).

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully submit that under binding Ninth Circuit authority, they have standing to pursue their claims.

I certify that this memorandum contains 2951 words, in compliance with the Local Civil Rules and this Court's Order of September 11, 2023.

DATED this 18th day of September, 2023.

**TOUSLEY BRAIN STEPHENS PLLC**

By: *s/ Kim D. Stephens, P.S.*
    Kim D. Stephens, P.S., WSBA #11984
    kstephens@tousley.com
    Jason T. Dennett, WSBA #30686
    jdennett@tousley.com
    Kaleigh N. Boyd, WSBA #52684
    kboyd@tousley.com
    1200 Fifth Avenue, Suite 1700
    Seattle, Washington 98101
    Telephone: 206.682.5600
    Fax: 206.682.2992

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (admitted *pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

*/s/ Gary F. Lynch*
Gary F. Lynch (admitted *pro hac vice*)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
gary@lcllp.com

*Counsel for Plaintiffs*

PLAINTIFFS' SUPPLEMENTAL BRIEF ON STANDING - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992