UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re: ZILLOW GROUP, INC. SESSION REPLAY SOFTWARE LITIGATION,

This Order Relates To: All Actions

MASTER CASE NO. C22-1282JLR

ORDER

## I. INTRODUCTION

Before the court are motions to dismiss filed by Defendants Microsoft Corporation ("Microsoft") and Zillow Group ("Zillow") (together, "Defendants"). (MSFT MTD (Dkt. # 96); MSFT Reply (Dkt. # 102); Zillow MTD (Dkt. # 97); Zillow Reply (Dkt. # 101); *see* 2d Am. Compl. (Dkt. # 89).) Plaintiffs[1] oppose both motions. (MSFT Resp.

[1] Plaintiffs are Natalie Perkins, Jamie Huber, David Kauffman and Jill Strelzin ("Plaintiffs"). (*See* 2d Am. Compl. ¶¶ 13, 15, 16, 18.) Former Plaintiffs Kenneth Hasson, Ashley Popa, and Jill Adams on behalf of herself and her minor child, H.A, voluntarily

(Dkt. # 100); Zillow Resp. (Dkt. # 99).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS in part and DENIES in part Defendants' motions.

## II. BACKGROUND

In this action, Plaintiffs allege that Zillow embedded into its website code created by third parties (including Microsoft) that intercepted Plaintiffs' personal and financial information and transmitted that information to the third parties without Plaintiffs' knowledge and consent. (*See generally* 2d Am. Compl.[3]) Below, the court summarizes Plaintiffs' factual allegations and the procedural background of this case.

### A. Factual Background

#### 1. Zillow

Zillow is the "leading online residential real estate marketplace in the United States for consumers, connecting them to the information and real estate professionals they need to buy, sell, or rent a home." (2d Am. Compl. ¶ 74 (citation omitted).) Plaintiffs allege that Zillow "procures numerous third-party vendors, including Micosoft, to embed snippets of JavaScript computer code" called "Session Replay Code" on its website, www.zillow.com, to track and analyze visitors' interactions with the site. (*Id.* ¶¶ 2, 76.) The Session Replay Code "intercepts and records the visitor's real-time

---

dismissed their claims on June 22, 2026. (*See* 2d Am. Compl. ¶¶ 14, 17, 19-20; Not. of Dismissal (Dkt. # 107).)

[2] Although the parties request oral argument, the court concludes that oral argument would not assist it in its resolution of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court takes as true the facts alleged in the second amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

electronic communications with the website, including not only mouse movements, finger swipes, clicks, and page navigation," but also information that the visitor enters into forms on the website. (*Id.* ¶¶ 2-3; *see also id.* ¶ 5 (alleging that Session Replay Code collects real estate search parameters such as property address, cities, zip codes, and the amount the visitor is willing to pay for a property, in addition to financial information used to determine mortgage qualification and estimated monthly costs).) As a result, when website visitors communicate with Zillow through its website, the information they enter is transmitted not only to Zillow, but also to "Sesson Replay Providers" including "Microsoft, FullStory, Google, Meta, TikTok, Snapchat, Yahoo[,] and other third-party advertising exchanges." (*Id.* ¶ 6.)

Zillow also allegedly procures other third-party vendors for the purpose of creating consumer profiles. (*See id.* ¶ 111.) First, some third-party vendors, such as LiveRamp, use the information captured by the Session Replay Providers to link consumers' browsing activity—including information consumers enter into Zillow's website—to specific households or individuals to create profiles. (*Id.* ¶¶ 8-9.) Second, Zillow "employs a number of additional tracking technologies such as Google Ads, DoubleClick, Bing Ads, Facebook Pixel, Snapchat[,] and Yahoo along with mapping technologies to map cookies and device IDs to specific users and cross site identifiers to link user information across various third-party Session Replay Providers." (*Id.* ¶ 60.) Plaintiffs allege that some of these entities capture enough information to "fingerprint" a visitor, which enables the entities "to create a full internet browsing profile of website visitors across all websites that these third parties are monitoring[.]" (*Id.* ¶ 78; *see also*

*id.* ¶¶ 79-80 (describing how one of these third parties allegedly functions on Zillow's website).) Finally, according to Plaintiffs, Zillow has procured several entities "in the business of sharing identifiers with many different publishers to help data brokers create a more fulsome consumer profile[,]" such as "Trade Desk, Xandr, PubMatic, Rubison, and Teads." (*Id.* ¶ 82.) These consumer profiles are valuable because they give the third parties a competitive advantage in selling advertising and marketing services. (*Id.* ¶¶ 83-84.)

2. Microsoft

Microsoft is the owner and operator of Clarity, a Session Replay Code that "provides basic information about website user sessions, interactions, and engagement, and breaks down users by device type, county, and other dimensions." (*Id.* ¶ 87.) Clarity's features include session recordings, heatmaps, and machine-learning insights that help website operators like Zillow visualize and understand their visitors' behavior. (*Id.* ¶¶ 88-92.) Clarity captures information about a visitor's interactions with the website such as mouse movements and clicks, window scrolling and resizing, and text inputs, and organizes that information into over 30 different categories. (*Id.* ¶ 90.) It also assigns a user ID to each website visitor so that it can monitor the visitor's use of and interactions with the website over time. (*Id.*) The data Clarity collects "can then be used to play back a user's journey through a website, showing how they interacted with site navigation, calls to action, search features, and other on-page elements." (*Id.* ¶ 91.)

Clarity offers three levels of data masking—strict, balanced, and relaxed—which the website operator can use to customize the data that is visible in Clarity's session

recordings. (*Id.* ¶¶ 94-95.) By default, Clarity is set to use balanced masking, which hides all numerical data that users enter into a website. (*See* MSFT MTD, Ex. 1 ("*Masking Content*"); 2d Am. Compl. ¶ 94 n.69 (citing *Masking Content*).[4]) The data Clarity collects is stored in Microsoft's Azure cloud service and is accessible to Microsoft. (2d Am. Compl. ¶ 100.)

3. Plaintiffs' Experience with Zillow's Website

Plaintiffs allege that the Session Replay Code that Zillow embedded on its website intercepted their communications with Zillow's website without their consent and sent that information to third-party Session Replay Providers, including Microsoft. (*Id.* ¶ 111; *see also id.* ¶¶ 117 (listing the third-party entities to which the Session Replay Code allegedly transmitted Plaintiffs' communications), 102-09 (describing each Plaintiff's interactions with Zillow's website).) They assert that when they "visited the Zillow website and input personal and financial information, unbeknownst to them, and without their consent, Zillow collected and transmitted their communications to Microsoft, FullStory, Google, Meta, TikTok, Snapchat, Reddit, Pinterest, Yahoo, Trade Desk, Clicktail" and other Session Replay Providers. (Zillow Resp. at 1 (citing 2d Am. Compl. ¶¶ 6, 111-17).)

With respect to Microsoft, Plaintiffs allege that they each "personally visited the Zillow Website [and] personally engaged in substantive communications with Zillow, all

[4] Plaintiffs do not dispute that *Masking Content* is incorporated by reference into their second amended complaint. (*See* MSFT Resp. at 38-39 (seeking only to strike Microsoft's Exhibits 2 and 4)); *see United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

of which were surreptitiously intercepted by Microsoft's Clarity without their consent as a matter of uniform practice." (MSFT Resp. at 6; *see also* 2d Am. Compl. ¶¶ 102-09 (describing each Plaintiff's interactions with Zillow's website), 113-15 (screenshots showing examples of data captured by Clarity).) Plaintiffs allege that Clarity has thereby collected their "highly personal information and substantive communications that can be tied directly to a website user's identity[.]" (*Id.* ¶ 93.)

In sum, Plaintiffs allege that Zillow "procured" multiple Session Replay Providers—including Clarity—and disclosed their personal information to multiple third parties through the third parties' Session Replay Code and other tracking technologies. Plaintiffs' claims against Microsoft, meanwhile, are limited to Zillow's use of Clarity on the Zillow website.

**B. Procedural Background**

This action comprises seven separate putative class actions that were originally filed against Zillow in districts across the country and later consolidated. (*See* 1/18/23 Order (Dkt. # 33) (consolidating the actions for pretrial purposes); *see also* 10/31/25 Joint Statement (Dkt. # 87) at 1 (discussing the background of this matter).) Plaintiffs filed a consolidated amended complaint on April 27, 2023. (Am. Compl. (Dkt. # 44).)

In June 2023, Microsoft and Zillow moved to dismiss the consolidated amended complaint. (1st MTDs (Dkt. ## 53-54).) On September 11, 2023, the court ordered the parties to file supplemental briefing addressing whether the named plaintiffs had Article III standing to pursue their claims in federal court. (*See generally* 9/11/23 Order (Dkt. # 64).) At the time, federal courts across the country were regularly dismissing putative

class actions challenging the use of Session Replay Code for lack of standing. (*See id.* at 2-4 (discussing several of these cases).) Accordingly, the court ordered the parties to address "whether Defendants' alleged interception of the information entered by each Plaintiff amounts to 'an invasion of privacy interests that have been historically protected' as required to allege an injury-in-fact" supporting Article III standing. (*Id.* at 5 (quoting *Cook v. GameStop, Inc.* ("*Cook I*"), 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023), *aff'd*, 148 F.4th 153 (3d Cir. 2025)).)

While Defendants' motions to dismiss were pending, the court granted the motions to dismiss filed in a parallel case, *Popa v. PSP Group, LLC* ("*Popa I*"), which also challenged a website's use of Microsoft Clarity to track user interactions. No. C23-0294JLR, 2023 WL 7001456, at *5 (W.D. Wash. Oct. 24, 2023), *aff'd sub nom. Popa v. Microsoft Corp.* ("*Popa II*"), 153 F.4th 784 (9th Cir. 2025). The *Popa I* plaintiff appealed the dismissal of her claims, *see generally Popa II*, 153 F.4th 784, and on January 5, 2024, the court stayed this case pending the resolution of that appeal (*see* 1/5/24 Order (Dkt. # 81)). The court struck Defendants' original motions to dismiss without prejudice to renewing those motions after the court lifted the stay. (*See id.*)

On August 26, 2025, the Ninth Circuit Court of Appeals affirmed this court's order dismissing *Popa I* for lack of standing, *see generally Popa II*, 153 F.4th 784, and on October 10, 2025, it issued its mandate, *see* Mandate, *Popa I*, No. C23-0294JLR (W.D. Wash. Oct. 10, 2025), Dkt. # 79. That same day, the court lifted the stay in this matter and ordered the parties to file a joint statement regarding how this case should proceed in light of *Popa II*. (10/10/25 Order (Dkt. # 86).) In relevant part, Plaintiffs requested leave

to amend their complaint "in light of the Ninth Circuit's opinion in *Popa* [*II*] which provided clarification of the types of allegations that would be sufficient to satisfy Article III standing." (10/31/25 Joint Statement at 2.) On November 3, 2025, the court granted Plaintiffs leave to amend their complaint and stayed discovery pending the close of the pleading stage of this action. (*See generally* 11/3/25 Order (Dkt. # 88).)

Plaintiffs filed their second amended class action complaint on December 3, 2025. (*See generally* 2d Am. Compl.) Plaintiffs bring this action individually and on behalf of a proposed nationwide class comprising:

> All natural persons in the United States and its territories whose Website Communications were captured through the use of Session Replay Code embedded in www.zillow.com and its subpages.

(*Id.* ¶ 143 (the "Nationwide Class").) In the alternative, Plaintiffs propose statewide subclasses comprising:

> All natural persons located in the states of California, Illinois, Missouri, and Pennsylvania whose Website Communications were captured through the use of Session Replay Code embedded in www.zillow.com and its subpages.

(*Id.* ¶ 144 (the "Statewide Subclasses").) Plaintiffs bring claims on behalf of the individual Plaintiffs and the Nationwide Class for violations of the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* (Count 1), the Washington Privacy Act ("WPA"), RCW 9.73.030 *et seq.* (Count 2[5]), and the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW (Count 3), in addition to a Washington common-law claim for invasion of privacy – intrusion upon seclusion (Count 4). (2d Am. Compl. ¶¶ 160-226.) Plaintiffs

---

[5] Plaintiffs refer to this claim as a violation of the Washington Wiretapping Statute in their second amended complaint.

also bring claims in the alternative on behalf of the individual Plaintiffs and the Statewide Subclasses for violation of the Pennsylvania Wiretap and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701 *et seq.* (Count 5); invasion of privacy – intrusion upon seclusion under Pennsylvania common law (Count 6); violation of the Illinois Eavesdropping Act, 720 ILCS § 5/14-1 *et seq.* (Count 7); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (Count 8); invasion of privacy – intrusion upon seclusion under Illinois common law (Count 9); violation of the Illinois Computer Tampering Act, 720 ILCS § 5/17-51 (Count 10); and unlawful wiretapping and interception of electronic communications in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631 (Count 14). (*Id.* ¶¶ 227-322, 388-404.[6]) Notably, Plaintiffs assert two new claims against both Defendants in their second amended complaint (Counts 1 and 3) and include Microsoft as a Defendant for the first time on Counts 5 through 8. (*Compare* 2d Am. Compl.; *with* Am. Compl.)

Defendants filed their motions to dismiss on February 2, 2026. (*See generally* MSFT MTD; Zillow MTD.) On June 4, 2026, the court ordered the parties to file supplemental briefing addressing each Plaintiff's Article III standing to pursue his or her claims in this action. (*See generally* 6/4/26 Order (Dkt. # 106); *see* Pls. Supp. (Dkt. # 108); Zillow Supp. (Dkt. # 109); MSFT Supp. (Dkt. # 110); Pls. Supp. Resp. (Dkt.

---

[6] Plaintiffs also asserted claims for violations of Missouri statutory and common law (Counts 11 through 13), but former Plaintiffs Ms. Adams and H.A., who are citizens of Missouri, voluntarily dismissed these claims. (*See* Not. of Dismissal; *see also* 2d Am. Compl. ¶¶ 19-20, 323-87.)

# 111); Zillow Supp. Resp. (Dkt. # 112); MSFT Supp. Resp. (Dkt. # 114).) On June 22, 2026, Plaintiffs voluntarily dismissed the claims of Plaintiffs Ashley Popa, Kenneth Hasson, Jill Adams, and H.A. (*See generally* Not. of Dismissal.) The motions to dismiss are now fully briefed and ripe for decision.

## III. ANALYSIS

Below, the court begins by reviewing the scope of the court's November 3, 2025 order granting Plaintiffs leave to amend, then considers Plaintiffs' Article III standing to pursue their claims in this court, and finally considers the motions to dismiss.

### A. Scope of Leave to Amend

As an initial matter, the court addresses the scope of Plaintiffs' leave to amend. (*See generally* 11/3/25 Order.) Defendants argue that Plaintiffs exceeded that scope by adding brand-new claims in their second amended complaint for violations of the Wiretap Act (Count 1) and WCPA (Count 3), and by naming Microsoft for the first time as a defendant on their claims for violations of WESCA (Count 5), the Illinois Eavesdropping Act (Count 7), and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count 8), and for intrusion upon seclusion under Pennsylvania common law (Count 6). (MSFT MTD at 8-9; Zillow MTD at 5.) They urge the court to dismiss or strike these claims for failure to comply with the November 3, 2025 order. (MSFT MTD at 8-9; Zillow MTD at 5.) The court agrees that Plaintiffs' new claims exceeded the scope of their leave to amend.

In the parties' October 31, 2025 joint statement, Plaintiffs asserted that amendment of their first amended complaint was "appropriate in light of the Ninth

Circuit's opinion in *Popa* [*II*] which provided clarification of the types of allegations that would be sufficient to satisfy Article III standing" and represented that they had asked Defendants to consent to amendment. (10/31/25 Statement at 2-3.) Defendants, however, responded that they could not consent to amendment because Plaintiffs refused to provide them a copy of their proposed second amended complaint. (*Id.* at 3-4.) Plaintiffs explained that they did not give Defendants a copy of the proposed second amended complaint because no rule required them to do so. (*Id.* at 2.) Nothing in the parties' joint statement suggested that Plaintiffs sought or intended to raise new claims in their second amended complaint. (*See generally id.*)

In its November 3, 2025 order, the court noted that Plaintiffs "s[ought] leave to amend their complaint in light of the Ninth Circuit's guidance in *Popa* [*II*] regarding the types of allegations that are sufficient to satisfy Article III standing." (11/3/25 Order at 2.) Accordingly, the court granted Plaintiffs "leave to amend their complaint in light of the Ninth Circuit's *Popa* [*II*] decision." (*Id.*) The court did not grant Plaintiffs leave to assert new claims. (*See generally id.*)

As the Ninth Circuit made clear, *Popa II* "turn[ed] on a single issue: whether [Ms.] Popa has alleged a 'concrete' injury sufficient to support Article III standing." *Popa II*, 153 F.4th at 788; *see also id.* ("This case concerns the first element [of standing], and particularly the requirement that a plaintiff's injury be 'concrete.'"). Based on the narrow scope of *Popa II*, it was patently unreasonable for Plaintiffs to interpret their leave to amend "in light of the Ninth Circuit's guidance . . . regarding the types of allegations that are sufficient to satisfy Article III standing" as permitting them

to add entirely new causes of action or to name Microsoft in causes of action where they had previously named only Zillow. Indeed, in the court's view, the fact that Plaintiffs refused to provide Defendants a copy of their proposed second amended complaint when they sought consent to amend demonstrates that Plaintiffs were aware that their amendments went far beyond simply incorporating *Popa II*'s teachings into their standing allegations. Although Plaintiffs insist that their "additional claims were added precisely because of the Ninth Circuit's decision in *Popa* [*II*] clarifying what claims satisfy Article III's standing requirements[,]" they offer no explanation about how *Popa II* informed their decision to raise their new claims. (*See* MSFT Resp. at 4.) Furthermore, the court finds nothing in *Popa II* that discusses what *claims*—as opposed to *allegations*—satisfy Article III.

Courts in this Circuit routinely strike claims that exceed the scope of leave to amend. *See, e.g.*, *Vaughn v. Cohen*, No. C23-6142TMC, 2024 WL 4881975, at *3 (W.D. Wash. Nov. 25, 2024) (citing *Hover v. GMAC Mortg. Corp.*, No. C16-1243JLR, 2017 WL 1080968, at *3 (W.D. Wash. Mar. 21, 2017) (compiling cases)). Therefore, the court STRIKES Counts 1 and 3 as to both Defendants and Counts 5, 6, 7, and 8 as to Microsoft.

**B. Standing**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation

omitted). A "concrete" injury "must actually exist;" that is, it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citations and internal quotation marks omitted). For the injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* at 339 (citations omitted). It is not enough for a plaintiff to allege that the defendant violated a statute; rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341); *see also Cook v. GameStop, Inc.* ("*Cook II*"), 148 F.4th 153, 158 (3d Cir. 2025) ("[T]he legislature 'may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.'" (quoting *TransUnion*, 594 U.S. at 426)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted).

In *Popa II*, the Ninth Circuit held that the plaintiff had not alleged a concrete injury-in-fact as required to establish standing to pursue wiretapping and common-law privacy claims stemming from a website's use of Microsoft Clarity—the same session-replay technology that is at issue here. *See* 153 F.4th at 791. Observing that a plaintiff's alleged injury must be one "that has traditionally been actionable in our nation's legal system[,]" the Ninth Circuit determined that the most relevant common-law privacy torts were intrusion upon seclusion and public disclosure of private facts, both of which require a showing that the defendant's intrusion into or disclosure of the plaintiff's personal information would be "*highly offensive* to a reasonable person[.]" *Id.* (emphasis

in original) (citations omitted). The court concluded that the plaintiff lacked standing because she had not established "how the tracking of her interactions with the [] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.*; *see also id.* (affirming this court's dismissal order because plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected by" the session-replay software).

Below, the court considers whether each of the remaining Plaintiffs has established Article III standing by plausibly alleging that Defendants' interference with or disclosure of the information they entered into Zillow's website would be "highly offensive" to a reasonable person. *Popa II*, 153 F.4th at 791.

<u>1.</u> <u>Jill Strelzin</u>

The court begins with Ms. Strelzin. Ms. Strelzin, a resident and citizen of Illinois, alleges that she used Zillow's website to search for properties and "entered personal and financial information, such as her income and other financial information into text fields while she used Zillow's mortgage calculator." (*Id.* ¶¶ 18, 107.) As Defendants point out, Ms. Strelzin has not alleged that she entered her name or any other information into Zillow's website that would allow Defendants to connect her income and financial information to her personally. (*See* MSFT Supp. at 3-4; Zillow Supp. at 8-9.) The court agrees with Microsoft that "there is no harm in knowing that *someone* makes $XX per year, even if there were any harm in knowing that *Strelzin* makes $XX per year." (MSFT Supp. at 3 (emphasis in original).) As a result, Ms. Strelzin has not demonstrated that Defendants engaged in the type of "highly offensive" disclosure of her personal

information necessary to establish Article III standing. *Popa II*, 153 F.4th at 791; *see also Mikulsky v. Noom, Inc.*, No. 3:23-cv-00285-H-MSB, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) ("The disclosure of non-individually identifiable data is insufficient to give rise to an injury-in-fact to support Article III standing.") (citation omitted).

Accordingly, the court dismisses Ms. Strelzin from this action for lack of standing and dismisses Plaintiffs' Illinois-law claims (Counts 7-10) because no other Plaintiff has standing to pursue them. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) (dismissing state-law causes of action where no named plaintiffs possessed individual standing to assert those claims); (*see* 2d Am. Compl. ¶¶ 13-20). Furthermore, because Plaintiffs have already amended their complaint twice and had the benefit of *Popa II*'s teachings when they drafted their second amended complaint, the court denies further leave to amend. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended.") (citation omitted).

2. David Kauffman

Mr. Kauffman, a resident and citizen of California, alleges that he used Zillow to browse homes using its zip-code search filter, to update information such as square footage and improvements for his own properties, and to submit offers to purchase properties. (2d Am. Compl. ¶¶ 16, 105.) He also asserts that he entered personal information "such as name, address and phone number into text fields" on Zillow's website. (*Id.* ¶ 105.)

The court agrees with Zillow that any disclosure of Mr. Kauffman's name, email address, telephone number, and the zip codes he used to search for properties is not so "highly offensive" as to result in actionable harm. (*See* Zillow Supp. at 6-7); *see, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (concluding, in a data breach case, that disclosure of "basic contact information" including email address and phone number did not establish an injury-in-fact because "[a]ll of this information is designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation"); *Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-CV-3388 WBS SCR, 2026 WL 2444750, at *4 (E.D. Cal. Aug. 19, 2026) (concluding that disclosure of the zip code plaintiff used to search for information about health insurance did not establish an injury-in-fact). Furthermore, the court cannot conclude that a reasonable person would find that the disclosure of the square footage of and improvements to Mr. Kauffman's properties would be "highly offensive" within the meaning of common law privacy torts because that information is displayed to users searching for properties on Zillow. (*See* 2d Am. Compl. ¶ 113 (displaying search results that include square footage).)

For these reasons, the court dismisses Mr. Kauffman from this action for failure to establish Article III standing and dismisses Plaintiffs' CIPA claim (Count 14) because no other Plaintiff has standing to pursue it. *See In re Carrier IQ*, 78 F. Supp. 3d at 1074; (*see* 2d Am. Compl. ¶¶ 13-20). The court denies Mr. Kauffman further leave to amend. *See Salameh*, 726 F.3d at 1133.

3. Natalie Perkins and Jamie Huber[7]

Ms. Perkins, a resident and citizen of South Carolina, alleges that she used Zillow to browse homes available for purchase and update her housing information. (*Id.* ¶¶ 13, 102.) She entered "personally identifiable and financial information into Zillow's website, such as her full name, date of birth, address, phone number, email, Social Security number, employment details, income information, and other data required to verify her identity and assess her housing eligibility." (*Id.* ¶ 102.)

Ms. Huber, a resident and citizen of Pennsylvania, alleges that she used Zillow to browse homes available for purchase and to update her housing information. (*Id.* ¶¶ 15, 104.) She asserts that she "entered personal and financial information, such as name, address, date of birth, phone number, credit score range, current loans, and estimates of loans into text fields and Zillow questionnaires." (*Id.* ¶ 104.) She also alleges that she "used Zillow's 'Get Pre-Approved' feature to determine her housing eligibility, which required her to submit specific financial and personal information through Zillow's online platform." (*Id.*)

Ms. Perkins and Ms. Huber both allege that they "authorized Zillow to obtain [their] credit report[s], criminal background check[s], and eviction histor[ies]." (*Id.* ¶¶ 102, 104.) They do not, however, specify what information they entered when they authorized Zillow to obtain these reports. (*Id.*) Ms. Huber and Ms. Perkins also allege that they provided information to Zillow "in reliance on Zillow's representations that

[7] Because Ms. Perkins and Ms. Huber make similar allegations regarding their interactions with Zillow's website, the court addresses both of their standing in this section.

such data was necessary for property-related services and would be securely and lawfully handled[,]" but they do not identify the representations upon which they allegedly relied. (*Id.*) Finally, Ms. Perkins and Ms. Huber allege, "[u]pon information and belief," that "Session Replay Code embedded onto Zillow's website collected and shared [their] sensitive personal and financial information with unauthorized third parties, including Microsoft" and that "these third parties used this information to create a profile about [them] for advertising purposes." (*Id.*)

For the reasons set forth below, the court agrees with Microsoft that Ms. Perkins and Ms. Huber lack standing to pursue their claims against it. The court agrees with Plaintiffs, however, that Ms. Perkins and Ms. Huber have standing to pursue their claims against Zillow.

*a. Microsoft*

To begin, the court concludes that Ms. Perkins and Ms. Huber lack standing to pursue their claims against Microsoft because they have not plausibly alleged that Microsoft disclosed their information to third parties or created cross-site profiles about them for advertising purposes. Courts regularly conclude that plaintiffs cannot establish standing to pursue privacy claims where the defendant collected data from a single website and did not disclose that data to other parties. *See, e.g.*, *Cook II*, 148 F.4th at 160 (dismissing case involving Clarity for lack of standing because plaintiff's "allegations concern[ed] [the website's] disclosure of information to Microsoft, a third-party vendor to [the website], not the broader public"); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("[I]nformation

collected only within the bounds of a single website about Plaintiff's activity on that website is not sufficient to create an injury."); *Oliver v. Noom, Inc.*, No. 2:22-cv-1857, 2026 WL 1992115, at *2 (W.D. Pa. July 10, 2026) (dismissing case for lack of standing where plaintiff did not allege that her information was publicly disclosed and that she suffered embarrassment or humiliation as a result); *accord*, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995 (9th Cir. 2023) (holding that plaintiffs did not establish a concrete injury arising from "the government's unlawful collection and retention of records alone").

As explained above, Plaintiffs generally allege that Clarity collects data about their interactions with Zillow's website for the purpose of providing information to Zillow about how they use and interact with its website. (*See supra* § II.A; *see generally* 2d Am. Compl.) Ms. Perkins and Ms. Huber do not allege that they visited any websites other than Zillow that use Clarity, and they do not allege that Microsoft disclosed the information Clarity collected from the Zillow website to any third parties. (*See* 2d Am. Compl. ¶¶ 102, 104.) Instead, they allege only that unspecified Session Replay Code on Zillow's website disclosed their information to unspecified third parties, and that those third parties created profiles about them for advertising purposes. (*See id.*) Accordingly, Ms. Perkins and Ms. Huber have failed to plausibly allege that Microsoft interfered with or disclosed their personal information in a way that would be "*highly offensive* to a reasonable person[.]" *Popa II*, 153 F.4th at 791. Because they have failed to demonstrate a concrete injury-in-fact, the court dismisses their claims against Microsoft for lack of standing and without leave to amend. *See Salameh*, 726 F.3d at 1133.

*b. Zillow*

The court reaches the opposite conclusion with respect to Ms. Perkins and Ms. Hubers' claims against Zillow. Here, as discussed above, Plaintiffs allege that Zillow embeds multiple third-party tracking technologies on its website and shares Plaintiffs' sensitive data with those third parties, thus facilitating the third parties' creation of cross-website profiles for advertising and marketing purposes. (*See supra* § II.A.2; *see also* 2d Am. Compl. ¶¶ 102, 104.) Plaintiffs thus have plausibly alleged that they suffered a concrete injury as a result of Zillow's conduct.

The Ninth Circuit observed in *Popa II* that the disclosure of "sensitive medical or financial information" is the type of "highly offensive" disclosure that would be traditionally actionable under the common law. 153 F.4th at 791-92. District courts have since applied *Popa II* to find standing where the plaintiffs alleged that the defendant captured and disclosed their financial information. *See*, *e.g.*, *Garcia v. Truist Financial Corp.*, 825 F. Supp. 3d. 1149, 1161-62 (C.D. Cal. 2026) (finding that plaintiff demonstrated a concrete injury because the disclosure of his citizenship, housing status, and employment status to a third party could reasonably be viewed as embarrassing or invasive) (citing *Popa*, 153 F.4th at 791); *Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026) (finding standing where defendant intercepted sensitive information including credit scores and included it in user profiles); *Blackhawk Network*, 2026 WL 925028, at *5 (explaining that the use of a tracking technology "may result in highly offensive conduct" where "the information collected could be especially sensitive, for example health or financial information").

In light of this authority, the court concludes that a reasonable person could find that Zillow's alleged disclosure to third parties of information such as Ms. Perkins and Ms. Huber's social security numbers, employment information, income, credit scores, and loan amounts is "highly offensive" within the meaning of the traditional privacy torts. *Popa II*, 153 F.4th at 791. The court, therefore, concludes that Ms. Perkins and Ms. Huber have plausibly alleged that they suffered a concrete injury sufficient to confer standing to pursue their claims against Zillow.

The court is not convinced by Zillow's arguments to the contrary. First, Zillow relies on *Phillips v. U.S. Customs & Border Protection* for the proposition that such personal information as dates of birth and social security numbers is not protected. (*See* Zillow Supp. at 10.) *Phillips*, however, is distinguishable because it involved the government's collection and retention of plaintiffs' unlawfully obtained personal information; it did not involve the disclosure of that information to other parties. *See Phillips*, 74 F.4th at 995. The court does not, therefore, find *Phillips* persuasive.

Zillow also argues that Ms. Perkins and Ms. Huber did not suffer a concrete injury based on its alleged disclosure of their social security numbers, income, and credit scores because (1) Clarity, by default, would have masked any numeric values they entered into Zillow's website and (2) Plaintiffs did not allege that Zillow changed the default setting. (*See* Zillow Supp. at 8; Zillow Supp. Resp. at 1-2.) Plaintiffs, however, allege that Zillow used Session Replay Code and other tracking technologies provided by third parties other than Microsoft to track their interactions with Zillow's website. (*See generally* 2d Am. Compl.) Thus, even if Plaintiffs had alleged that Zillow changed Clarity's default

settings, that would not insulate Zillow from claims based on Zillow's use of other technologies. Accordingly, the court denies Zillow's motion to dismiss Ms. Perkins and Ms. Huber from this case for lack of standing.

**C. Failure to State a Claim**

Having determined that Ms. Huber and Ms. Perkins have standing to pursue their claims against Zillow, the court now turns to Zillow's motion to dismiss. Because Plaintiffs dismissed their claims under Missouri law (Counts 11-13), and because the court struck Plaintiffs' claims for violation of the Wiretap Act and the WCPA (Counts 1 and 3) and dismissed Plaintiffs' claims under Illinois and California law (Counts 7-10, 14), the court considers Zillow's motion to dismiss Plaintiffs' remaining claims for violation of the WPA, violation of WESCA, and intrusion upon seclusion under Washington and Pennsylvania common law.

<u>1.</u> <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not accept as true legal conclusions, "'formulaic recitation[s] of the elements of a cause of action[,]'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

2012) (quoting *Twombly*, 550 U.S. at 555), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[,]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

2. Washington Law Applies to the Remaining Claims

As an initial matter, the parties agree that Washington law applies to Plaintiffs' claims against Zillow. (*See, e.g.*, 2d Am. Compl. ¶¶ 144 (stating that Plaintiffs assert their state-law claims "in the alternative" to their Washington-law claims), 155-59 (alleging that Washington law applies to Plaintiffs' claims under Zillow's Terms of Use); Zillow MTD at 7-8 (pointing out that Plaintiffs concede that Washington law applies to their claims under Zillow's Terms of Use); Zillow Resp. at 6 (observing that Zillow "does not contest the application of Washington law to the Nationwide Class" and asserting that they pleaded alternative state law claims "should the Court determine otherwise"); Zillow Reply at 2-3 (reiterating the parties' agreement that Washington law applies.) Accordingly, because the parties do not dispute that Washington law applies to Plaintiffs' remaining claims, the court dismisses Plaintiffs' claims for violations of WESCA and intrusion upon seclusion under Pennsylvania law (Counts 5-6). *See Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 995-96 (W.D. Wash. 2022) (dismissing plaintiffs' non-Washington claims where there was no dispute that Washington law applied to plaintiffs' wiretap claims).

3. Washington Privacy Act, RCW 9.73.030 (Count 2)

Under the WPA, "it [is] unlawful for any individual, partnership, [or] corporation . . . to intercept, or record any: [p]rivate communication transmitted by telephone, telegraph, radio, or other device *between two or more individuals* between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication . . . without first obtaining the consent of all the participants in the communication[.]" RCW 9.73.030(1)(a) (emphasis added). Zillow argues that Plaintiffs' WPA claim must be dismissed because Plaintiffs have not sufficiently alleged (1) the existence of a private communication; (2) that Zillow intercepted their private communications; or (3) that they suffered a cognizable injury. (Zillow MTD at 11-18.) The court agrees with Zillow that Plaintiffs have not plausibly alleged a private communication within the meaning of the WPA.

The weight of authority holds that a corporation is not an "individual" under RCW 9.73.030(1)(a). *See, e.g.*, *In re Meta Pixel Tax Filing Cases*, 743 F. Supp. 3d 1118, 1121 (N.D. Cal. 2024) (reasoning that the term "individuals" in RCW 9.73.030(1)(a) must exclude corporations because RCW 9.73.030(1) lists "individual" and "corporation" separately); *Castillo v. Costco Wholesale Corp.*, No. C23-1548JHC, 2024 WL 4785136, at *9 (W.D. Wash. Nov. 14, 2024) ("Without clear authority from Washington courts holding to the contrary, the Court concludes that a corporation is not an individual

//

//

//

under subsection (a).").[8] Here, Plaintiffs allege that Session Replay Code "intercepts and records [their] real-time electronic communications *with* [*Zillow's*] *website*." (2d Am. Compl. ¶ 2 (emphasis added); *see also id.* ¶ 192 (alleging that Defendants embedded Session Replay Code "on Zillow's website to spy on[], and intercept, automatically and secretly Plaintiffs['] and the Nationwide Class Members' electronic interactions [and] communications *with Zillow* in real time") (emphasis added).) They do not allege that Session Replay Code intercepted their communications with other *individuals*. (*See generally id.*) Therefore, the court joins those courts that have dismissed WPA claims for failure to allege a private communication "between two or more individuals." *See, e.g*, *Castillo*, 2024 WL 4785136, at *9; *In re Meta Pixel Tax Filing Cases*, 743 F. Supp. 3d at 1121 (dismissing WPA claim where plaintiff failed to plausibly allege "that the intercepted communications were made between two individuals rather than between individual users and the [websites'] automated systems"); *In re Carrier IQ*, 78 F. Supp. 3d at 1092 (same). Because further amendment of this claim would be futile, the court dismisses Plaintiffs' WPA claim with prejudice. *See Salameh*, 726 F.4th at 1133 ("Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, '[d]ismissal without leave to amend is

---

[8] Plaintiffs assert that this court "accepted as true that Microsoft was an individual" within the meaning of RCW 9.73.030(1)(a) in *Cousineau v. Microsoft Corporation*, in which the court held that "[w]ithout an individual on the other end of her communication (other than Microsoft), the transmission of [plaintiff's] data cannot be considered a communication under the WPA." (Zillow Resp. at 12 (quoting *Cousineau*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012)). The *Cousineau* court, however, did not analyze whether a corporation may be an "individual," and other courts have since cited *Cousineau* for the principle that the interception of communications between an individual and a corporation's automated system does not violate the WPA. *See, e.g.*, *In re Carrier IQ*, 78 F. Supp. 3d at 1092-93.

proper if it is clear that the complaint could not be saved by amendment.'") (citation omitted)

4. Intrusion Upon Seclusion (Count 4)

Washington bases its intrusion upon seclusion cause of action on Restatement (Second) of Torts § 652B. *See Armijo v. Yakima HMA, LLC*, No. 11-CV-3114-TOR, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012) (first citing *Fisher v. State ex rel. Dep't of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005); and then citing Restatement (Second) of Torts § 652B). That section provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B. The plaintiff must have a "legitimate and reasonable expectation of privacy" in their private affairs. *Gray v. Amazon.com Inc.* ("*Gray II*"), No. 23-35377, 2024 WL 2206454, at *2 (9th Cir. May 16, 2024) (quoting *Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001), *rev'd on other grounds, Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)). "[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Poore-Rando v. United States*, No. C16-5094BHS, 2017 WL 5756871, at *2 (W.D. Wash. Nov. 28, 2017) (quoting *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)). "By the same token, a person's consent to the allegedly intrusive act 'negates the element of intentional intrusion upon the plaintiff's private affairs.'" *Gray v. Amazon.com, Inc.*, 653 F. Supp.

3d 847, 860 (W.D. Wash. 2023) (quoting *Budsberg v. Trause*, No. 46653-8-II, 2015 WL 7259958 (Wash. Ct. App. 2015)), *aff'd, Gray II*.

Here, Plaintiffs' intrusion upon seclusion claim against Zillow is based on their voluntary provision of allegedly private information to Zillow using Zillow's website. (*See* 2d Am. Compl. ¶¶ 210-26; *see also id.* ¶¶ 102, 104 (describing Ms. Perkins's and Ms. Huber's interactions with Zillow's website).) Because Plaintiffs voluntarily shared their information with Zillow, Zillow did not intentionally intrude upon their solitude, seclusion, or private affairs without their consent. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1088-89 (W.D. Wash. 2024) (dismissing claim for intrusion upon seclusion because defendant was the intended recipient of plaintiff's communications). Although Plaintiffs allege that Zillow may have disclosed their information to third parties, that disclosure does not fall within the realm of intrusion upon seclusion. *See id.* (citing *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813BHS, 2018 WL 1532671, at *7 (W.D. Wash. Mar. 29, 2018) ("To the extent that [plaintiff] complains that [defendant] deliberately passed [his] information along to an unauthorized third party, that is not a claim for intrusion but rather disclosure.")). Therefore, the court dismisses Plaintiffs' claims for intrusion upon seclusion under Washington and Pennsylvania law.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions to dismiss (Dkt. ## 96-97). The court ORDERS as follows:

1. Plaintiffs' claims for violations of the Wiretap Act and the Washington Consumer Protection Act are STRICKEN for failure to comply with the court's order granting Plaintiffs leave to amend;

2. Defendant Microsoft is DISMISSED from this action without prejudice and without leave to amend because Plaintiffs failed to demonstrate Article III standing to pursue their claims against Microsoft;

3. Plaintiffs Jill Strelzin and David Kauffman, and their claims against Zillow under Illinois and California law, are DISMISSED from this action without prejudice and without leave to amend for lack of Article III standing; and

4. Plaintiffs Natalie Perkins and Jamie Huber's claims under Washington and Pennsylvania law are DISMISSED with prejudice and without leave to amend for failure to state a claim.

Dated this 30th day of September, 2026.

JAMES L. ROBART
United States District Judge